# EXHIBIT A

## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

This Confidential Settlement Agreement and Release (the "Agreement") is being entered into by and between DR. DAVID EGOLF ("Egolf") and GEORGETOWN UNIVERSITY ("Georgetown") (collectively the "Parties" and each individually a "Party").

**WHEREAS**, on September 20, 2013, ▓▓▓▓▓▓▓▓▓▓▓, a student at Georgetown, filed a complaint with Georgetown's Office of Institutional Diversity, Equity, and Affirmative Action ("IDEAA") alleging that Egolf engaged in conduct which ▓▓▓ contended constituted sexual harassment (that complaint, together with all allegations contained therein, the "Complaint"); and

**WHEREAS**, Egolf denies that he engaged in sexual harassment, any improper conduct of a sexual nature, or any unwanted conduct of a sexual nature; and

**WHEREAS**, on November 12, 2013, Georgetown's Provost, Robert Groves, placed Egolf on administrative leave with pay during IDEAA's review of the Complaint; and

**WHEREAS**, on May 9, 2014, IDEAA issued its investigative findings relating to the Complaint (the "Findings") and the related administrative review, finding that Egolf violated the University's Policy on Sexual Harassment and Retaliation; and

**WHEREAS**, on September 12, 2014, a Grievance Panel of the Equal Opportunity Examining Board at Georgetown University reviewed Egolf's appeal of the Findings and upheld the Findings ("Appeal"); and

**WHEREAS**, on October 14, 2014, Robert Groves, Georgetown's Provost, found just cause for revocation of tenure and termination of Egolf ("Termination Letter"); and

**WHEREAS,** Egolf contends that the investigative process used by IDEAA was deeply flawed and that the conclusions reached by IDEAA lacked factual support in numerous material respects; and

**WHEREAS**, on December 3, 2014, Egolf filed a Notice of Grievance under the Faculty Code challenging the IDEAA's Findings, contending that the IDEAA misstated evidence and grossly mischaracterized statements made during the investigation, and challenged the Provost's recommendation for tenure revocation and termination (collectively, with all grievances submitted by Egolf under the Faculty Grievance Code, the "Grievance"); and

*WHEREAS*, the Parties have engaged in conciliation pursuant to the Faculty Grievance Procedures and now desire to settle all disputes and issues between them on the terms and conditions set forth in this Agreement.

*NOW, THEREFORE*, in consideration of their mutual promises set forth in this Agreement, and intending to be legally bound, the Parties agree as follows:

1. **Returning from Leave.**

   a. **Return Date.** Egolf will remain on administrative leave and shall not be present on the campus of Georgetown until the later of October 30, 2015, or the date at which he satisfies the criteria for return stated in Sections 1(b) and 1(c) ("Return Date"). On the Return Date, Egolf shall resume his full job duties and privileges. Egolf acknowledges that teaching assignments for the fall semester of 2015 may have already been made so no teaching assignment can be guaranteed for the fall semester of 2015.

   b. **Required Training.** Egolf shall attend training sessions conducted by Heather Wydra of Employment Practices Solutions, Inc. covering Georgetown's policies and procedures related to (i) student-faculty relations, (ii) professionalism, and (iii) harassment. In order for Egolf to return to Georgetown, the trainer must confirm to Georgetown in writing that she believes to a reasonable degree of certainty that Egolf understands the relevant policies and training materials. In the event that Ms. Wydra declines to do so, she must state in writing all reasons for her opinion. The Return Date shall not be delayed solely due to the trainer's failure to promptly advise Georgetown of her determination in this regard after a reasonable opportunity to conduct the training (with cooperation from Egolf) and make a determination. Georgetown shall provide to Egolf in advance a copy of any and all documents which Ms. Wydra may ask Egolf to sign. All expenses shall be borne by Georgetown.

   c. **Required Evaluation.** Egolf shall be evaluated by Rick Filson, Ph.D, or another agreed upon independent forensic psychologist, in the event Dr. Filson is not able to perform the evaluation ("Dr. Filson"). In order for Egolf to return to Georgetown, Dr. Filson must confirm to Georgetown in writing that he believes to a reasonable degree of certainty that it is safe to have Egolf return to Georgetown, that Egolf poses no danger to students, and that Egolf has the ability to respect and conform to professional boundaries (the "Filson Report"). In the

event that Dr. Filson declines to clear Egolf to return, he must state in the Filson Report all reasons for his opinion. The Filson Report shall be provided to Georgetown in care of Dr. Eileen Fenrich. Dr. Fenrich shall provide a copy of the Filson Report to Egolf and shall advise both the Office of General Counsel and the Provost whether or not Dr. Egolf was cleared to return to Georgetown. Neither Dr. Fenrich nor any other person who receives the Filson Report shall share the Report or its contents with any other person, including any department or individual at Georgetown. The Return Date shall not be delayed solely due to Dr. Filson's failure to promptly advise Georgetown of his determination in this regard after a reasonable opportunity to conduct the assessment (with cooperation from Egolf) and make a determination. Either Party may share the text messages and emails between Egolf and ▇▇▇▇ with Dr. Filson. Georgetown shall provide to Egolf in advance a copy of any and all documents which Dr. Filson may ask Egolf to sign. All expenses shall be borne by Georgetown.

d. **Director of Undergraduate Studies.** Egolf shall not serve as the Director of Undergraduate Studies until after the conclusion of the 2018-2019 academic year except as may be specifically permitted by the Provost. Service as Director of Undergraduate Studies after such time shall be subject to regular procedures for such appointments.

e. **Appeal.** In the event that Egolf is not cleared to return to campus pursuant to Paragraphs 1(b) and/or 1(c), Egolf may submit a written appeal to the Provost pursuant to the following provisions:

   i. Egolf must submit any such appeal within five business days of his receipt of notice that he has not been cleared to return.

   ii. Within thirty days of Egolf's notice of appeal, Egolf and Georgetown shall jointly select an independent forensic psychologist and/or trainer to perform the functions described in Paragraphs 1(b) and/or 1(c), as the case may be. If Egolf and Georgetown are unable to agree to any such person, then each of them shall designate an independent forensic psychologist and/or trainer and those designees' function shall be to select the independent forensic psychologist and/or trainer. Either Party may share the text messages and emails between Egolf and ▇▇▇▇ with the independent forensic psychologist. Neither party shall communicate with the independent forensic psychologist or trainer with the intent to or in such manner as is likely to determine the outcome.

iii. In order for Egolf to return to Georgetown, Georgetown must receive clearance according to the terms of Paragraphs 1(b) and/or 1(c), as the case may be. If Georgetown receives notice that either reviewer has denied such clearance, Egolf shall not be permitted to return to Georgetown's campus and his employment at Georgetown will be terminated. Egolf will be afforded reasonable opportunity in such case to collect his personal and academic property.

iv. Egolf shall have no rights to grieve any matters relating to his termination, including the termination itself, and hereby waives all rights to do so. However, Egolf may file suit in any court of competent jurisdiction and Georgetown shall and hereby does waive any objection it may have or claim to have regarding Egolf's duty to exhaust his internal appeal rights and remedies.

2. **Requirements upon Returning to Georgetown.** The following provisions shall apply for so long as Egolf is employed by Georgetown.

    a. **Meetings with Students.**

        i. **In Private Spaces.** Egolf shall use his best efforts to avoid meeting one-on-one with any Georgetown student in a private space (such as his office, a meeting room, or a laboratory) with the door closed. After the passage of one year following Egolf's Return Date, Egolf may submit a request to the Provost to vacate or modify this requirement, which shall be subject to the Provost's sole discretion.

        ii. **At Residences.** Egolf shall not meet one-on-one in any residence or place of accommodations with any undergraduate student enrolled at Georgetown, any Georgetown student in the Department of Physics, or any student with whom Egolf has a supervisory relationship.

        iii. **Residing with a Student.** Egolf shall not reside with any Georgetown student to whom Egolf is not related absent written approval by the Provost, which shall take into consideration the age of the student, whether Egolf has any supervisory relationship with the student, and evidence of voluntariness of the student's decision in this regard.

b. **Professional Relationship with Students.**  Egolf will maintain a professional faculty-student relationship with students and will not engage in a relationship with a student or supervisee that might affect Egolf's impartiality with that student.

c. **Questions Regarding Student Interactions.**  If Egolf has any questions as to whether a relationship with a student is appropriate, he shall immediately disclose the relationship to his chair or dean.  Egolf may be required to recuse himself from supervisory and/or academic responsibilities with respect to that student or supervisee.

d. **No Sexual Comments or Advances.**  Egolf will not make any sexual advances, comments or statements about genitalia, jokes of a sexual nature, or sex-related teasing to any Georgetown student.  Egolf shall not make any comment of a sexual nature that is of a lewd or lascivious nature when he knows or reasonably should know that any Georgetown student is close enough that he or she might reasonably be able to overhear such comment.  However, these restrictions will not apply as to Egolf's communications with the persons identified in Attachment A, with any person with whom Egolf has a romantic relationship if he has disclosed that relationship to the Provost, in the context of the provision of healthcare services, or when it is a *bona fide* requirement as to a work-related matter.

e. **Alcohol.**  Egolf shall comply with Georgetown's alcohol policies.  Egolf will not provide alcohol to any student under the age of 21.

f. **Compliance with Policies.**  Egolf shall comply with all policies in the Faculty Handbook, including all policies that are under the purview of the Office of Institutional Diversity, Equity, and Affirmative Action.

3.  **No Contact with** ▮▮▮▮▮▮  Egolf shall not initiate communications or contact with ▮▮▮▮▮ or ▮▮▮▮ family at any time.  This provision does not apply to generally applicable Departmental and University communications to alumni and the like even if authored by Egolf.

4.  **No Payments.**  The Parties will each bear their own costs, fees, and expenses with respect to this matter, its resolution, and all matters related thereto.  The Parties acknowledge and agree that no payments will be made between them relating to this Agreement.



5.    **Non-Disparagement.**

    a. **Covered Persons.** The term "Covered Persons" shall refer to Dr. David Egolf, Georgetown's Provost, the Dean of Georgetown College, the Vice President of Institutional Diversity Equity and Affirmative Action, and persons who work or who have worked in those offices.

    b. **Prohibited Conduct.** Covered Persons shall make no oral or written statement of a disparaging nature concerning (i) the Complaint, the IDEAA investigation or Findings, the Appeal, the Grievance, the grievance process, the Termination Letter, this Agreement, the Provost Letter, or any matters or discussions relating thereto (the "Covered Matters"); (ii) Covered Persons as to any conduct or comments related to the Covered Matters; or (iii) ▮▮▮ and ▮▮▮ family.

    c. **Exclusions.** Nothing in this Paragraph shall be construed to prevent Covered Persons from making statements or providing information (i) as may be required by law or (ii) as to Egolf, in the course of personal, private communications with family members and those persons identified in Attachment A hereto, or (iii) in direct response to any statement of a disparaging nature made by any Covered Person (except that Egolf shall not respond publicly if the disparaging statement was made privately). Further, Egolf is not prohibited from making oral or written statements of a disparaging nature about ▮▮▮ in the event that ▮▮▮ makes or causes to be made a public statement of a disparaging nature about Egolf.

6.    **Provost Letter.** A letter from Georgetown's Provost to Egolf, attached hereto as Attachment B and incorporated herein by reference, stating the Provost's findings relating to the allegations (the "Provost Letter") shall be signed by Egolf as an acknowledgment that he has received it, reviewed it, and understands it.

7.    **Faculty Grievance Withdrawal.** Within three business days of the Effective Date, Egolf shall submit a letter in the form reflected in Attachment C hereto to the President of Georgetown's Faculty Senate informing the President that his Faculty Grievance has been resolved through conciliation and is therefore withdrawn. Georgetown and Egolf will take any other action necessary to withdraw the Faculty Grievance. This Agreement shall not affect Egolf's rights under the Faculty Grievance Code as they relate to matters not released in this Agreement.

8.  **Dialogue Regarding the IDEAA Process.** The Parties recognize that Egolf contends that the investigative process used by IDEAA was flawed. Therefore, Egolf may write a confidential memorandum to the Provost and the President of Georgetown's Faculty Senate outlining his ideas for possible systemic improvements. If he does so, then the Provost and the President of Georgetown's Faculty Senate will review the memorandum, meet with Egolf and Jo Ann Moran Cruz to discuss the information submitted, and follow up on the information presented if and as the Provost and/or the President of Faculty Senate deem appropriate. Neither Party admits to any wrongdoing as it relates to the underlying Complaint and the proceedings which ensued.

9.  **Confidentiality.**

    a. Information which refers or relates to the Complaint, the administrative review, the Findings, the Appeal, the Grievance, the grievance process, the Termination Letter, this Agreement, the Provost Letter, IDEAA's report, and matters or discussions relating thereto (hereinafter referred to as "Confidential Information") shall be considered confidential and shall be subject to the following terms and conditions:

        i. Except as otherwise provided herein, the Parties, on behalf of themselves, their attorneys, and their other agents, shall not, directly or indirectly, disclose to any person any Confidential Information.

        ii. Georgetown shall maintain all documents which contain, refer, or relate to Confidential Information in a strictly confidential manner.

        iii. Georgetown shall store all documents which contain, refer, or relate to Confidential Information in the University Counsel's office, IDEAA, or in the Provost's Office except that when applicable such documents shall be stored in such place and/or manner as may be required by applicable state or federal law. The Provost Letter will be the only document relating to this matter which may be kept in Egolf's personnel file and that document shall be maintained in a sealed envelope in the Office of the Provost which may be opened solely by and at the discretion of the Provost or the University Counsel and shall be prominently marked as such on the exterior.

    iv. Georgetown shall make reasonable efforts to identify and collect all documents containing Confidential Information so that such documents can be maintained as required herein.

b. Notwithstanding the foregoing, the following disclosures are permissible:

    i. Both Parties may disclose Confidential Information where required by law or pursuant to any grievance or legal proceedings which relate to this Agreement.

    ii. Georgetown may disclose (i) the existence of this Agreement, (ii) Egolf's return date, and (iii) the information contained in Sections 1(a), 1(d), 2(a), 2(d), 3, 5(b), and 5(c) to the Chair of the Physics Department and Dean of Georgetown College, but all such communications must be verbal or, if in writing, the written communication must be made and/or retained in a manner which is consistent with the requirements of Section 9(a)).

    iii. Georgetown may disclose to other Georgetown employees or agents such terms of this Agreement as may be necessary to implement the terms of this Agreement, but all such communications must be verbal or, if in writing, the written communication must be made and/or retained in a manner which is consistent with the requirements of Section 9(a)).

    iv. Georgetown may disclose to ████ the existence of this Agreement, the provision of this Agreement that bars Egolf from contacting ████ the date of Egolf's return to the University, and that the Faculty Grievance process has been concluded. Georgetown may also disclose to ████ that Dr. Egolf has agreed that he will not make any disparaging public statements about ████ or ████ family unless ████ makes or causes to be made a public statement of a disparaging nature about Egolf.

    v. Egolf may disclose Confidential Information to family members, to such persons as are identified in Attachment A hereto, to his attorneys, and to his medical and mental health caregivers so long as such individuals agree to keep it strictly confidential and to communicate such information to no other person.

      vi.  Egolf shall disclose to the President of the Faculty Senate Attachment C.

     vii.  Georgetown shall inform Egolf of any disclosures made pursuant to Paragraph 9(b)(i) or 9(b)(iii).

  c.  If asked about the Complaint or the Findings, Egolf may state that the matter has been resolved to the full satisfaction of the Parties but that the details are confidential and cannot be discussed. If asked about his absence from Georgetown, Egolf may state that he took a leave of absence.

  d.  If either Party receives a demand for Confidential Information by legal process, then it shall promptly notify the other Party of the requested, possible, or forthcoming disclosure.

10.  **Releases.**

  a.  **By Egolf.** On behalf of himself and his agents, heirs, executors, administrators, successors, attorneys, and assigns, Egolf hereby releases and forever discharges Georgetown, and any and all of its past, present, or future officers, directors, managers, employees, students, agents, attorneys, affiliates, insurers, successors, and assigns, from any and all complaints, claims, demands, damages, lawsuits, faculty grievances, grievances, and causes of action, whether known, unknown, or unforeseen, arising out of or in connection with the Complaint (including but not limited to IDEAA's or the Provost's actions in this matter, the Investigation, the administrative review, the Findings, the Appeal, the Termination Letter, the Grievance, the grievance process, the resolution of this matter and matters related thereto), occurring on or before the Effective Date, which he has or may have against any of them for any reason whatsoever in law or in equity under federal, state, District of Columbia, or other law, whether the same be upon statutory claim, contract, tort, or other basis, including harassment, emotional or physical distress or injury, retaliation, or defamation, whether arising out of employment contract, employment discrimination law (including without limitation the Age Discrimination in Employment Act of 1967, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990, the Civil Rights Act of 1866, the Equal Pay Act of 1963, Title IX of the Education Amendments of 1972, and the District of Columbia Human Rights Act, all as amended), any other laws and regulations relating to employment (including but not limited to the federal Family and

Medical Leave Act, the District of Columbia Family and Medical Leave Act, the Employee Retirement Income Security Act of 1974 and the National Labor Relations Act, all as amended), and any claim for costs or attorneys' fees (all of the proceeding collectively the "Claims"). Egolf acknowledges that he is providing a full and general release of claims and agrees, without limiting the generality of the release, not to file or initiate any action, charge, or other proceeding to seek damages or monetary, equitable, or other relief for himself, based on any Claims that are lawfully released in this Agreement. Egolf further hereby unconditionally waives any and all rights to recover any relief or damages based on any Claims that are lawfully released in this Agreement. Egolf represents and warrants that, other than the Faculty Grievance, which will be withdrawn upon execution of this Agreement, he has no pending internal or external proceedings in any court, agency, department, committee, or other public or private forum or body based on any Claims and to the extent any internal or external proceedings are determined to remain pending or unresolved, they are hereby withdrawn.

b. **By Georgetown.** On behalf of itself and any and all of its past, present, or future officers, directors, managers, employees, agents, attorneys, affiliates, insurers, successors, and assigns, Georgetown hereby releases and forever discharges Egolf from any and all complaints, claims, demands, damages, lawsuits, grievances, and causes of action, whether known, unknown, or unforeseen, arising out of or in connection with the Complaint (including but not limited to IDEAA's or the Provost's actions in this matter, the Investigation, the administrative review, the Findings, the Appeal, the Termination Letter, the Grievance, the grievance process, the resolution of this matter and matters related thereto), occurring on or before the Effective Date, which it has or may have against him for any reason whatsoever in law or in equity under federal, state, District of Columbia, or other law, whether the same be upon statutory claim, contract, tort, or other basis. Georgetown acknowledges that it is providing a full and general release of claims and agrees, without limiting the generality of the release, not to file or initiate any action, charge, or other proceeding relating to the Complaint against Egolf, and represents and warrants that, other than the proceeding which is addressed by this Agreement, Georgetown has no pending internal or external proceedings in any court, agency, department, committee, or other public or private forum or body based on the Complaint; to the extent any internal or external proceedings are determined to remain

pending or unresolved, they are hereby withdrawn. By and because of this Release, Georgetown shall not use, rely on, or refer to this matter in making any employment decisions regarding Egolf, except that matters described in the Provost Letter may be used, relied upon, or referred to in the event there are future findings of violations of this Settlement Agreement or the Faculty Handbook necessitating employee discipline.

11.  **Enforcement and Remedies.**

   a.  If Georgetown contends that Egolf has breached any provision of this Agreement, it will promptly provide Egolf with notice of such breach and the penalty, if any, which Georgetown proposes to impose. The penalty shall range from unrecorded verbal warning to termination of employment and shall be based on the facts of the incident and the level of intent. If Egolf disputes the allegation or contends that the penalty is improper, he may file a grievance pursuant to the faculty grievance policy, to the extent such matters are grievable under the Faculty Handbook and subject to all of the provisions thereof. Any breach, or actions taken upon breach, of the Agreement by either party may also be enforced by filing suit, or seeking an injunction, in a court of competent jurisdiction.

   b.  Except as expressly stated or released in this Agreement, nothing in this Agreement shall abridge Egolf's rights as a faculty member, including his faculty grievance rights, in event of any violation or alleged violation of University policy, including violation of any provision of the Faculty Handbook.

12.  **Miscellaneous.** This Agreement, including its Attachments A, B (the Provost Letter) and C (the Withdrawal Letter), sets forth the entire agreement and understanding between the Parties and supersedes all prior discussions and negotiations between them pertaining to the subject matter of this Agreement. The Parties acknowledge that they are not relying on any other promises or representations not stated herein. This Agreement may not be modified except by an instrument in writing signed by each of the Parties hereto. Neither the waiver by either Party of a breach of or default under any of the provisions of this Agreement, nor the failure of such Party, on one or more occasions, to enforce any of the provisions of the Agreement or to exercise any right or privilege hereunder shall thereafter be construed as a waiver of any subsequent breach or default of a similar nature, or as a waiver of any provisions, rights or privileges hereunder. This Agreement shall be governed by and construed in accordance with the laws of the District of

Columbia without regard to the choice of law rules thereof. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning and not strictly for or against any of the Parties. Headings are provided for convenience and shall be disregarded in the meaning and interpretation of this Agreement. This Agreement may be executed by the Parties by facsimile or other electronic copy, and in one or more counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument.

13. **Acknowledgement.** Egolf acknowledges that he has read and understands this Agreement and executes it voluntarily and without coercion. Egolf further acknowledges that he has been advised in writing to consult with an attorney prior to executing this Agreement, that he has in fact consulted with counsel, and that he has been given a period of not less than twenty-one (21) days within which to consider and execute this Agreement, although he may voluntarily choose to execute this Agreement before the end of the twenty-one day period. Egolf will cause his counsel to acknowledge Egolf's execution of this Agreement by signing below and to deliver the executed Agreement promptly upon its execution to Georgetown's counsel. Egolf understands that he has seven (7) days following his execution of this Agreement to revoke it, and that for such revocation to be effective, written notice of revocation must be received by Georgetown's General Counsel, Lisa Brown, no later than the seventh calendar day after the date on which Complainant has executed this Agreement. As set forth below, Egolf expressly acknowledges and agrees that in the event he revokes this Agreement during the seven (7) day revocation period as provided above, this Agreement shall be null and void and have no legal or binding effect whatsoever and, in such event, Egolf will remain on administrative leave.

14. **Effective Date.** This Agreement shall be effective upon the date (the "Effective Date") that is the first business day following the date on which Egolf and Georgetown have signed this Agreement and the revocation period described in Section 13 has expired without this Agreement being revoked by Egolf.

*{Signatures on the next page}*



IN WITNESS WHEREOF, the Parties have executed this Agreement as manifested by their signatures below.

**DR. DAVID EGOLF**

Date: 10/15/15

**GEORGETOWN UNIVERSITY**
By: Robert M. Groves, Provost

Date: 10/17/15

*[Attachment A]*

1.        Redacted

2.  Redacted

3.  Redacted

4.  Redacted

5.  Redacted

6.  Redacted

7.  Redacted

*[Attachment B]*

October __, 2015

**Confidential**

Dr. David Egolf
137 Timberbrook Lane, #102
Gaithersburg, MD  20878

Dear Professor Egolf:

I am writing to inform you that, after careful review, I have found you to be in violation of Georgetown University's Faculty Handbook. I have concluded that the evidence shows that you engaged in conduct that did not comport with Georgetown's standards of professionalism and respectful behavior. We have met and discussed my concerns regarding your behavior and I am satisfied that you will not engage in such conduct in the future.

My concerns relate to your inappropriate interactions during your relationship with ▮▮▮▮▮▮▮▮ who entered Georgetown University as a freshman in the fall of 2011. He was a Physics major who became your academic advisee in his freshman year. In the fall of 2012, ▮▮▮▮ assisted you with your research and took your Quantum Mechanics course. In the spring of 2013, he became your teaching assistant and your research assistant. In the summer of 2013, you and ▮▮▮▮ lived together for a 10-week period at Duke University, conducting research.[1] ▮▮▮▮ withdrew from the University for the fall semester of 2013 and filed an internal complaint with the Office of Institutional Diversity, Equity, and Affirmative Action. He returned to Georgetown in the spring semester of 2014 and graduated in the spring of 2015. You were placed on administrative leave beginning in the fall of 2013 while ▮▮▮▮ grievance was investigated and you have remained on leave since that time.

---

[1] Though you discussed this with and gained the approval of ▮▮▮▮ parents, contrary to the Faculty Handbook, you did not disclose this fact to the Dean.

As we have discussed, there are important boundaries that must be observed in a faculty-student relationship, which cannot be the same as a friendship among peers. In addition, the Faculty Handbook states: "Every member of the University has the right to be treated fairly, courteously, and professionally by students, colleagues, the Department Chair and by all members of the University administration, and to be protected from arbitrary or capricious action on the part of any such persons."[2] It is my conclusion that you failed to adhere to this standard by not recognizing the limits which ███████ wished for your relationship.

Furthermore, the Faculty Handbook states:

> If a faculty member has any relationship with a colleague, student, or supervisee outside of the professional relationship that might affect the faculty member's impartiality, the faculty member shall disclose the relationship to his or her own chair or dean, and may be required to recuse him or herself from certain supervisory and academic responsibilities with respect to that colleague, student, or supervisee.[3]

In that language and throughout the Faculty Handbook, the Handbook emphasizes the need to avoid a conflict of interest and the actual or apparent exploitation of power when interacting with students. You failed to ensure that your relationship with ███████ avoided any actual or apparent conflict of interest. You discounted the possibility that ███████ might feel undue pressure to do as you asked because you were his teacher, mentor, advisor, and supervisor, and you disregarded the impact your actions might have on his education. Moreover, once you were aware of your desire to have a close personal relationship with ███████ you should have disclosed this fact to the Dean so the matter could have been handled appropriately and in the best interests of the student.

The evidence also shows that you violated the University's alcohol policy[4] because you provided and purchased alcohol for ███████ and his roommate, both of whom were underage.

---

[2] Faculty Handbook, III.C.11.B.
[3] Faculty Handbook, III.C.11.E.
[4] http://studentaffairs.georgetown.edu/policies/alcohol-and-other-drugs

Therefore, based on careful consideration of all of the facts and circumstances presented, I have imposed sanctions, which have been discussed with you and which are described in the Confidential Settlement Agreement.

Thank you for acknowledging the seriousness of this matter. Any future findings of violation of the Faculty Handbook or of the Confidential Settlement Agreement may result in further discipline, up to and including tenure revocation, if appropriate. A copy of this letter will be maintained in a sealed envelope marked "confidential" in the Provost's Office personnel file, to be opened only by the provost or university counsel at their sole discretion.

Sincerely,

Robert Groves
Provost

cc:    Lisa Brown
       Micah Salb


I have read and understand the terms of this letter.

Dr. David Egolf                    10/15/15
                                   Date

*[Attachment C]*

Dr. David Egolf
137 Timberbrook Lane #102
Gaithersburg, MD 20878

October __15__, 2015

Dr. Wayne Davis
President, Georgetown University Faculty Senate
VIA EMAIL AND U.S. MAIL

      Re:   Faculty Grievance

Dear Wayne,

I am pleased to report that the Faculty Grievances I filed have been resolved through the conciliation process and the resulting agreement has been documented formally with the Provost. As such, I hereby withdraw all outstanding Faculty Grievances. Thank you for facilitating this process.

Sincerely,

Dr. David Egolf

Cc:    Robert Groves, Provost
       Lisa Brown, Esq., General Counsel
       Micah Salb, Esq. Attorney for David Egolf