**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

DAVID EGOLF,

          *Plaintiff,*

      v.

GEORGETOWN UNIVERSITY, *et al.,*

          *Defendants*.

GEORGETOWN UNIVERSITY,

          *Counter-Plaintiff*,

      v.

DAVID EGOLF,

          *Counter-Defendant*.

Civil Action No. 1:25-cv-03439-ABJ

**<u>DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO AMEND</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................................... ii

FACTUAL AND PROCEDURAL BACKGROUND .................................................................... 1

LEGAL STANDARD ...................................................................................................................... 3

ARGUMENT .................................................................................................................................... 4

    I.     THE PROPOSED AMENDMENTS ARE FUTILE ........................................................... 4

        A.    The Proposed DCHRA Claim is Time-Barred on Its Face ............................................ 5

        B.    Civil Conspiracy is Not an Independent Cause of Action Under D.C. Law, So the Proposed Amendment Would Be Futile. ........................................................................ 8

        C.    The Proposed Civil Conspiracy Claim is Futile, as Plaintiff Has Not Plausibly Alleged Any Actionable Agreement to Harm Him ...................................................................... 9

        D.    The Proposed Breach of Contract Claim Based on the Filing of the Counterclaims is Futile as a Matter of Law, as the 2015 Agreement Expressly Authorized Georgetown's Use of the Relevant Information in Litigation. ............................................................. 13

    II.    PLAINTIFF UNDULY DELAYED SEEKING AMENDMENT .................................... 16

CONCLUSION .............................................................................................................................. 17

# TABLE OF AUTHORITIES

*Am. First Inv. Corp. v. Goland*,
   925 F.2d 1518 (D.C. Cir. 1991)................................................................................................ 15

*Arias v. Marriott Int'l, Inc.*,
   No. CV 15-1258 (CKK), 2019 WL 1440117 (D.D.C. Mar. 31, 2019) ............................... 16

*Black Lives Matter D.C. v. Trump*,
   544 F. Supp. 3d 15 (D.D.C. 2021)............................................................................................ 10

*Brady v. Livingood*,
   360 F. Supp. 2d 94 (D.D.C. 2004)............................................................................................ 10

*Bronner v. Duggan*,
   324 F.R.D. 285 (D.D.C. 2018) ........................................................................................ 3, 4, 16

*Bush v. Butler*,
   521 F. Supp. 2d 63 (D.D.C. 2007)............................................................................................. 9

*Cesarano v. Reed Smith, LLP*,
   990 A.2d 455 (D.C. 2010) ......................................................................................................... 6

*Cherichel v. Ergo Sols., LLC*,
   85 F. Supp. 3d 245 (D.D.C. 2015)............................................................................................. 6

*Davis v. World Sav. Bank, FSB*,
   806 F. Supp. 2d 159 (D.D.C. 2011).......................................................................................... 15

*De Sousa v. Dep't of State*,
   840 F. Supp. 2d 92 (D.D.C. 2012)............................................................................................. 3

*Exec. Sandwich Shoppe, Inc. v. Carr Realty Corp.*,
   749 A.2d 724 (D.C. 2000) ...................................................................................................... 8, 9

*Foman v. Davis*,
   371 U.S. 178 (1962) ................................................................................................................... 4

*Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp.*,
   944 A.2d 1055 (D.C. 2008)....................................................................................................... 15

*Fuentes-Fernandez & Co., PSC v. The Corvus Grp., Inc.*,
   174 F. Supp. 3d 378 (D.D.C. 2016) (Jackson, J.).................................................................... 16

*Grassroots Analytics, Inc. v. Isaiah Martin for Cong.*,
   No. 1:25-CV-00822 (TSC), 2026 WL 850660 (D.D.C. Mar. 27, 2026) ............................. 15

*Hakki v. Zima Co.*,
   2006 WL 852126 (D.C. Super. Mar. 28, 2006)......................................................................... 9

*Halberstam v. Welch*,
     705 F.2d 472 (D.C. Cir. 1983) ................................................................................................. 8

*He DePuy v. Oath Holdings, Inc.*,
     531 F. Supp. 3d 219 (D.D.C. 2021) ......................................................................................... 9

*Hettinga v. United States*,
     677 F.3d 471 (D.C. Cir. 2012) ................................................................................................. 4

*Hodge v. Saba*,
     2025 WL 2959745 (D.D.C. Oct. 17, 2025) .............................................................................. 7

*Howard v. Fed. Express Corp.*,
     280 F. Supp. 3d 26 (D.D.C. 2017) ...................................................................................... 6, 15

*HRH Servs., LLC v. Travelers Indem. Co.*,
     No. CV 23-2300 (JDB), 2024 WL 5246521 (D.D.C. Dec. 30, 2024) .................................... 15

*In re Kellogg Brown & Root, Inc.*,
     756 F.3d 754 (D.C. Cir. 2014) ............................................................................................... 13

*In re Sealed Case*,
     676 F.2d 793 (D.C. Cir. 1982) ............................................................................................... 13

*Johnson v. Georgetown Univ.*,
     No. 25-CV-1540 (CRC), 2026 WL 879522 (D.D.C. Mar. 31, 2026) ................................. 7, 10

*Motley-Ivey v. D.C.*,
     923 F. Supp. 2d 222 (D.D.C. 2013) ......................................................................................... 6

*Mpoy v. Fenty*,
     870 F. Supp. 2d 173 (D.D.C. 2012) ......................................................................................... 9

*Nat'l R.R. Passenger Corp. v. Morgan*,
     536 U.S. 101 (2002) ................................................................................................................. 6

*Owens-Corning Fiberglas Corp. v. Henkel*,
     689 A.2d 1224 (D.C. 1997) ...................................................................................................... 8

*Riddell v. Riddell Wash. Corp.*,
     866 F.2d 1480 (D.C. Cir. 1989) ............................................................................................... 9

*Singletary v. Howard Univ.*,
     939 F.3d 287 (D.C. Cir. 2019) ........................................................................................... 4, 15

*Thompson v. Trump,*
     590 F. Supp. 3d 46 (D.D.C. 2022) ......................................................................................... 10

*United States ex rel. Westrick v. Second Chance Body Armor, Inc.*,
     301 F.R.D. 5 (D.D.C. 2013) ..................................................................................................... 4

*Valentine v. George Washington Univ.*,
  No. 24-cv-1081 (RC), 2025 WL 2029802 (D.D.C. July 21, 2025) ........................................................ 7

*Waldon v. Covington*,
  415 A.2d 1070 (D.C. 1980) ........................................................................................................ 8

*Zaccari v. Apprio, Inc.*,
  390 F. Supp. 3d 103 (D.D.C. 2019) ........................................................................................... 15

*Ziglar v. Abbasi*,
  582 U.S. 120 (2017) .................................................................................................................. 12

## FEDERAL STATUTES

Fed. R. Civ. P. 11(a) ....................................................................................................................... 2

Fed. R. Civ. P. 13(a)(1)(A) ............................................................................................................ 14

Fed. R. Civ. P. Rule 15 ......................................................................................................... 3, 4, 17

## STATE STATUTES

72 D.C. Reg. 737 (Jan. 16, 2025) .................................................................................................... 7

D.C. Code § 2-1403.16 (2015) .................................................................................................... 6, 7

## OTHER AUTHORITIES

*Sexual Harassment, Inappropriate Conduct Allegations*, The Hoya (March 13, 2026),
  https://thehoya.com/news/gu-professor-on-leave-since-2023-for-sexual-harassment-inappropriate-
  conduct-allegations/ .................................................................................................................. 14

iv

Nearly six months ago, Defendants answered the operative Complaint, and Georgetown counterclaimed. Nevertheless, and though his own motion to dismiss Georgetown's counterclaim remains pending, Plaintiff now seeks leave to file an Amended Complaint adding two new defendants and two new causes of action, including a new breach of contract theory based on Georgetown's assertion of its counterclaim. Plaintiff offers his proposed amendments on the basis of his speculation that the individuals hired by Georgetown to conduct an independent investigation acted as attorneys for Georgetown, and that their attorney-client relationship with Georgetown somehow biased their independent investigation. That allegation neither materially alters the factual landscape of this case nor justifies the proposed amendments. What Plaintiff offers is not new evidence, but rather new legal theories. The operative Complaint already challenges the investigation, the investigators, Georgetown's disciplinary process, and Georgetown's handling of the 2015 Agreement. Plaintiff now seeks to repackage those same allegations into claims for civil conspiracy and retaliation under the D.C. Human Rights Act ("DCHRA").

Because the proposed claims are legally deficient, time-barred, or both, and because the motion rests on a new characterization of previously known facts rather than any genuine factual development, leave to amend should be denied as both futile and unduly delayed.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff commenced this action on September 26, 2025. ECF No. 1. After the Court rejected Plaintiff's attempt to proceed by pseudonym, Plaintiff filed the operative Complaint on October 29, 2026. ECF No. 8. In his Complaint, Plaintiff asserts claims against Georgetown University and four Georgetown employees – Robert Groves, Rosemary Kilkenny, Olabisi Ladeji Okubadejo, and Samantha Berner. Plaintiff alleges claims for retaliation under Title IX, breach of contract, breach of the implied covenant of good faith and fair dealing, tortious interference with

1

contractual relations, tortious interference with prospective economic advantage, and negligent supervision. Defendants answered the Complaint and Georgetown asserted counterclaims on December 19, 2025. ECF No. 21 (Under Seal). Plaintiff thereafter moved to dismiss the counterclaims. ECF No. 23. That motion is fully briefed and remains pending before the Court. Discovery in the case has not commenced.

On June 12, 2026, more than eight months after Plaintiff filed the Complaint and nearly six months after Defendants answered it, Plaintiff moved for leave to amend it. ECF No. 41.[1] In his Motion, Plaintiff represents that the proposed amendment makes four categories of changes: (1) "editorial" revisions; (2) the addition of a new retaliation claim under the District of Columbia Human Rights Act ("DCHRA"); (3) the addition of a civil conspiracy claim; and (4) the addition of two new defendants, independent third-party investigators Stephanie Baron and Sasha Hodge-Wren, whose firm conducted the investigation on behalf of the University.[2] ECF No. 41 at 2-3.

In addition, although not mentioned in his Motion, Plaintiff's proposed amendments add allegations of an alleged breach by Georgetown of the non-disclosure provisions of the 2015 Agreement. Specifically, Plaintiff alleges that Georgetown breached the 2015 Agreement by filing the counterclaim. *See* ECF No. 41-2 at ¶¶ 73-83. Plaintiff had raised similar arguments in his Motion to Strike or Seal the counterclaim. ECF No. 31. The Court denied that motion in part and refused to strike the counterclaim but did allow certain exhibits to the counterclaim to remain under seal "subject to further review by the Court as the case unfolds." ECF No. 32. Plaintiff's subsequent motion for reconsideration, ECF No. 34, was denied by the Court, which held that "plaintiff's own complaint put the allegations and the exhibits he seeks to strike squarely at issue.

---

[1] Plaintiff's counsel failed to sign the Motion, as required by Fed. R. Civ. P. 11(a).

[2] Undersigned counsel does not represent Ms. Baron or Ms. Hodge-Wren in this litigation. They are attorneys with Miles & Stockbridge.

Plaintiff made a determination as to what he wanted to include in his 35-page, 230-paragraph complaint, and there is absolutely no legal support for his insistence that defendants were supposed to respond to some of it but not all of it." February 6, 2026, Minute Order. Plaintiff now seeks leave to add these rejected arguments in his proposed Amended Complaint.

The proposed Amended Complaint, ECF No. 41-1, would materially expand the scope of this litigation. While the operative Complaint names Georgetown and four Georgetown employees, the Amended Complaint seeks to add two additional non-Georgetown Defendants and two new causes of action. These additions, which are not based on any newly discovered evidence, will inevitably lead to additional motions practice and unduly delay this litigation.

## **LEGAL STANDARD**

Under Rule 15(a)(2), once a responsive pleading has been filed and the period for amendment as a matter of course has expired, a party may amend its pleading "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Because Defendants do not consent, Plaintiff bears the burden of demonstrating that leave should be granted. Although Rule 15 embodies a liberal amendment policy, the decision whether to grant leave remains committed to the Court's discretion. *See Bronner v. Duggan*, 324 F.R.D. 285, 290 (D.D.C. 2018) ("The grant or denial of leave to amend is committed to the sound discretion of the district court.") (quoting *De Sousa v. Dep't of State*, 840 F. Supp. 2d 92, 113 (D.D.C. 2012)). Courts therefore need not permit amendment where recognized grounds for denial are present.

The Supreme Court has long held that leave to amend may properly be denied in cases involving "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *accord Bronner*, 324 F.R.D. at 290. In particular, a court may deny leave where the

3

proposed amendment would be futile – that is, where the amended pleading "would not withstand a motion to dismiss." *Singletary v. Howard Univ.*, 939 F.3d 287, 295 (D.C. Cir. 2019) (citing *Hettinga v. United States*, 677 F.3d 471, 480 (D.C. Cir. 2012)).

Where the moving party seeks to add claims based on facts that were known or available long before the motion was filed, leave to amend should be denied. Courts in this District have recognized that undue delay exists where a party "failed to promptly allege a claim for which they already possessed evidence." *Bronner*, 324 F.R.D. at 292 (quoting *United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 301 F.R.D. 5, 9 (D.D.C. 2013)). Thus, while Rule 15 favors amendment in appropriate circumstances, amendment is not warranted where the proposed claims are legally deficient or are based on information available to the movant before the filing of the operative complaint.

## ARGUMENT

### I.   THE PROPOSED AMENDMENTS ARE FUTILE

In his Motion, in addition to making so-called "editorial" changes to the Complaint, Plaintiff seeks to add two new counts: "The first states a claim for a violation of the District of Columbia Human Rights Act," and the "second new count seeks a remedy for civil conspiracy." ECF No. 41 at 2. The DCHRA claim, Count Seven, would be against all defendants (i.e., the original defendants and the two independent investigators Plaintiff seeks to name as defendants), while the conspiracy claim would be against *only* the individual defendants (i.e., the four Georgetown employees originally named as defendants and the two investigators). Leave to amend to add these claims should be denied as futile, as the proposed DCHRA claim is time-barred on its face, and there is no independent cause of action for civil conspiracy recognized in the District of Columbia.

4

### A.    The Proposed DCHRA Claim is Time-Barred on Its Face

In proposed Count Seven, ECF 41-1 at ¶¶ 255-61, after noting that the DCHRA "makes it illegal to retaliate against any person for participating 'in any manner in an investigation, proceeding, or hearing' under the Human Rights Act," *id.* at ¶ 259, Plaintiff alleges that the Defendants' conduct, "as summarized in Count One," constitutes "retaliation in violation of the [DCHRA]." *Id.* at ¶ 261. In Count One, *id.* at ¶¶ 220-30, styled "Retaliation in Violation of Title IX" against Defendant Georgetown, Plaintiff alleges that "[t]he 2013 investigation was retaliatory conduct because Groves was motivated in full or in part by his anger and resentment over Professor Egolf's participation in the 2013 investigation and Professor Egolf's avoidance of discipline for the alleged harassment." *Id.* at ¶ 224. In newly proposed allegations, Plaintiff goes on to assert "additional retaliatory conduct," including "making disclosures of highly prejudicial information that it had agreed to keep confidential within the university, to Defendants Baron and Hodge-Wren, and in public court records," *id.* at ¶ 229, and "bringing charges" against Plaintiff "in a Faculty Responsibilities Committee proceeding for alleged code of conduct violations." *Id.* at ¶ 230.

Plaintiff, however, has not alleged that he ever actually engaged in an "investigation, proceeding, or hearing" *under the D.C. Human Rights Act*, and being the *subject* of a sexual harassment investigation is not protected conduct under either Title IX or the DCHRA as a matter of law. In addition, the 2015 Agreement *expressly* permitted Georgetown to "disclose Confidential Information where required by law or pursuant to any grievance or legal proceedings which relate to this Agreement." ECF No. 21-1 at §9(b)(i) (Under Seal). For those reasons, Plaintiff's proposed DRHRA claim is legally deficient and his proposed amendment to add it would be futile.

5

Nevertheless, Plaintiff's DCHRA retaliation claim, with the exception of the counterclaim allegation,[3] is time-barred on its face.

At the time the claims in this action accrued, DCHRA claims were subject to a one-year statute of limitations. *See* D.C. Code § 2-1403.16(a) (2015). It is well settled that a retaliatory or discriminatory act "occurred" on the day that it "happened." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). Each allegedly retaliatory act therefore constitutes a separate, independently actionable employment decision, and the statute of limitations begins to run when that act occurs. *See id*.; *Cherichel v. Ergo Sols., LLC*, 85 F. Supp. 3d 245, 247-48 (D.D.C. 2015) (dismissing DCHRA claims based on conduct occurring outside the applicable limitations period and finding that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."); *Motley-Ivey v. D.C.*, 923 F. Supp. 2d 222, 229 (D.D.C. 2013) (same) (citing *Cesarano v. Reed Smith, LLP*, 990 A.2d 455, 463-65 (D.C. 2010)).

Here, the alleged "retaliatory" conduct, with the exception of the filing of the counterclaim in this action, is related to the initiation (and conduct) of the University's Office of Institutional Diversity, Equity and Affirmative Action (IDEAA) investigation and IDEAA's subsequent referral of the matter to the Faculty Responsibilities Committee (FRC). Plaintiff alleges that the investigation commenced after Mr. Roe complained to IDEAA, on or about July 19, 2023, "that he had recently come to believe that Professor Egolf had been 'grooming him' during the course of his mentoring." ECF No. 41-1 at ¶ 20; *see also* ECF No. 21-2 (Under Seal) (August 9, 2023, letter to Plaintiff informing him of investigation). IDEAA issued its Confidential Report on May

---

[3] The allegation that Georgetown's use of "Confidential Information" in its counterclaim was "retaliatory," notwithstanding the *express* language of the 2015 Agreement permitting its use for this exact purpose (*see* Section I(D) below), and the Court's February 6, 2026, Minute Order, recognizing "that plaintiff's own complaint put the allegations and the exhibits he seeks to strike squarely at issue," is wholly meritless on its face, and the futility of the claim is manifest.

6, 2024. ECF No. 21-3 (Under Seal). And on September 23, 2024, Andrew Sobanet, the Interim Dean of the University's College of Arts & Sciences, filed a formal charge with the FRC pursuant to Section 7 of the Faculty Responsibilities Code, thereby initiating an independent disciplinary mechanism. ECF No. 21 at 42, ¶ 102.

Plaintiff filed the initial Complaint in this matter on September 26, 2025. ECF No. 1. All of the alleged retaliatory acts discussed above, however, occurred prior to September 26, 2024. Accordingly, they are time-barred under the applicable one-year statute of limitations. D.C. Code § 2-1403.16(a) (2015).

The District of Columbia's recent amendment extending the DCHRA limitations period does not save Plaintiff's claims. On December 17, 2024, the D.C. Council passed the Fairness in Human Rights Administration Amendment Act of 2024, which was signed into law on January 16, 2025, and became effective on March 21, 2025. *See* D.C. Act 25-692, 72 D.C. Reg. 737 (Jan. 16, 2025). The amendment extends the limitations period for certain DCHRA claims from one year to two years. D.C. Code § 2-1403.16(b)(1) (2025). However, the amendment does not apply retroactively, and DCHRA claims are governed by the limitations period in effect when the challenged conduct occurred. *See Hodge v. Saba*, 2025 WL 2959745, at *4 (D.D.C. Oct. 17, 2025) (applying the pre-amendment one-year DCHRA limitations period because the conduct at issue occurred before the effective date of the 2025 amendment and noting that the new two-year period "does not apply retroactively."); *Johnson v. Georgetown Univ.*, No. 25-CV-1540 (CRC), 2026 WL 879522, at *23 n.19 (D.D.C. Mar. 31, 2026) (same) (citing *Valentine v. George Washington Univ.*, No. 24-cv-1081 (RC), 2025 WL 2029802, at *5 n.5 (D.D.C. July 21, 2025)).

That conclusion is consistent with longstanding District of Columbia law holding that, absent a clear statement from the legislature, a newly enacted limitations period does not revive

7

previously time-barred claims or alter the limitations period applicable to claims that accrued before the amendment's effective date. *See Owens-Corning Fiberglas Corp. v. Henkel*, 689 A.2d 1224, 1241-42 (D.C. 1997) ("Generally, if a new statute of limitations does not specifically repeal an old one, then the old one controls actions which had already accrued where the new statute was enacted.").

Accordingly, claims that accrued before March 21, 2025, remain governed by the prior one-year limitations period. Claims that were already time-barred before the amendment's effective date are not revived. The relevant question is when the claim accrued, not when Plaintiff sought leave to amend. Consequently, leave to amend to add time-barred DCHRA claims should be denied due to futility.

### B.   Civil Conspiracy is Not an Independent Cause of Action Under D.C. Law, So the Proposed Amendment Would Be Futile.

In his proposed Count Eight, despite representing to the Court that the purpose of the amendment is to "add as new defendants *the two people who conspired with Georgetown*," ECF No. 41 at 3 (emphasis added), due to a "secret attorney-client relationship with the university," *id.,* Plaintiff instead seeks to add a claim for civil conspiracy against *all* of the *individual* Defendants – but *not* against Georgetown. In the District of Columbia, however, "[t]here is no recognized independent tort action for civil conspiracy . . . [C]ivil conspiracy depends on performance of some underlying tortious act. It is thus not independently actionable; rather, it is a means for establishing vicarious liability for the underlying tort." *Exec. Sandwich Shoppe, Inc.*, 749 A.2d at 738 (quoting *Waldon v. Covington*, 415 A.2d 1070, 1074 n.14 (D.C. 1980)); *Halberstam v. Welch*, 705 F.2d 472, 479 (D.C. Cir. 1983).

In his Motion, despite acknowledging that civil conspiracy "is not an independent action," ECF No. 41 at 2 n.1, Plaintiff nevertheless seeks to add it as an independent claim, asserting that

the "underlying torts alleged in the proposed First Amended Complaint include tortious interference with contractual relations and tortious interference with prospective economic advantage." *Id.*

Those two tort claims, set forth in Counts Four and Five, are *already* brought directly against Defendants Groves, Kilkenny, Okubadejo, and Berner. ECF No. 41-1 ¶¶ 239-46. There are no allegations at all against the third-party investigators, Stephanie Baron and Sasha Hodge-Wren, with respect to these claims, and Plaintiff does not seek to add the investigators to these Counts in his proposed Amended Complaint. As there is no underlying tort to support his conspiracy claim against the investigators, the amendment would be futile. *See Hakki v. Zima Co.*, 2006 WL 852126, at *5 n.7 (D.C. Super. Mar. 28, 2006) ("In the District of Columbia, however, conspiracy is not an independent tort; in order to establish liability of an alleged conspirator, a plaintiff must plead and prove an underlying tort *in which the conspirator participated.*" (citing *Exec. Sandwich Shoppe Inc.*, 749 A.2d at 738) (emphasis added)); *Mpoy v. Fenty*, 870 F. Supp. 2d 173, 183 (D.D.C. 2012); *Riddell v. Riddell Wash. Corp.*, 866 F.2d 1480, 1493 (D.C. Cir. 1989) ("Under both federal and District of Columbia law, civil conspiracy is not actionable in and of itself."); *He DePuy v. Oath Holdings, Inc.*, 531 F. Supp. 3d 219, 232 (D.D.C. 2021) ("Plaintiffs [had] not alleged any torts in the amended complaint," and because "all of their other claims [were] dismissed," the Court dismissed the civil conspiracy claim as well).

## C. The Proposed Civil Conspiracy Claim is Futile, as Plaintiff Has Not Plausibly Alleged Any Actionable Agreement to Harm Him

Plaintiff's proposed conspiracy claim also fails because the proposed Amended Complaint does not plausibly allege the existence of any *actual agreement* among the Defendants to harm Plaintiff. In a civil conspiracy, "the principal element ... is an agreement between the parties to inflict a wrong against or injury upon another." *Bush v. Butler*, 521 F. Supp. 2d 63, 68 (D.D.C.

2007) (quoting *Brady v. Livingood*, 360 F. Supp. 2d 94, 104 (D.D.C. 2004)); *see also Johnson v. Georgetown Univ.*, 2026 WL 879522, at *21 (D.D.C. Mar. 31, 2026) ("[A]n actual *agreement* amongst the defendants is the essence of a conspiracy.") (emphasis in original).

To state a conspiracy claim, a plaintiff must allege facts demonstrating a "mutual understanding" among the alleged conspirators to accomplish a common unlawful objective. *Johnson*, 2026 WL 879522, at *21. Put differently, a plaintiff must allege "some sense that co-conspirators had a mutual understanding to try to accomplish a common and unlawful plan," and that there was a "single plan, the essential nature and general scope of which were known to each person who is to be held responsible for its consequences." *Id.* (citing *Thompson v. Trump,* 590 F. Supp. 3d 46, 96-97 (D.D.C. 2022) (cleaned up); *Black Lives Matter D.C. v. Trump*, 544 F. Supp. 3d 15, 38 (D.D.C. 2021)). In *Johnson*, the court dismissed the conspiracy claim because the plaintiff failed to allege any "events, conversations, or documents indicating that there ever was an agreement or meeting of the minds." *Johnson*, 2026 WL 879522, at *21.

The proposed Amended Complaint suffers from the same defect. Plaintiff identifies no agreement among the individual Defendants to commit any unlawful act. Nor does he allege any conversation, communication, or other factual basis from which a meeting of the minds could plausibly be inferred. While Plaintiff attempts to impute an improper motive to Provost Groves, alleging that he "harbored anger and resentment over Professor Egolf's opposition to the 2013 Complaint and over Professor Egolf's avoidance of discipline," ECF No. 41-1 ¶ 53, Plaintiff attributes no such motivation to either the IDEAA officials or the investigators IDEAA hired to conduct the investigation.[4]

---

[4] In this respect, it is noteworthy that there is no allegation that Provost Groves played any role at all in hiring the investigators.

Instead, Plaintiff's conspiracy theory rests entirely on his speculation that the two independent investigators Georgetown hired to conduct the investigation had attorney-client relationships with Georgetown, which they "hid" from Plaintiff. ECF No. 41-1 ¶¶ 129-38. But Plaintiff's proposed Amended Complaint alleges no facts to support that conclusory assertion. It alleges merely that the investigators "explicitly inform[ed] him at the start of their interviews with him that their 'role [was] as neutral investigators' and that 'there is no attorney-client privilege that attaches to *our* communications." ECF No. 41-1 ¶ 138 (emphasis added). That is obviously a true statement, as the investigators had no attorney-client relationship with Egolf. But it does not imply or provide any factual support for Plaintiff's otherwise unsupported allegation that the investigators had an attorney-client relationship with *the University*. Indeed, in his motion Plaintiff acknowledges "the investigators' explicit assertion at the start of their interviews of the Plaintiff . . . that they had no attorney-client relationship *with the Parties*," ECF No. 41 at 3 (emphasis added), one of which obviously was Georgetown.

The fact that the independent investigators hired by the University happened to be attorneys makes no difference. The University hired the investigators to investigate the factual allegations made against the Plaintiff and to determine whether Plaintiff violated the University's policies. Universities (and other organizations) routinely hire attorneys to conduct independent fact investigations. The University does not assert any attorney-client privilege over the facts discovered in the investigation or the report prepared by the investigators. In fact, Georgetown attached the May 6, 2024, Confidential Report prepared by the investigators to its Answer and Counterclaims as Exhibit C. *See* ECF No. 21-3 (Under Seal).[5]

---

[5] The May 6, 2024, Investigative Report confirms that Stephanie Baron and Sasha Hodge-Wren were retained by IDEAA for the discrete task of "reviewing the issues raised pursuant to IDEAA's Grievance Procedures," as described in detail in the Report. ECF No. 21-3 at 3 (Under Seal). The scope of the investigators' assignment was made clear to Egolf in IDEAA's August 9,

Even if the investigators, in addition to ascertaining the facts and identifying any violations of University policy, were, in fact, somehow also acting as attorneys for the University for some purpose, there is no basis for any plausible inference that the *individual* defendants, in their *individual* capacities, entered into an actual agreement with the independent investigators, in their *individual* capacities, to harm the Plaintiff in some fashion.

The allegations do not plausibly suggest the existence of a *conspiracy* amongst the individual Defendants to harm the Plaintiff, especially given that Georgetown itself, *the holder of the alleged attorney-client privilege*, is not even alleged to be a party to this "conspiracy." Presumably, Plaintiff purposely refrained from alleging that Georgetown conspired with its officers, employees, and agents in recognition of the intracorporate-conspiracy doctrine, which holds that "an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy." *Ziglar v. Abbasi*, 582 U.S. 120, 153 (2017) (citation omitted). But even without including Georgetown in the conspiracy, the result is the same, as there are no allegations that *any* of the individual defendants were acting outside of their official capacities as Georgetown's agents. *See* ECF No. 41-1 ¶¶ 6-11.[6]

---

2023, Notice Letter, which informed him that "IDEAA has retained the services of external investigators to conduct this review." *Id*. at n.3; ECF No. 21-2 (Under Seal). The Investigative Report sets forth the investigators' complete factual findings and analysis, including a detailed description of the investigative process and the interviews, documents, and other materials reviewed and considered. IDEAA provided the report to Egolf in its entirety on May 7, 2024, one day after it was submitted to IDEAA. *See* ECF No. 21-4 (Under Seal).

[6] As Plaintiff alleges, all of the individual defendants were officers, employees, or agents of the University: Robert Groves is currently the Interim President of the University, having previously served as Executive Vice President and Provost; Olabisi Ladeji Okubadejo was Georgetown's Associate Vice President of Equal Opportunity, Affirmative Action, and Compliance; Rosemary Kilkenny was Georgetown's Vice President for Institutional Diversity, Equity & Inclusion and Chief Diversity Officer; Samantha Berner was Georgetown's Title IX Coordinator and Director of Title IX Compliance; and Stephanie Baron and Sasha Hodge-Wren "are attorneys *hired by Georgetown to conduct an investigation*." ECF No. 41-1 ¶¶ 6-11 (emphasis added).

Plaintiff's argument that there is an inherent conflict of interest prohibiting attorneys from conducting investigations concerning an employee's compliance with laws and regulations on behalf of organizations, ECF No. 41-1 ¶ 135, is contrary to well-established law in this Circuit. Plaintiff's "novel approach to the attorney-client privilege would eliminate the attorney-client privilege for numerous communications that are made for both legal and business purposes and that heretofore have been covered by the attorney-client privilege. And [this] novel approach would eradicate the attorney-client privilege for internal investigations conducted by businesses that are required by law to maintain compliance programs, which is now the case in a significant swath of American industry." *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 759 (D.C. Cir. 2014). *See also In re Sealed Case*, 676 F.2d 793, 800-02 (D.C. Cir. 1982) (explaining that the SEC encouraged corporations to retain outside counsel to conduct internal investigations on behalf of special committees as part of accepted corporate compliance and governance practices). Outside attorneys hired to conduct an independent investigation for the University do not engage in a conspiracy simply by interacting with the employees and officers of the University in conducting the investigation; that is how investigations are performed. Under Plaintiff's theory, no University would ever be allowed to retain an attorney to conduct a Title IX (or Title VII or DCHRA) investigation. This is clearly not the law.

As there are no plausible allegations of an *agreement* between the individual Defendants to harm Plaintiff, the proposed amendment to add a civil conspiracy claim would be futile.

**D.    The Proposed Breach of Contract Claim Based on the Filing of the Counterclaims is Futile as a Matter of Law, as the 2015 Agreement Expressly Authorized Georgetown's Use of the Relevant Information in Litigation.**

Since the initial filing of this litigation, Plaintiff has zealously tried to keep secret both his identity and the circumstances surrounding the two independent complaints made against him by

13

his students, *see* ECF Nos. 2, 4, 22, 23, 31, 33, and 34. At the same time and all the while, he has been suing (and attacking in the press)[7] both the University and its employees, who are compelled by law and policy to investigate and respond to those complaints, through what the Court has recognized are "unnecessarily prolix and detailed pleadings." ECF No. 32 at 2. Despite the Court's recognition that Georgetown and its officials "are private litigants who presumably have concerns about their respective reputations," ECF No. 3 at 5 (citations omitted), and that Plaintiff's own claims "put the facts to which the exhibits [to Georgetown's counterclaim] pertain squarely at issue," ECF No. 32 at 2, Plaintiff now seeks to amend his complaint to allege that Georgetown's inclusion of the relevant factual and contractual information in its *compulsory* breach of contract counterclaim, *see* Fed. R. Civ. P. 13(a)(1)(A), is itself an additional breach of the contract. This amendment would be futile for the same reasons set forth in the Court's previous decisions on this issue.

Plaintiff proposes to amend his complaint to add allegations that Georgetown's inclusion of allegedly "Confidential Information" relating to the 2015 Agreement, and the Agreement itself, in its counterclaim was an independent breach of the non-disclosure clause contained in the 2015 Agreement, ECF No. 41-1 ¶¶ 73-83. Such an amendment would be futile as a matter of law because the plain and controlling language of the 2015 Agreement *expressly* permitted Georgetown to use it in this litigation.

---

[7] *See, e.g.,* Nora Toscano, *GU Professor on Leave Since 2023 for Sexual Harassment, Inappropriate Conduct Allegations*, The Hoya (March 13, 2026), https://thehoya.com/news/gu-professor-on-leave-since-2023-for-sexual-harassment-inappropriate-conduct-allegations/ (reporting statements from Plaintiff's counsel calling the University's investigation a "witch hunt" and asserting that "Egolf could not have groomed the student because he was capable of consenting to interactions with Egolf" while referencing the student's "mental health challenges.").

Section 9(b)(i) of the 2015 Agreement *expressly* permits such disclosures: "Both Parties may disclose Confidential Information where required by law *or pursuant to any grievance or legal proceedings which relate to this Agreement*." ECF No. 21-1 § 9(b)(i) (Under Seal) (emphasis added). This action plainly falls within that exception; there is nothing ambiguous about the language. Plaintiff's operative Complaint asserts claims arising from the 2015 Agreement, alleges that Georgetown breached that Agreement, and seeks damages and other relief based on its terms. Georgetown's counterclaims likewise arise from, and therefore relate to, the same Agreement. Accordingly, Georgetown's use of the Agreement and related materials in connection with claims and defenses concerning the Agreement is expressly authorized by the contract itself.

Where the language of a contract is unambiguous, "its interpretation is a question of law for the court," *Zaccari v. Apprio, Inc.*, 390 F. Supp. 3d 103, 109 (D.D.C. 2019) (quoting *Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1064 (D.C. 2008)); *Am. First Inv. Corp. v. Goland*, 925 F.2d 1518, 1520 (D.C. Cir. 1991) ("If the contract is unambiguous, the court can interpret it as a matter of law"), and the Court can resolve it at the motion to dismiss stage. *HRH Servs., LLC v. Travelers Indem. Co.*, No. CV 23-2300 (JDB), 2024 WL 5246521, at *9 n.6 (D.D.C. Dec. 30, 2024) (citations omitted). *See also Grassroots Analytics, Inc. v. Isaiah Martin for Cong.*, No. 1:25-CV-00822 (TSC), 2026 WL 850660, at *3 (D.D.C. Mar. 27, 2026) (observing that courts have granted motions to dismiss "where the breach of contract allegations are 'flatly contradicted by the express terms' of the contract.") (quoting *Davis v. World Sav. Bank, FSB*, 806 F. Supp. 2d 159, 172-73 (D.D.C. 2011) (granting a motion to dismiss where "there [was] only one reasonable interpretation of the [contract], and it contradict[ed] [plaintiff's] claim for breach of contract")).

15

As the futility standard for leave to amend is the same as the motion to dismiss standard, *Singletary*, 939 F.3d at 295, the Court should deny Plaintiff's motion to amend to add this new breach of contract theory based on the filing of the counterclaim. *See, e.g., Arias v. Marriott Int'l, Inc.*, No. CV 15-1258 (CKK), 2019 WL 1440117, at *6-7 (D.D.C. Mar. 31, 2019) (denying leave to amend a breach of contract claim where the contract language did not support the proposed claim); *Howard v. Fed. Express Corp.*, 280 F. Supp. 3d 26, 31 (D.D.C. 2017) (denying leave to amend breach of contract and breach of implied contract claims as futile because the proposed claims would not survive a motion to dismiss based on "clear" language in a disclaimer); *Fuentes-Fernandez & Co., PSC v. The Corvus Grp., Inc.*, 174 F. Supp. 3d 378, 390-91 (D.D.C. 2016) (Jackson, J.) (denying leave to amend a proposed breach of contract claim as futile after finding that the contract's express scope and termination provisions showed no valid contractual obligation existed that could have been breached).

## II.    PLAINTIFF UNDULY DELAYED SEEKING AMENDMENT

Plaintiff's motion should also be denied because the proposed amendment is based on a new legal theory rather than newly discovered facts. Courts in this District routinely deny leave to amend where a party seeks to add claims based on information that was known or available well before the motion was filed. *See Bronner v. Duggan*, 324 F.R.D. 285, 292 (D.D.C. 2018) (undue delay exists where a party "failed to promptly allege a claim for which they already possessed evidence.").

Here, Plaintiff concedes that discovery has not yet begun, ECF No. 41 at 4, and Plaintiff does not identify any newly produced document, deposition testimony, or other discovery that revealed previously unknown misconduct. Instead, Plaintiff seeks to add two new defendants and an entirely new civil conspiracy theory based principally on his assertion that he learned during the Faculty Responsibilities Committee proceedings (several months ago) that Georgetown

16

allegedly maintained an attorney-client relationship with the individuals it retained to conduct the investigation. *Id*. At 3.

But that alleged fact does not materially alter the factual landscape of this case. When Plaintiff filed the operative Complaint on September 26, 2025, he *already* challenged the investigators' impartiality, the conduct of the investigation, and Georgetown's use of information relating to the 2015 Agreement. *See* ECF No. 8. No newly discovered allegations support an added claim under DCHRA against Georgetown or the original individual defendants. The proposed amendment relies on the same factual allegations and largely repackages allegations already before the Court.

What has changed is Plaintiff's legal theory, not the facts. Plaintiff now contends that conduct previously challenged in the operative Complaint supports a civil conspiracy claim and a DCHRA retaliation claim against two additional defendants. Rule 15 does not allow amendment whenever a plaintiff develops a new legal characterization of facts already known to him. Defendants answered the operative Complaint in December 2025, *see* ECF No. 21, and Plaintiff identifies no genuinely new factual development that justifies expanding this litigation months later by adding new parties and new claims, particularly when the amendments will inevitably lead to further motions practice. Under these circumstances, leave to amend should be denied.

### **CONCLUSION**

Rule 15 does not require amendment whenever a plaintiff develops a new legal theory. Because the proposed amendments are futile and because Plaintiff unduly delayed seeking to add them, Defendants respectfully request that the Court deny Plaintiff's Motion for Leave to Amend in its entirety.

Dated: June 26 , 2026                    Respectfully submitted,


                                         */s/ Henry A. Platt*
                                         Henry A. Platt (D.C. Bar No. 425994)
                                         SAUL EWING LLP
                                         1919 Pennsylvania, Ave NW Suite 550
                                         Washington, D.C. 20006
                                         Telephone: (202) 333-8800
                                         Facsimile: (202) 337-6065
                                         Email: henry.platt@saul.com

                                         *Counsel for Defendants Georgetown University, Robert M.
                                         Groves, Rosemary Kilkenny, Olabisi Ladeji Okubadejo,
                                         and Samantha Berner*

18

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of June 2026, a copy of the foregoing **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND** was filed via the CM/ECF system, which caused a copy to be sent via the electronic filing system:

Micah Salb
Lippman Semsker & Salb, LLC
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Email: msalb@lsslawyers.com

/s Henry A. Platt
Henry A. Platt (D.C. Bar No. 425994)
SAUL EWING LLP
1919 Pennsylvania Ave NW Suite 550
Washington, D.C. 20006
Telephone: (202) 333-8800
Facsimile: (202) 337-6065
Email: henry.platt@saul.com

*Counsel for Defendants Georgetown University, Robert M. Groves, Rosemary Kilkenny, Olabisi Ladeji Okubadejo, Okubadejo, and Samantha Berner*

19