

Faculty Handbook

# The Faculty Responsibilities Code

## Introduction[1]

The Faculty Handbook identifies both faculty rights and faculty responsibilities. [2] The present Code provides for a University-wide Faculty Responsibilities Committee to handle complaints that faculty members have failed to meet a responsibility stated in the Faculty Handbook. This Code also presents policies and procedures to aid faculty members in correcting deficiencies of conduct and to sanction, if necessary, serious or persistent failures by faculty to meet their responsibilities. A persistent failure is one that continues after written notice to a faculty member from his or her Unit Head or higher administrator that a responsibility has not been fulfilled. The rights and responsibilities stated in the Section III.C "Faculty Rights and Responsibilities" of the Faculty Handbook remain unaltered.

Evaluation of research, teaching, and service occurs during the annual merit review process by the relevant academic unit. This and other processes of evaluation are separate from the policies and procedures described in this Code, which is intended to ensure that credible complaints of Faculty Misconduct are investigated and addressed fairly, impartially, and with keen sensitivity to the importance of academic freedom and collegial respect. This process is founded on the principle that the faculty must be involved in self-regulation and, when necessary, censure of colleagues.

Key sections describe 1) the process that members of the University must use when an allegation of Faculty Misconduct arises, 2) processes for investigating and adjudicating allegations of Faculty Misconduct, and 3) the range of corrective steps and disciplinary actions available to address substantiated findings of Faculty Misconduct.

The capitalized terms used throughout this Code are defined in Section G.16 ("Definitions").

## 1. Faculty Misconduct

Faculty Misconduct occurs if one of the following conditions is present: 1) serious or persistent failure to meet a faculty responsibility stated elsewhere in this Handbook (and not handled through merit review and related reviews established in individual units of the university); 2) serious or persistent failure to comply with the terms of a faculty member's contract or letter of appointment or failure to comply with applicable department, program, school, campus, or University policies[3]; or 3) conduct that seriously, demonstrably, and unjustifiably impairs the effective operation of the University. [4]  A persistent failure is one that continues after written notice to a faculty member from his or her Unit Head or higher administrator that one or more responsibilities are not being fulfilled.

Concerns about minor deficiencies of Faculty conduct should be resolved in an early, local, and informal process by a supervisor, typically a Unit Head. Trivial or frivolous concerns about a faculty member's conduct should be handled at this administrative level. The goal for a Unit Head or other supervisor is to help faculty correct a deficiency that might later be subject to a formal corrective or disciplinary action.

This Code specifies the scope of the work of the Faculty Responsibilities Committee. It does not alter the jurisdiction or the responsibilities of other University offices or committees.  For example, with the exception of Section G.2, below, this Code does not cover allegations of unlawful discrimination or harassment (including discrimination in the denial of tenure, promotion, or reappointment), which are handled by the Office of Institutional Diversity, Equity, and Affirmative

Action (IDEAA).[5] If any other University office or committee has jurisdiction over some of the allegations that arise, the Faculty Responsibilities Chair and the responsible office or committee will consult and determine the order of proceedings.  See also Section G.12, below.

Faculty members and administrators may not retaliate against those who make allegations of Faculty Misconduct or against anyone who participates in the process set forth in this Code. Retaliation may be grounds for an allegation of Faculty Misconduct under the provisions of this Code, or grounds for a grievance according to the Faculty Grievance Code.

# 2. Emergency Administrative Actions

If an Executive Vice President concludes that an allegation of Faculty Misconduct requires immediate action that cannot wait for normal processes of review because a faculty member's conduct currently poses a serious risk to safety or to the effective operations of the University, the Executive Vice President may place the faculty member on administrative leave with pay. A Formal Charge must be submitted, or an investigation initiated by IDEAA or other appropriate office or committee, within 10 days after the administrative leave begins or the faculty member must be reinstated. The Executive Vice President may require that the administrative leave continue until the full process described in this Code is concluded and/or the matter is fully resolved.

# 3. Composition and Responsibilities of the Faculty Responsibilities Committee

a.  **Composition.** The Faculty Responsibilities Committee is a standing committee consisting of seventeen tenured members of the faculty, nine of whom are appointed from the Main Campus of the University and four of whom come from each of the Medical and Law Center campuses of the University. The Faculty Senate must appoint nine members and the University President must appoint eight members.  A faculty member accused of misconduct who is not a Georgetown employee may request the Chair of the Faculty Responsibilities Committee to appoint an additional faculty member for the handling of his or her case. If the Chair of the Faculty Responsibilities Committee decides that the request is appropriate, he or she should appoint an additional faculty member (who need not hold tenure) with relevant expertise and knowledge of the professional situation to serve on an ad hoc basis as a non-voting member of a Panel appointed to conduct an investigation (see Section G.9).

b.  **Administrator Eligibility.** Tenured faculty members simultaneously serving as administrators are eligible to serve on the Committee, except that current Unit Heads, Deans, and Executive Vice Presidents are not eligible to serve. Administrators appointed to the Committee must be recused for cases that originate in any unit in which they have an appointment.

c.  **Duration of Term.** Terms commence on July 1st and expire on June 30th. The normal term is three years. Members of the Committee are eligible for reappointment to a second term, after which they may not serve for a third term. Following one full term (3 years) off the committee, former members are eligible for reappointment.

d.  **Chair and Vice Chair.** The President of the Faculty Senate must appoint, from the members of the Committee, a Chair and a Vice Chair of the Committee, each to serve a three-year term, with the terms staggered. These appointments may be renewed.

e.  **Removal.** If the Chair, Vice Chair, or any member of the Committee fails to effectively perform the responsibilities delineated in this Code, he or she may be removed by the President of the Faculty Senate after consultation with the President of the University.

# 4. Confidentiality Requirements

Members of the Committee and others privy to confidential information about the proceedings (including individuals raising concerns about Faculty Misconduct, witnesses, and Advisors) must maintain confidentiality about the initiation, investigation, and resolution of the matter, except:

a. when confidentiality is waived by a written agreement of the Parties;

b. when the Dean, as appropriate, shares information about the progress or the outcome of the process with the individual(s) who brought forward the allegation of Faculty Misconduct;

c. if a matter handled by the Faculty Responsibilities Committee is grieved because the Executive Vice President or President has taken an additional action beyond that specifically recommended by the Faculty Responsibilities Committee, the Chair of the Faculty Responsibilities Committee may share with the Grievance Committee: the Panel Report; any report from an appeal; and any other Faculty Responsibilities Committee information that the Chair of the Faculty Responsibilities Committee and the Chair of the Grievance Committee both deem necessary (or, in cases of disagreement between them, that the President of the Faculty Senate, whose decision is final, also deems necessary);

d. if a Panel discovers information that appears to be evidence of potential Faculty Misconduct during its investigation that is outside the scope of the Formal Charge, the Panel may, at its discretion, refer that information to the appropriate dean to conduct the Dean's Review as set forth in Section G.6.b, below, including amending the Formal Charge, initiating a new Formal Charge, or dropping the Formal Charge; or

e. as required by law.

Any participant who is not a faculty member, student, or staff member of Georgetown University must sign a confidentiality agreement to be provided by the Chair of the Faculty Responsibilities Committee before participating. A breach of confidentiality may be grounds for an allegation of Faculty Misconduct under this Code or for a grievance as covered by the Faculty Grievance Code, and may be grounds for other remedial action, but it does not invalidate the proceedings.

# 5. Stages in Processing Allegations of Faculty Misconduct

Five stages in the processing of allegations of Faculty Misconduct are distinguished in the following sections:

Stage 1: Initial Review

Stage 2: Formal Charges

Stage 3: Conciliation and Mutual Resolution

Stage 4: Formal Investigations, Hearings, and the Resolution of Allegations

Stage 5: Appeals and Final Decision-Making Authority

# 6. Stage 1: Initial Review

a. **The Unit Head's Role**
Anyone—including students, faculty, staff, and administrators—with a concern that a faculty member may not be fulfilling his or her responsibilities may express the concern to the appropriate Unit Head, who must attempt to resolve the matter or take the matter to the Dean within 5 days.  If the concern is about the Unit Head's conduct, or the Unit Head has a potential conflict of interest, the person raising a concern about Faculty Misconduct may take the concern directly to the Dean.

b. The Dean's Review If the issue is not resolved through the Unit Head's efforts, either the Unit Head or the

person raising a concern about Faculty Misconduct may take the concern directly to the appropriate Dean (where the "appropriate Dean" is determined by each school or campus) or to the Dean's designee, who must be a tenured member of the faculty. The following course of action must then be taken. The Dean must determine whether the allegation of Faculty Misconduct, if substantiated, would constitute a failure on the part of the faculty member to fulfill one or more faculty responsibilities. If it would not constitute a failure, further action is not required. If it would constitute a failure, the Dean must gather the relevant information and assess the evidence. If the Dean determines that there is insufficient evidence that the alleged conduct occurred, further action is not required. If the Dean determines that sufficient evidence exists that the faculty member failed to meet a responsibility and that the failure was not sufficiently serious on its own to constitute Faculty Misconduct, but would be Faculty Misconduct if it were persistent, the Dean must make a record of the determination and provide written notice to the Faculty member. If the Dean determines that sufficient evidence exists of Faculty Misconduct to warrant a formal investigation, the Dean must file a Formal Charge. The Dean must, within 10 days after the day the Dean receives the concern, conclude his or her review and file a Formal Charge, if warranted, with the Chair of the Faculty Responsibilities Committee, and with a copy to the Respondent. The Dean has the discretion to inform the individual(s) who brought forward the concern about faculty conduct (see also Section G.4.b, above). If, during the Dean's review, a resolution is achieved through an agreement to the satisfaction of the Dean and the accused faculty member(s), the Dean must document the resolution and maintain the documentation in the Dean's files, which must be made available to his or her successors as Dean. [6] If the Dean decides not to advance the concern to a Formal Charge, he or she must notify the accused faculty member(s) and the individual(s) who brought the concern to the Dean. For the Law Center, the Dean's decision is final. For all other campuses, if an individual who brought the concern to the Dean is not satisfied with the Dean's decision, he or she may petition the Chair of the Faculty Responsibilities Committee to proceed with a Formal Charge. The Chair then must review the Dean's decision. If the Chair agrees with the Dean, the decision is final and the matter is ended. If the Chair disagrees with the Dean, the Chair must appoint an impartial senior administrator who is a tenured faculty member to proceed with a Formal Charge.

# 7. Stage 2: Formal Charges

A Formal Charge must provide a precise statement of the alleged Faculty Misconduct, identifying the Respondent and, if possible, all individuals with relevant knowledge. All evidence assembled by the Dean during the course of the Dean's review must be attached to the Formal Charge and submitted to the Chair of the Faculty Responsibilities Committee.

Upon receipt of a Formal Charge, the Chair of the Faculty Responsibilities Committee must thereafter monitor the process to ensure that all processes and requirements delineated above and below are followed.

The Respondent may submit a written Answer to the Formal Charge to the Chair of the Faculty Responsibilities Committee and the Dean within 10 days after receipt of the Formal Charge. In the Answer the Respondent has the right to respond in depth, and at length, in his or her defense and to challenge the evidence submitted. The Respondent may offer countervailing materials and identify individuals with relevant knowledge. The Respondent may respond to the Formal Charge even if the Respondent's contract with the University expires during the course of this process or had previously expired.

# 8. Stage 3: Concilation and Mutual Resolution

If an Answer has been submitted, the Chair of the Faculty Responsibilities Committee must, within 5 days after receipt of the Answer, or as soon thereafter as circumstances permit, appoint a Conciliator to attempt to reach an informal resolution of the issues. A Conciliator must be a tenured Georgetown faculty member. If the Chair of the Faculty Responsibilities Committee judges in his or her sole discretion that the facts of the case indicate that Conciliation would be unproductive or inappropriate, it should not be attempted.

The Chair of the Faculty Responsibilities Committee must provide to the Conciliator the Formal Charge and the Respondent's Answer. All meetings with a Conciliator must be closed, and all communications must be kept confidential. Advisors for the parties are not permitted to have any contact with a Conciliator during the process of conciliation.

The Conciliation must be completed within 10 days after the appointment of the Conciliator. The process may be extended by the Chair of the Faculty Responsibilities Committee. The Conciliator must destroy his or her copies of documents and related materials after completion of the conciliation process.

a. **The Conciliation Outcome**
   At the conclusion of the Conciliation process, the Conciliator must, within 3 days, report in writing the results of the process to the Chair of the Faculty Responsibilities Committee, stating whether the issues raised in the Formal Charge have or have not been resolved.If a resolution has been reached, the Conciliator must draft a document describing the specific terms of the agreed resolution. This document must be signed by the Parties, and within 10 days of reaching resolution, must be sent to the Chair of the Faculty Responsibilities Committee. The Chair must then terminate the Formal Investigation unless the Chair of the Faculty Responsibilities Committee determines that this agreement does not adequately resolve the matter, in which case the Chair will notify the Parties.If the Conciliator determines that no resolution can be reached, the Conciliator must so inform the Parties and the Chair of the Faculty Responsibilities Committee, who then must proceed with a Formal Investigation.

b. **Mutual Resolution**
   Apart from the Conciliation process, the Parties may, at any time (including during Stage 4; see Section G.9), reach a mutually agreed resolution of the issues raised in the Formal Charge. In some cases, a resolution may be achieved through an agreement between the Respondent and the Dean, such as an agreement on a set of corrective actions (see Section G.10). If an agreement is reached, the Dean and the Respondent must draw up a document stating its specific terms. This document must be signed by the Dean and the Respondent before it is sent to the Chair of the Faculty Responsibilities Committee. The Chair must terminate the Formal Investigation unless the Chair determines that this agreement does not adequately resolve the matter, in which case the Chair will notify the Parties.

c. **Record-Keeping and Monitoring**
   The Dean and the Chair of the Faculty Responsibilities Committee must maintain a copy of all documented resolutions of Formal Charges, including resolutions by conciliation. The Dean and the Chair of the Faculty Responsibilities Committee are both responsible for monitoring subsequent events to ensure that the conditions of the resolution are met. If the Dean concludes that a significant condition of the resolution has not been met, the Dean can consult with the Chair of the Faculty Responsibilities Committee, who has authority to re-open the Formal Investigation.If a mutual resolution is reached after a Panel has been formed (see Section G.9), the Panel may cease work, but must leave an orderly and complete record of what the Panel learned during its Formal Investigation. The records must be forwarded to the Chair of the Faculty Responsibilities Committee, who has authority to reinstate the Panel if problems arise with enforcement of the mutual resolution.

# 9. Stage 4: Formal Investigations, Hearings, and the Resolutions of Allegations

This section delineates steps and processes in the investigation of Formal Charges, hearings by faculty panels, and the formulation of decisions and recommendations pertaining to the resolution of allegations of Faculty Misconduct.

a. Panels: Their Nature and Appointment The goal of the Formal Investigation is to determine whether the Respondent has engaged in Faculty Misconduct and, where necessary, to recommend an appropriate form of correction or discipline.The Chair of the Faculty Responsibilities Committee must appoint a 3-member Panel to conduct a Formal Investigation of the Formal Charge.[7] Panels consist of three impartial faculty members from the Faculty Responsibilities Committee. Parties have the right to object to the appointment of one or more Committee members to the Panel on grounds of improper partiality, typically a bias or conflict of interest. In an objection, specific reasons must be stated in writing. The objection must be made to the Chair of the Faculty

Responsibilities Committee within five days of receiving notification that Conciliation has failed or will not be attempted. The Chair must wait until the end of the five-day period to make panel appointments, and must take the reasons presented in an objection into account. Within the next five days, the Chair of the Faculty Responsibilities Committee must appoint the Panel. The decision of the Chair of the Faculty Responsibilities Committee is final. The Chair of the Faculty Responsibilities Committee must designate one member to serve as Panel Chair and must provide the Panel with the Formal Charge, the Respondent's Answer, and any other documentation or information that the Chair deems helpful and consistent with the confidentiality provisions of the Faculty Handbook.

b. **Hearings**

Unless waived by all Parties, the Panel must hold a hearing. The Panel Chair, after consulting the Parties, must notify the Parties of the time and place of the hearing, which the Panel must hold as promptly as possible. Prior to the hearing, the Parties may make a submission containing arguments, written evidence, or other documentation—including new information—that they believe relevant. In addition to the deadlines specified below, the Panel Chair must state the date by which this filing of documents must be submitted, but no later than 10 days before the hearing. Each Party must email his or her full submission to the Panel Chair and the other Parties. No documentation may be submitted after the deadline. No later than 5 days before the hearing each Party must notify the Panel Chair and the other Party of witnesses he or she intends to call. Each Party bears responsibility for arranging the attendance of witnesses. The Panel has the sole authority to determine the information relevant to its investigation. The Panel has discretion to meet as it sees fit in preparation for the hearing and to determine what it needs, how many and which of the witnesses proposed by the Parties are to be heard, the scope of appropriate questioning by Parties, and how to conduct the hearing. The Panel may call its own witnesses and must provide notice of these witnesses to the Parties no later than 2 days before the hearing. The hearing must be electronically or otherwise recorded verbatim. Upon request of a Party, a copy of the recording must be furnished to the Parties at the University's expense. Each Party has the option of selecting one Advisor to accompany him or her to the Panel hearing, and must notify the Panel Chair and the other Parties of the Advisor's name and whether he or she is an attorney. If either Party indicates that they will be accompanied by an Advisor who is an attorney, the Chair of the Panel must notify the Office of General Counsel and the other Party. During Panel hearings, Advisors may not speak on behalf of the Party or otherwise represent the Party, but may consult with the Party when not in the presence of the members of the Panel, including off-record consultation during a break in a hearing. If an Advisor speaks during a hearing, he or she may be dismissed from the hearing by the Panel Chair.

Each Party and the Panel may present evidence, may examine evidence submitted to the Panel at the hearing by anyone, and may question witnesses as they appear.

General procedures recommended for conducting a hearing are the following:

i. The Panel Chair should explain to both Parties the purpose of the hearing, the procedures to be followed, and the rights of the Parties.
ii. The Panel Chair should provide a reasonable opportunity for the Parties to be heard.
iii. The Panel and the Parties should have a reasonable opportunity to question the Parties and all witnesses.
iv. The Panel may adjourn the hearing to as needed to gather additional evidence.
v. The Panel Chair may terminate discussion during the hearing of matters that are not relevant to the issues before the Panel.
vi. The Panel Chair should give the Parties an opportunity to make brief closing statements.
vii. The Panel should deliberate in private after the closing statements.

c. Panel Report. Within 15 days after the date the hearing is closed, the Panel must submit to the Chair of the Faculty Responsibilities Committee a Panel Report of its findings, conclusions, and recommendations. The 15-day period may be extended by the Chair of the Faculty Responsibilities Committee at the request of the Panel, but the extension should not be granted beyond 10 additional days unless the record of the Formal Investigation reflects exceptional conditions and the reasons for the requested extension are documented. The Panel Report must contain the Panel's factual findings and recommendations. The Panel must decide, by a vote of a majority of the Panel, based on the preponderance of the evidence, whether one or more Respondents have engaged in Faculty Misconduct. If the Panel decides that Faculty Misconduct has occurred, it must make a recommendation

of appropriate corrective or disciplinary action(s) (see Section G.10).Within 3 days after receipt of the Panel Report, the Chair of the Faculty Responsibilities Committee must forward the Report to the Parties. 10. Corrective and Disciplinary Actions When a Panel makes a finding of Faculty Misconduct, it should recommend either 1) corrective action, 2) disciplinary action, or 3) some combination of 1) and 2). The Panel should recommend actions that are proportionate to the severity of the Misconduct and designed to ameliorate, improve, or punish the Misconduct. Corrective Actions Corrective actions are intended to facilitate a Respondent's compliance with his or her faculty responsibilities or to ameliorate the effects of past non-compliance. Possible corrective actions, which may be combined, include, but are not limited to: a tailored intervention such as training, coursework, mentoring, review of syllabi, evaluation of course materials or teaching, or participation in faculty research workshops or support groups; monitoring of progress in the correction of behavior; an apology by the Respondent to the individual(s) harmed by the Faculty Misconduct; and a recommended course of counseling, monitored for compliance. Disciplinary Actions Disciplinary actions are institutional responses to Faculty Misconduct that call for more than a corrective action. Disciplinary actions generally have a punitive, and perhaps deterrent, purpose, not merely a corrective purpose. Possible disciplinary actions, which may be combined, include, but are not limited to: a letter of reprimand; loss of faculty privileges;[8] probation;[9] denial of a salary increase, bonus, or other remuneration; reduction of salary; unpaid suspension from work for a stated period of time; removal of duties, with commensurate reduction in pay; reduction of rank; termination of employment; and revocation of tenure.[10] 11. Stage 5: Appeals and Final Decision-Making Authority If the Panel recommends only Corrective Action(s), the Panel's findings and recommendations may be appealed by the Parties, but only on grounds of significant procedural error or evidence unavailable to the Parties at the time of the hearing. If the Panel recommends a Disciplinary Action, the Panel's findings and recommendations may be appealed on grounds of significant procedural error, evidence unavailable to the Parties at the time of the hearing, factual error pertaining to a fundamental issue, or the inappropriateness of the recommended disciplinary action given the findings of fact. Appeals and Reviews To appeal the Panel's decision, a Party must submit a written appeal to the Chair of the Faculty Responsibilities Committee within 10 days of receipt of the Panel Report. This appeal must not exceed 3,500 words and must state the grounds for appeal and provide any new evidentiary materials (which are not counted in the 3,500 word limit) that form the basis for the appeal. The Party must email his or her appeal to the other Party and to the Chair of the Faculty Responsibilities Committee.  The other Party has 10 days from receipt of the written appeal to send a response by email (limited to 3,500 words) to the Committee Chair and the other Party.Within 15 days after receipt of both the appeal and the response(s), the Chair of the Faculty Responsibilities Committee must convene the Committee to consider the merits of the appeal, any responses received, and the full record assembled by the original Panel. Members of the original Panel may participate in the Faculty Responsibilities Committee's discussion of the appeal but must not vote on the appeal. All other members of the Committee, including the Chair, may vote.The Faculty Responsibilities Committee must decide whether the reasons presented in the appeal are legitimate grounds for an appeal and sufficient to reverse or revise all or part of the Panel's decision(s). The Panel's finding(s) of fact may be overturned or remanded if and only if the Faculty Responsibilities Committee finds them to be clearly erroneous.  In the event of disagreement among members of the Committee, a majority vote of members in attendance decides the matter. The Faculty Responsibilities Committee may 1) uphold the Panel's findings and recommendations, if any, regarding corrective or disciplinary action; 2) uphold the findings but adjust the recommendations for correction or discipline; 3) overturn the findings and recommendations and, if necessary, recommend different corrective or disciplinary action(s); or 4) remand the case to the Panel with instructions to act.If the case is not remanded, the Faculty Responsibilities Committee must issue a report containing its decision, including supporting reasons, within 10 days after the Committee reaches its decision. Final Decision-Making Authority After the Faculty Responsibilities Committee has decided an appeal, or the period to appeal expires without appeal, the Chair of the Faculty Responsibilities Committee must within 10 days provide the report to the Parties and the Executive Vice President of the Respondent's campus.  The Chair must transmit the full record in the case to the relevant Executive Vice President.The Executive Vice President must issue a written decision in the case within 15 days after receipt of the Faculty Responsibilities Committee's report and must forward it to the Parties and the Chair of the Faculty Responsibilities Committee.  The Executive Vice President has the option of remanding the case to the Faculty Responsibilities Committee with instructions about further proceedings. The Executive Vice President has the authority to deviate from the recommendations of the Faculty Responsibilities Committee, but he or she should do so only in exceptional circumstances and for reasons that are communicated to the Chair of the Faculty Responsibilities Committee and distributed to all members of the committee.The Executive Vice President's decision is final.When a decision about a proper corrective or

disciplinary action has been reached and communicated to the affected faculty member, he or she must comply with the requirements of the corrective or disciplinary action and must not engage in further Faculty Misconduct.The Respondent's Dean and the Executive Vice President are jointly responsible for ensuring that corrective or disciplinary action is properly carried out. When the Respondent believes the corrective requirements have been fulfilled, he or she must submit documentation to the Dean demonstrating that he or she has satisfied the requirements. 12. Results of Other University Processes If there are allegations against a faculty member that are referred under Section G.1, above, to IDEAA or another University office or body, and that review results in a finding(s) that a faculty member violated the University's policies, the Executive Vice President may submit the results to the full Faculty Responsibilities Committee for the purpose of recommending corrective or disciplinary action. In such cases, the Executive Vice President has the authority to deviate from the recommendations of the Faculty Responsibilities Committee, but he or she should do so only in exceptional circumstances and for reasons that are communicated to the Chair of the Faculty Responsibilities Committee and distributed to all members of the committee. The Executive Vice President's decision is final. 13. Grievances of Corrective and Disciplinary Actions No part of a final decision specifically recommended by the Faculty Responsibilities Committee can be grieved under the Faculty Grievance Code. However, any disciplinary or corrective action taken by the Executive Vice President (or President, as applicable) beyond an action specifically recommended by the Faculty Responsibilities Committee, or taken when the Faculty Responsibilities Committee has not recommended disciplinary or corrective action, is subject to the Faculty Grievance Code. A grievance on these grounds may be filed only after the final decision. 14. Faculty Responsibilities Committee Record Keeping The Dean and the Chair of the Faculty Responsibilities Committee must keep a copy of all documentation pertaining to the processing of a Formal Charge, and the Chair must forward a copy to the Secretary of the University as a record of the proceedings at the conclusion of the matter. 15. General Administrative Procedures The following administrative procedures and rules govern the Faculty Responsibilities Committee. The Chair of the Faculty Responsibilities Committee has discretion, before the expiration of the time limits set by this Code or within ten days thereafter, to extend the time or times within which action must be taken under this Code if in his or her judgment such extension of the time is appropriate—as, for example, when Committee members are unavailable due to a holiday recess. A time extension might be needed in addition to other provisions for time extensions provided herein. The Chair must notify all Parties of an extension of a time limit that is specified under this Code. No proceeding, decision, or determination made during the course of proceedings under this Code may be invalidated for failure by the Faculty Responsibilities Committee, one of its Panels, or an administrator to act within applicable time limits under this Code. Members of Panels must be attentive to actual and apparent bias and conflict of interest and must recuse themselves if they have an apparent bias or conflict of interest. Panel members bear a burden to recuse themselves, as appropriate, but, as in Section G.9.a, the Chair of the Faculty Responsibilities Committee has the discretion to recuse panel members when the Chair determines that they have a bias or conflict of interest. If the Chair has a bias or conflict of interest in a case, the Vice Chair must assume the responsibilities of the Chair for that particular case. The Committee has a right to establish, by majority vote, any procedures to the extent not defined by this policy such as, but not limited to, rules related to balloting, quorum, and the time frame of activities. The Committee may define any terms not defined in this policy and may establish additional guidelines to protect the interests of individuals who allege Faculty Misconduct, Respondents, and the University. All participants are required to cooperate with the processes delineated in this Code. If a participant refuses to cooperate, the processes must continue without his or her participation. 16. Definitions The following definitions of terms are used for the purposes of this Code: Advisor: An individual who is designated by and gives advice to a Party.[11] Answer: A response to Formal Charges that the Respondent has an opportunity to submit at the commencement of a Formal Investigation.[12] Conciliation: The process of mediation entrusted to a Faculty member (the Conciliator) that normally follows the filing of a Formal Charge and precedes a Formal Investigation. Day: Throughout this Code the words "day" and "days" refer to working days, excluding University holidays. Faculty: For purposes of this Code, "Faculty" refers to all persons appointed by the University as faculty to teach or conduct scholarly research except those whose employment at the University is governed by a collective bargaining agreement. Faculty Misconduct: 1) Serious or persistent failure to meet a faculty responsibility stated elsewhere in this Handbook (and not handled through merit review and related reviews established in individual units of the university); 2) serious or persistent failure to comply with the terms of a faculty member's contract or letter of appointment or failure to comply with applicable department, program, school, campus, or University policies; or 3) conduct that seriously, demonstrably, and unjustifiably impairs a significant department, program, school, campus, or University function. Formal Charge: A written document that a Dean files after conducting an initial investigation and that

initiates a Formal Investigation of an allegation of Faculty Misconduct. Formal Investigation: A careful gathering of information and critical scrutiny of the merit of the Formal Charge conducted by a Panel of the Faculty Responsibilities Committee. Panel: A subset of three faculty members of the Faculty Responsibilities Committee charged with conducting an investigation of a Formal Charge, holding hearings, reaching findings, and formulating recommendations. Panel Report: A report issued by a Panel regarding its findings and recommendations after it concludes the Formal Investigation. Parties: The Respondent and the Dean or other university official who brings the Formal Charge. Respondent: A faculty member or group of faculty members against whom an allegation of Faculty Misconduct has been made to a Unit Head or Dean. Unit Head: An academic administrator to whom the Respondent directly reports or is accountable, typically at the level of a department chair or Dean of the unit in which the Respondent holds his or her primary faculty appointment.

# Endnotes to Faculty Responsibilities Code

1. See further the introduction to faculty responsibilities found in the Faculty Handbook, III.C, "Faculty Rights and Responsibilities."
2. As supplemented or amended by the policies, contracts, or letters of appointment applicable to individual faculty members.
3. Faculty Handbook, III.C.11.a.
4. Examples include flagrant interferences with the exercise by colleagues or students of their rights of free inquiry and expression.
5. Faculty Handbook, IV.A "Affirmative Action Grievance Procedures."
6. If an administrator other than the Dean has been designated by the Chair of the Faculty Responsibilities Committee because the Respondent's Dean is conflicted or otherwise unavailable, the designated administrator will ensure that the proper documentation is provided to the Respondent's Dean in a form suitable for filing.
7. If the Formal Charge relates to a prior Formal Charge that is under investigation by a Panel, the Chair of the Faculty Responsibilities Committee has the authority to assign the new Formal Charge to the same Panel.
8. Examples include removal from office, project, or home unit; loss of office space; research funding; access to Teaching Assistants or Research Assistants; attendance at faculty meetings; and voting rights.
9. This term here means a period of monitoring behavior to ensure good behavior under supervision. Inappropriate behavior during the period presumably calls for more severe sanctions.
10. The grounds for revocation of tenure are delineated in the Faculty Handbook, III.D.3. (Return to text)
11. See Section III.G.9.b "Hearings" on the role of an Advisor. (Return to text)
12. The Answer includes evidentiary materials submitted with the Answer. (Return to text)