

<u>Faculty Handbook</u>

# J. Policy on Sexual Misconduct

*Effective August 14, 2020; Revised on July 1, 2022*

# Policy Statement

Georgetown University has adopted this Policy on Sexual Misconduct ("Policy") in recognition of our commitment to provide a safe and hospitable environment for all members of our community to work and study. Sexual Misconduct subverts the University's mission, diminishes the dignity of members of the community, and threatens permanent damage to the careers, educational experience, and well-being of our students, faculty and staff.

The University prohibits Sexual Misconduct as defined in this Policy, including unwanted conduct of a sexual nature that constitutes sexual harassment, sexual assault, domestic violence, dating violence, and stalking. Sexual harassment is prohibited by Title VII of the Civil Rights Act of 1964 ("Title VII"), Title IX of the Education Amendments of 1972 ("Title IX"), and the District of Columbia Human Rights Act ("DCHRA"). Retaliation for the purpose of interfering with any right or privilege secured by this Policy is also strictly prohibited.

Individuals of any sex or gender may experience Sexual Misconduct and Sexual Misconduct may occur between persons of the same or different sex(es) or gender(s). In the case of sexual harassment, the injured party does not have to be the person harassed but could be anyone affected by the offensive conduct.

Georgetown has established Grievance Procedures for the prompt, fair, and impartial resolution of all Complaints of Sexual Misconduct (see Appendix B). In addition, the U.S. Department of Education's regulations implementing Title IX prescribe specific Grievance Procedures that must be applied to a narrower subset of Sexual Misconduct defined as "Title IX Sexual Harassment" in Appendix A of this Policy. As such, each Georgetown campus and IDEAA have developed specific Grievance Procedures for Complaints of Title IX Sexual Harassment, which apply to that subset of conduct. Different Grievance Procedures apply depending on the nature of the Complaint (e.g., whether or not the Sexual Misconduct is "Title IX Sexual Harassment"), the status of the Complainant and Respondent (employee, student, or other), and the campus with which the Respondent is affiliated. Grievance Procedures are described in Appendix B.

This Policy on Sexual Misconduct will be widely disseminated to members of the University community and will be consistently enforced. The Policy will be reexamined and updated as appropriate.

# Scope and Jurisdiction

This Policy applies to allegations of Sexual Misconduct against an Employee (faculty member, Academic Administrative Professional (AAP), or staff member) or Student of Georgetown University, regardless of where the alleged conduct occurred. Third parties (e.g. contractors, applicants for admission or employment, vendors, recruiters, affiliates) may also report Sexual Misconduct against Employees and Students of the Georgetown community under this Policy.

The actions of third parties (e.g., contractors, applicants, vendors, recruiters, affiliates, volunteers) that impact students or employees may also be subject to review under this Policy. If a third party is the accused, the Title IX Coordinator(s) will refer the grievance to an appropriate authority for resolution.

Cases that allege sex-based discrimination that does not constitute Sexual Misconduct (e.g., excluding an individual from participation in or denying an individual the benefits of programs or activities, or subjecting an individual to differential treatment, on the basis of sex, as well as ostensibly neutral policies or practices that have a disparate impact on the basis of sex), are addressed under the following University policies and procedures: Equal Opportunity and Non-Discrimination in Employment (new window); Equal Opportunity and Non-Discrimination in Education (new window); and the IDEAA Grievance Procedures to Investigate Allegations of Discrimination and Harassment (new window). Consensual sexual and romantic relationships are addressed under the University's Policy on Consensual Sexual or Romantic Relationships (new window).

Nothing in this Policy limits or abridges the University's Speech and Expression Policy. If an issue of Sexual Harassment is raised in strictly academic areas, such as coursework, the matter will be handled in consultation and coordination between the Title IX Coordinator(s) and the Executive Vice President or Dean of the faculty member's school because such matters may also implicate issues of academic freedom.

The Title IX Coordinator oversees the administration of this Policy.

# Title IX Coordinator and Deputy Title IX Coordinators

The University has appointed a Title IX Coordinator and Deputy Title IX Coordinators, listed below, who help provide a nondiscriminatory educational and work environment to students and employees, provide information about available on- and off-campus resources, explain the University's formal complaint process, help individuals navigate the University's systems, and monitor the University's climate with respect to Sexual Misconduct. Inquiries about the application of this Policy or Title IX to the University may be referred to the University's Title IX Coordinator(s), to the Assistant Secretary of the U.S. Department of Education, or both.

The University's Title IX Coordinator can be contacted at:

> Office of Institutional Diversity, Equity, and Affirmative Action
> M-36 Darnall Hall
> 37th & O Streets NW
> Washington, DC 20057
> Phone: (202) 687-4798
> Fax: (202) 687-7778
> Email: titleixideaa@georgetown.edu

The University has designated Deputy Title IX Coordinators for each of the following: Undergraduate students; Main Campus Graduate Students (including Biomedical Graduate Education students); the School of Medicine; the Law Center; the School of Continuing Studies; Georgetown University in Qatar; and Faculty and Staff.

A list of the Title IX Coordinator and Deputy Title IX Coordinators is available on the University's website at https://titleix.georgetown.edu/title-ix-contacts (new window).

# Definitions

Appendix A contains the definitions that apply to this Policy.

# Reporting Obligations for Employees

Any Employee (other than those who are prohibited from reporting, noted below) who learns of conduct that may violate this Policy must contact the Title IX Coordinator or appropriate Deputy Title IX Coordinator within 24 hours, or as soon as possible. The University recognizes that supervisors (including those who supervise employees and those who supervise students) bear a particularly important responsibility to deter Sexual Misconduct.  Only those individuals who are statutorily prohibited from reporting or identified by the University as confidential (such as health professionals and certain members of Campus Ministry to whom pastoral privilege applies and those designated as ombudspersons) shall not have a duty to report to the Title IX Coordinator or a Deputy Title IX Coordinator.  If in doubt as to whether certain conduct violates this Policy, or if you have any questions about this Policy or its application, please consult with the Title IX Coordinator or a Deputy Title IX Coordinator.

# Reporting Sexual Misconduct

Any individual may report Sexual Misconduct to the Title IX Coordinator(s) in person, by phone, by mail, or by electronic submission (such as by e-mail or through an online portal provided by the University for reporting purposes). A Report is not a Complaint. Upon receipt of a Report, the Title IX Coordinator(s) will promptly contact the individual alleged to have experienced Sexual Misconduct to discuss and provide written notice of the availability of Supportive Measures with or without the filing of a Complaint, consider that individual's wishes with respect to Supportive Measures, and offer to explain the process and options for filing a Complaint.  More information about reporting Sexual Misconduct is available at: https://sexualassault.georgetown.edu/report/ (new window).

# Provision of Supportive Measures and Resources

Supportive Measures, as defined in Appendix A, are available on an equitable basis to individuals who are alleged to have experienced Sexual Misconduct and those who have been accused of Sexual Misconduct.  Individuals impacted by Sexual Misconduct are encouraged to seek confidential counseling and other support resources offered by the University and by off-campus providers. Individuals are encouraged not to wait to seek confidential counseling, and University counselors can take proactive steps to assist concerned individuals. A description of these resources is available on the University's website at: https://sexualassault.georgetown.edu/resourcecenter (new window). In addition, a description of the Faculty and Staff Assistance Program is available at: http://hr.georgetown.edu/fsap/ (new window).

# Filing a Complaint of Sexual Misconduct

An individual may file a Complaint by submitting a form designated by the Title IX Coordinator to the Title IX Coordinator (in-person, by mail, or e-mail) alleging Sexual Misconduct against a Respondent and requesting that the University investigate the allegation. Once a Complaint is filed, the Title IX Coordinator will review the Complaint, determine which Grievance Procedures apply based on the information in the Complaint, and refer that case for investigation and resolution under the appropriate Grievance Procedures, as outlined in Appendix B.

# Informal Resolution

Except as limited by the Grievance Procedures applicable to Title IX Sexual Harassment (as described in Appendix B, §10), the University may, at any time prior to reaching a determination regarding responsibility, facilitate a voluntary Informal Resolution process, such as mediation, that does not involve a full investigation and adjudication. Engaging in Informal Resolution must be agreed to by all parties and the Title IX Coordinator.

# Administrative Action

In the event that an individual impacted by Sexual Misconduct declines to file a Complaint, the University will offer Supportive Measures and resources. The University may take other reasonable administrative actions to prevent the recurrence of any Sexual Misconduct and to correct its discriminatory effects, as appropriate, depending on the nature of the allegations.

# Other Reporting Options

In the event of a safety emergency, individuals should call the Georgetown University Police Department (GUPD) at 202-687-4343 (http://police.georgetown.edu/ (new window)) or the Metropolitan Police Department (MPD) at 911 (http://mpdc.dc.gov/ (new window)). In addition to filing a Complaint with the University, individuals may also choose to file a criminal complaint with GUPD or MPD at any time. At an individual's request, the Title IX Coordinator(s) is available to assist in notifying GUPD and/or MPD. All individuals have the right to seek a protective order or similar lawful order issued by a criminal or civil court in addition to Supportive Measures identified in this Policy.

An individual who wishes to file a criminal complaint or seek a protective order is urged to take steps to preserve evidence, as it may be necessary to the proof of criminal domestic violence, dating violence, sexual assault, or stalking, or in obtaining a protection order.

Because the standards for finding a violation of a criminal law are different from the standards articulated in this Policy, criminal investigations or reports are not determinative of whether a violation of this Policy has occurred. The filing of a Complaint under this Policy is independent of any criminal investigation or proceeding. The University's investigation may be temporarily delayed while the criminal investigators gather evidence. However, the University will not wait for the conclusion of any criminal investigation or proceeding before beginning its own investigation or implementing Supportive Measures to protect the Complainant and the University community, if necessary.

Individuals are encouraged to use all available internal procedures established to uphold this Policy before pursuing administrative remedies outside the University. However, the University acknowledges the rights of individuals to seek redress from any external enforcement agency, including the District of Columbia Office of Human Rights, the Equal Employment Opportunity Commission, and the Office for Civil Rights of the United States Department of Education. The filing of an external complaint or investigation will not preclude the University from investigating and addressing issues or concerns raised to the University, nor will it preclude any individual alleging to have experienced Sexual Misconduct from receiving Supportive Measures.

# Confidentiality

Complaints and Grievance Procedures under this Policy are treated as confidential by the University. The University complies with the Family Educational Rights & Privacy Act (FERPA) and other applicable privacy laws at all times in the course of investigations. The University will keep confidential the identity of any individual who has made a Report or Complaint of Sexual Misconduct, any Complainant, any individual who has been reported to be the perpetrator of sexual misconduct, any Respondent, and any witness, except as may be permitted by FERPA, or as required by law, or in order to conduct any investigation, hearing, or judicial proceeding arising from this Policy. The University complies with the

Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act and the Violence Against Women Act with respect to reporting and disclosure of campus security information.  The University will not restrict the ability of either party to discuss the allegations under investigation or to gather and present relevant evidence, as long as such conduct is not harassing or retaliatory.  The investigation, investigation report, and proceedings of the Grievance Procedures are considered confidential.

# Training

Training on this Policy, preventing Sexual Misconduct, and promoting a respectful community will be provided to Employees and Students. All Employees are responsible for completing training identified as mandatory. Investigations involving alleged violations of this policy shall be conducted by officials who receive training on issues related to sexual harassment, sexual assault, dating violence, domestic violence, and stalking as well as on how to conduct a grievance process that protects the safety of all parties involved and promotes accountability.

# Revocation by Operation of Law

In the event that any provision of the Title IX Final Rule, 85 Fed. Reg. 30026 (May 19, 2020) is modified, invalidated, or stayed by federal law (including any federal statute, administrative rule or regulation, direction from the Department of Education, executive order, or controlling judicial order), any related provision in this Policy will be modified or deemed inoperative consistent with that change in federal law for all pending or new proceedings covered by the Policy as of the effective date of the change in law.

Should the entire "Appendix B: Grievance Procedures for Sexual Misconduct and Title IX Sexual Harassment" be invalidated, any conduct that would otherwise be covered under Appendix B shall be investigated and adjudicated under other University conduct policies and procedures as appropriate.

# Appendix A

## Definitions

"Complainant" means an individual who has filed a Complaint or Title IX Complaint alleging Sexual Misconduct. In cases of Title IX Sexual Harassment, the Complainant is the individual who is alleged to be the victim of conduct that could constitute Title IX Sexual Harassment.  When deemed appropriate by the Title IX Coordinator in cases involving non-Title IX Sexual Misconduct, a University administrator may serve as the Complainant when an aggrieved individual declines to file a Complaint.

"Complaint" means a document filed by a Complainant or the Title IX Coordinator, or designee, alleging Sexual Misconduct against a Respondent and requesting that the University investigate the allegation of Sexual Misconduct.  A Complaint may be filed with the Title IX Coordinator in person, by mail, by electronic mail, or by any other means designated by the Title IX Coordinator.  As used in this paragraph, the phrase "document filed" means a document or electronic submission (such as by e-mail or through an online portal provided for this purpose by the University) that contains a physical or digital signature, or otherwise indicates the identity of the person who has filed the Complaint.  Certain Complaints alleging Title IX Sexual Harassment are considered "Title IX Complaints," as defined below.

"Consent" means words or overt actions indicating a freely given agreement to the sexual act or sexual contact in question.

*Interpretive guidance*:

- The willingness to participate must be clearly indicated prior to any sexual act or sexual contact.
- If at any time during the sexual act or sexual contact any confusion or ambiguity should arise on the issue of consent, it is incumbent upon the individual to stop the activity and clarify, verbally, the other's willingness to continue.
- A verbal "no," even if it may sound indecisive or insincere, constitutes lack of consent.
- The absence of an overt action or an explicit verbal response to a verbal request for consent constitutes lack of consent.
- It is expected that, once consent has been established, persons who change their mind during the sexual act or sexual contact will communicate through words or overt actions their decision to no longer proceed.
- Past consent to a sexual act or sexual contact does not imply future ongoing consent, and the fact that two persons are in an on-going relationship shall not preclude the possibility that Sexual Misconduct might occur within that relationship.
- A person's use of alcohol and/or other drugs shall not diminish such person's responsibility to obtain consent.
- Lack of verbal or physical resistance, or submission by the unwilling participant, when such submission results from the use of force, threats, or coercion by the Respondent shall not constitute consent.
- A person is considered incapable of giving consent if he/she/they are asleep, unconscious, and/or losing and regaining consciousness, or clearly mentally or physically incapacitated, for example, by alcohol and/or other drugs (signs of incapacitation include, but are not limited to, difficulty walking, inability to speak in a coherent manner, vomiting or the presence of vomit, etc.).
- Consent cannot be obtained through use of force, threats, fear, or by administering to another person by force or threat of force, or without the knowledge or permission of that other person, a drug, intoxicant, or other similar substance that substantially impairs the ability of that other person to appraise or control that other person's conduct.
- In determining whether consent exists, consideration will be given to what a reasonable person should have known about the other person's capability to give consent.

"Days" means business days, unless otherwise specified in the applicable Grievance Procedures, which shall govern.

"Decision-maker(s)" means those charged with making decisions regarding responsibility, sanctions, and appeals. The Decision-maker(s) or the process for selecting Decision-maker(s) from a qualified pool will be designated in each Grievance Procedure pursuant to Appendix B. There may be one or more Decision-maker(s).

"Employee" means a person who is employed by the University or has a faculty appointment at the time the alleged Sexual Misconduct occurred and at the time the Grievance Procedures are invoked.

"Fair" when used to describe Grievance Procedures means a process in which both parties will receive notice of the allegations, an opportunity to provide evidence, and an opportunity to be heard by an unbiased Decision-maker(s) who will determine whether or not this Policy was violated.

"Force" means the use or threatened use of a weapon; the use of such physical strength or violence as is sufficient to overcome, restrain, or injure a person; or the use of a threat of harm sufficient to coerce or compel submission by another person.

"Grievance Procedures" means the procedures used to respond to Complaints (including Title IX Complaints) through disciplinary proceedings or Informal Resolution. Each campus and IDEAA will establish its own Grievance Procedures that comply with this Policy. The requirements for Grievance Procedures are set forth in this Policy, including Appendix B.

"Informal Resolution" means a voluntary, informal resolution process, such as mediation, that does not involve a full investigation and adjudication.

"Non-Title IX Sexual Misconduct" means Sexual Misconduct that does not meet the definition of Title IX Sexual Harassment.

"Report" means a verbal or written (including electronic) communication from an individual alleging conduct that could constitute Sexual Misconduct, whether or not the individual is alleged to be the victim or target of the conduct.  A Report is not a Complaint.

"Respondent" means an individual who has been alleged in a Complaint to be the perpetrator of conduct that could constitute Sexual Misconduct.

"Retaliation" means intimidation, threats, coercion, discrimination, or other materially adverse action against any individual (1) for the purpose of interfering with any right or privilege secured by a sex discrimination law or this Policy, or (2) because the individual has made a report or complaint, testified, assisted, or participated or refused to participate in any manner in an investigation, proceeding, or hearing under this Policy.  Retaliation includes charges against an individual for code of conduct violations that do not involve sex discrimination or sexual harassment, but arise out of the same facts or circumstances as a Report or Complaint of sex discrimination or Sexual Harassment, when such charges are made for the purpose of interfering with any right or privilege secured by this Policy.

"Sexual Misconduct" means unwanted conduct of a sexual nature that constitutes Sexual Harassment, Title IX Sexual Harassment, Sexual Assault, Domestic Violence, Dating Violence, or Stalking.  Specifically, Sexual Misconduct includes:

1. Sexual Harassment:  Any unwelcome conduct of a sexual nature, including sexual advances, request for sexual favors, or other verbal or physical conduct of a sexual or gender-based nature when: Submission to such conduct is made explicitly or implicitly a term or condition of an individual's employment or academic relationship; or Submission to or rejection of such conduct is used as a basis for making an employment or academic decision affecting an individual; or Such conduct has the purpose or effect of interfering with an individual's work or academic performance, denying or limiting an individual's ability to participate in or benefit from the University's education programs, or creating an intimidating, hostile, or offensive environment.[1]
2. Title IX Sexual Harassment (as defined below).
3. Sexual Assault as defined under the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act ("Clery Act") (an offense classified as a forcible or nonforcible sex offense under the uniform crime reporting system of the Federal Bureau of Investigation), which includes:

   Any sexual act including Rape, Sodomy, Sexual Assault with An Object, or Fondling directed against another person, without the consent of the victim, including instances where the victim is incapable of giving consent; also unlawful sexual intercourse.

   a. Rape (Except Statutory Rape): The carnal knowledge of a person, without the consent of the victim, including instances where the victim is incapable of giving consent because of his/her age or because of his/her temporary or permanent mental or physical incapacity.
   b. Sodomy: Oral or anal sexual intercourse with another person, without the consent of the victim, including instances where the victim is incapable of giving consent because of his/her age or because of his/her temporary or permanent mental or physical incapacity.
   c. Sexual Assault With An Object: To use an object or instrument to unlawfully penetrate, however slightly, the genital or anal opening of the body of another person, without the consent of the victim, including instances where the victim is incapable of giving consent because of his/her age or because of his/her temporary or permanent mental or physical incapacity.
   d. Fondling: The touching of the private body parts of another person for the purpose of sexual gratification, without the consent of the victim, including instances where the victim is incapable of giving consent because of the victim's age or because of the victim's temporary or permanent mental incapacity.

   *Interpretive Guidance*

   i. This definition covers touching over and under clothing.
   ii. Private body parts means the genitalia, anus, groin, breast, inner thigh, or buttocks.
   e. Incest:  Sexual intercourse between persons who are related to each other within the degrees wherein marriage is prohibited by law.

Policy on Sexual Misconduct 007

    f. Statutory rape: Sexual intercourse with a person who is under the statutory age of consent. The age of consent in the District of Columbia is 16.

4. Dating violence: Violence committed by a person who is or has been in a social relationship of a romantic or intimate nature with the victim. The existence of such a relationship is determined based on a consideration of the following factors: (i) the length of the relationship; (ii) the type of relationship; and (iii) the frequency of interaction between the persons involved in the relationship.

5. Domestic violence: Violence committed by a current or former spouse or intimate partner of the victim, by a person with whom the victim shares a child in common, by a person who is cohabitating with or has cohabitated with the victim as a spouse or intimate partner, by a person similarly situated to a spouse of the victim under the domestic or family violence laws of the District of Columbia, or by any other person against an adult or youth victim who is protected from that person's acts under the domestic or family violence laws of the District of Columbia.

*Interpretative Guidance for Dating and Domestic Violence*:

    i. Violence includes attempted violence.
    ii. To constitute Domestic Violence, the relationship between the perpetrator and the victim must be more than just two people living together as roommates. The people cohabitating must be current or former spouses or have an intimate relationship.

6. Stalking: Engaging in a course of conduct directed at a specific person that would cause reasonable persons to fear for their safety or the safety of others or to suffer substantial emotional distress.

*Interpretive Guidance*

    i. Fear for an individual's safety includes feeling seriously alarmed, disturbed or frightened.
    ii. Stalking can occur whether or not the offender intended to cause fear or substantial emotional distress.
    iii. Stalking in this provision relates to stalking on the basis of sex or gender.

7. Other Sex Offenses:
    a. Engaging in "sexual contact" that does not otherwise meet the definition of Sexual Assault, without consent.

    Sexual contact means the touching with any clothed or unclothed body part or any object, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person *with an intent to abuse, humiliate, harass, degrade, or arouse* any person. "Touching" in this definition includes the touching of a victim's private body parts, and the touching of an individual's own private body parts to any body part of the victim.

    b. Engaging in threatening conduct in the context of a domestic or dating relationship that causes the victim to fear for the victim's safety or causes physical or psychological injury, pain, or illness, where such conduct does not otherwise constitute Dating Violence or Domestic Violence under this Policy.

"Student" means an individual who is registered or enrolled as a student at the University (or where there is an expectation of continued enrollment) at the time the alleged Sexual Misconduct occurred and at the time a Report or Complaint is made to the University.

"Supportive Measures" means non-disciplinary, non-punitive individualized services offered as appropriate, as reasonably available, and without fee or charge to any individual alleging to have experienced Sexual Misconduct, or any individual accused of engaging in Sexual Misconduct before, during, or after the filing of a Complaint or where no Complaint has been filed. Such measures are designed to restore or preserve equal access to the University's Education Program or Activity without unreasonably burdening the other party or parties, including measures designed to protect the safety of all parties or the educational environment, or deter Sexual Misconduct. Supportive Measures may include counseling, extensions of deadlines or other course-related adjustments, modifications of work or class schedules, campus escort services, mutual restrictions on contact between the parties, changes in work or housing locations, leaves of absence, increased security and monitoring of certain areas of the campus, and other similar measures. The University will maintain

as confidential any Supportive Measures provided to any individual under this Policy to the extent that maintaining such confidentiality would not impair the ability of the University to provide the Supportive Measures. The Title IX Coordinator(s) is responsible for coordinating the effective implementation of Supportive Measures.

"Title IX Complaint" means a document filed by a Complainant or signed by the Title IX Coordinator alleging Title IX Sexual Harassment against a Respondent and requesting that the University investigate the allegation of Title IX Sexual Harassment. At the time of filing a Title IX Complaint, a Complainant must be participating in or attempting to participate in the Education Program or Activity of the University (as defined under the definition of Title IX Sexual Harassment).[2] A Title IX Complaint may be filed with the Title IX Coordinator in person, by mail, or by electronic mail.  As used in this paragraph, the phrase "document filed by a complainant" means a document or electronic submission (such as by electronic mail or through an online portal provided for this purpose by the University) that contains the Complainant's physical or digital signature, or otherwise indicates that the Complainant is the person filing the Title IX Complaint. Where the Title IX Coordinator signs a Title IX Complaint, the Title IX Coordinator is not a Complainant or otherwise a party.

"Title IX Coordinator(s)" means the Title IX Coordinator and Deputy Coordinators, who are the employees designated and authorized to coordinate the University's efforts to comply with its responsibilities under this Policy.  When the Title IX Coordinator is referred to in the singular within this Policy, it means only the Title IX Coordinator and not the Deputy Title IX Coordinators.

"Title IX Sexual Harassment" is a subset of Sexual Misconduct that satisfies one or more of the following:

1. Sexual Assault, Dating Violence, Domestic Violence, and Stalking that occur (a) in the United States and (b) in the Education Program or Activity.
2. Sexual Harassment that occurs (a) in the United States; (b) in the Education Program or Activity; and (c) under the following circumstances:
    i. An employee of the University conditioning the provision of an aid, benefit, or service of the University on an individual's participation in unwelcome sexual conduct; or
    ii. Unwelcome conduct determined by a reasonable person to be so severe, pervasive, and objectively offensive that it effectively denies a person equal access to the Education Program or Activity.

For purposes of Title IX Sexual Harassment, "the Education Program or Activity" means the locations, events, or circumstances where Georgetown University exercises substantial control over both the Respondent and the context in which alleged Title IX Sexual Harassment occurs, and also includes any building owned or controlled by a student organization that is officially recognized by the University.

# Appendix B

## Grievance Procedures for Sexual Misconduct and Title IX Sexual Harassment

### Overview

Georgetown has established Grievance Procedures for the prompt, fair, and impartial resolution of all Complaints of Sexual Misconduct under this Policy on Sexual Misconduct ("the Policy").  In addition, the U.S. Department of Education's regulations implementing Title IX of the Education Amendments of 1972 ("Title IX") prescribe specific Grievance Procedures that must be applied to a narrower subset of Sexual Misconduct defined as "Title IX Sexual Harassment" in this Policy.  As such, each campus at Georgetown and IDEAA have developed additional, specific Grievance Procedures for Complaints of Title IX Sexual Harassment, which apply to that subset of conduct.

Unless resolved through Informal Resolution, the University will investigate the allegations in any Complaint in a prompt, fair, and impartial manner, with one or more internal or external investigators.  Following the investigation, a determination regarding responsibility will be made in accordance with the applicable Grievance Procedures.  If there is a determination of responsibility, the University will determine sanctions and remedies as appropriate.  The applicable Grievance Procedures also provide for an appeals process.

# Determination of Grievance Procedure

- Different Grievance Procedures for investigation, decision-making, sanctions, and appeals will apply depending on the nature of the allegation (e.g., whether or not the Sexual Misconduct is "Title IX Sexual Harassment"), the status of the Complainant and Respondent (employee, student, or other), and the campus with which the Respondent is affiliated.  If the Complainant and Respondent are in different statuses, then the status of the Respondent will determine the applicable Grievance Procedures (e.g., if a Title IX Complaint is filed by a Student against an Employee, the IDEAA Title IX procedures will apply).  Where a Respondent is both a Student and Employee of the University, the Title IX Coordinator shall decide which Grievance Procedures apply based on the circumstances, including the capacity in which the Respondent was acting at the time of the alleged incident.
- The Grievance Procedures for Non-Title IX Sexual Misconduct may not be used to consider an allegation of potential Title IX Sexual Harassment.  All Complaints alleging Title IX Sexual Harassment must be addressed under the Grievance Procedures for Title IX Sexual Harassment.
- If it is unclear whether a Complaint alleges Title IX Sexual Harassment or Non-Title IX Sexual Misconduct, then the Grievance Procedures for Title IX Sexual Harassment will apply.
- The Grievance Procedures for Title IX Sexual Harassment may be used to consider Non-Title IX Sexual Misconduct, provided there is also an allegation of potential Title IX Sexual Harassment.  Decision-maker(s) for Title IX Sexual Harassment may also make determinations related to Non-Title IX Sexual Misconduct.
- The Title IX Coordinator has the discretion to determine which Grievance Procedures will apply and whether the allegations warrant consolidated, parallel, or sequential processing under different Grievance Procedures (including in cases that allege both Sexual Misconduct and harassment based on other protected status, which are covered under other University policies).  If at any time it becomes apparent to the Title IX Coordinator that the Complaint or Title IX Complaint should be conducted under a different Grievance Procedure, the Complaint will be transferred to the appropriate procedures.

The definitions in Appendix A of the Policy are incorporated in these procedures.

# Grievance Procedures for Non-Title IX Sexual Misconduct

Complaints of Sexual Misconduct, with the express exception of those alleging potential claims of "Title IX Sexual Harassment," will be addressed under the following Grievance Procedures:

| | |
|---|---|
| For Complaints against Students in the College of Arts and Sciences, the Graduate School of Arts and Sciences, the Business School, the School of Health, the School of Nursing, Biomedical Graduate Education, the School of Continuing Studies, the School of Foreign Service, the School of Public Policy, and Georgetown University in Qatar | The Office of Student Conduct, Sexual Misconduct Policies (new window) |

For Complaints against Students at the Law Center | Student Handbook of Academic Policies, Notice to Law Ce
Regarding Disciplinary Proceedings Involving Sexual Misco
window)

For Complaints against Students at the School of Medicine | School of Medicine Handbook, Procedures for Addressing S
Grievances (new window)

For Complaints against Employees | IDEAA Grievance Procedures to Investigate Allegations of
and Harassment (new window)

# Grievance Procedures for Title IX Sexual Harassment

Sexual Misconduct Complaints that include allegations of Title IX Sexual Harassment will be addressed under Grievance Procedures established by each campus (with the exception of the Qatar campus) and IDEAA that must comply with the following requirements.

1. Burden of Proof and Standard of Evidence
   The burden of proof and the burden of gathering evidence sufficient to reach a determination regarding responsibility rest on the University and not on the parties.

   The standard of evidence is the preponderance of the evidence standard.
2. No Conflicts of Interest
   The Title IX Coordinator(s) will perform their duties neutrally and without conflict of interest or bias. Any individual designated as an investigator, Decision-maker, or any person designated to facilitate an Informal Resolution process, may not have a conflict of interest or bias for or against Complainants or Respondents generally or an individual Complainant or Respondent.
3. Interim Suspension/Emergency Removal
   The University may remove a Respondent who is a Student from the Education Program or Activity on an emergency basis in accordance with applicable student conduct code provisions.  As required by Title IX, before doing so in cases alleging Title IX Sexual Harassment, the University must undertake an individualized safety and risk analysis, determine that an immediate threat to the physical health or safety of any student or other individual arising from the allegations of Sexual Misconduct justifies removal, and provide the student Respondent with notice and an opportunity to challenge the decision immediately following the removal.
4. Administrative leave
   Human Resources Policy #305 (new window) and the Faculty Responsibilities Code (new window) of the Faculty Handbook provide procedures for placing an employee on administrative leave during the pendency of an investigation or grievance process.
5. Advisors
   The parties have the opportunity to be accompanied to any meeting or proceeding by the advisor of their choice, who may be, but is not required to be, an attorney.  The University will not limit the choice or presence of an advisor for either party in any meeting or grievance proceeding, except that the advisor may not be a party or witness or an individual who would otherwise create a conflict of interest. The University may require all advisors in a proceeding to adhere to rules of decorum.
6.  Notice of Complaint
   Upon receipt of a Title IX Complaint, the University will provide the following written notice to the parties identified in the Title IX Complaint:
   a.  Notice of the University's Grievance Procedures, including the Informal Resolution process.
   b.  Notice of the allegations of Title IX Sexual Harassment, including sufficient details known at the time and with sufficient time to prepare a response before any initial interview.  Sufficient details include the identities of the parties involved in the incident, if known, the conduct allegedly constituting Title IX

Sexual Harassment, and the date and location of the alleged incident, if known.

c. Notice that, under the relevant Grievance Procedures, the Respondent is not treated as responsible for the alleged conduct until a determination regarding responsibility is made at the conclusion of the grievance process.

d. Notice to the parties that they may have an advisor of their choice, who may be, but is not required to be, an attorney, and may inspect and review evidence.

e. Notice of the provision in the applicable Grievance Procedure consistent with Section 16, below, that prohibits knowingly making false statements or knowingly submitting false information during the grievance process.

If, in the course of an investigation, the University decides to investigate allegations about the Complainant or Respondent that were not included in the notice provided to the parties, or remove charges that were included in the original notice, the University will provide an amended notice of the allegations to the parties identified in the Title IX Complaint.

7. Dismissal of Complaint

If the conduct alleged in the Title IX Complaint would not constitute Title IX Sexual Harassment, if proved, then the Title IX Complaint will be dismissed by the Title IX Coordinator, but the University may still address the conduct under other provisions of its policies and codes of conduct, as applicable. The University may dismiss a Title IX Complaint or any allegations therein, if at any time during the investigation or hearing: a Complainant notifies the Title IX Coordinator in writing that the Complainant would like to withdraw the Title IX Complaint or any allegations therein; the Respondent is no longer enrolled or employed by the University; or specific circumstances prevent the University from gathering evidence sufficient to reach a determination as to the Title IX Complaint or allegations therein. Upon dismissal, the University will promptly send written notice of the dismissal and the reason(s) simultaneously to the parties as well as procedures related to appeal.

8. Consolidation of Cases

The University may, at the discretion of the Title IX Coordinator, consolidate Title IX Complaints as to allegations of Title IX Sexual Harassment against more than one Respondent, or by more than one Complainant against one or more Respondents, or by one party against the other party, where the allegations of Title IX Sexual Harassment arise out of the same facts or circumstances. Where a grievance process involves more than one Complainant or more than one Respondent, references in this Policy to the singular "party," "Complainant," or "Respondent" include the plural, as applicable.

9. Notice of Meetings and Timeframes

The University will provide, to a party whose participation is invited or expected, written notice of the date, time, location, participants, and purpose of all hearings, investigative interviews, or other meetings, with sufficient time for the party to prepare to participate.

The University will establish reasonably prompt timeframes for conclusion of the grievance process, including reasonably prompt timeframes for filing and resolving appeals and Informal Resolution processes. At the discretion of the University, the grievance process may be temporarily delayed and limited extensions of timeframes may be granted for good cause shown with written notice to the Complainant and the Respondent of the delay or extension and the reasons for the action. Good cause may include, but is not limited to, considerations such as the absence of a party, advisor, or a witness; concurrent law enforcement activity; the need for language assistance or accommodation of disabilities; exam periods; or breaks in the University's calendar. No party may unreasonably delay the grievance process due to unavailability of an advisor.

10. Informal Resolution

With the exception of allegations that an Employee engaged in Title IX Sexual Harassment against a Student, the University may, at any time prior to reaching a determination regarding responsibility after the filing of a Title IX Complaint, facilitate a voluntary Informal Resolution process, such as mediation, that does not involve a full investigation and adjudication, provided that the following conditions are met:

a. Notice. The University will provide to the parties a written notice disclosing: the allegations; the requirements of the Informal Resolution process including the circumstances under which it precludes the parties from resuming a Title IX Complaint arising from the same allegations; the right of any party to withdraw from the Informal Resolution process and resume the grievance process with respect to the Title IX Complaint prior to agreeing to a resolution; and any consequences resulting from participating in the Informal Resolution process, including the records that will be maintained or could be shared;

b. Voluntary Consent.  The University will obtain the parties' voluntary, written consent to the Informal Resolution process.

c. Timeframe.  Informal Resolution will be completed within approximately 45 days of the parties' agreement to participate in Informal Resolution, but the University may extend the timeframe for good cause.

11. Investigation Process

Title IX Sexual Harassment investigations will involve an objective evaluation of all relevant evidence, including both inculpatory and exculpatory evidence. Credibility determinations will not be based on a person's status as a Complainant, Respondent, or witness. The parties will have an equal opportunity to present witnesses and other inculpatory and exculpatory evidence.  The University will not restrict the ability of either party to discuss the allegations under investigation or to gather and present relevant evidence, as long as such conduct is not harassing or retaliatory.

a. Review of Evidence:  The University will provide both parties an equal opportunity to inspect and review any evidence obtained as part of the investigation that is directly related to the allegations raised in the Title IX Complaint. This includes the evidence upon which the University does not intend to rely in reaching a determination regarding responsibility and inculpatory or exculpatory evidence whether obtained from a party or other source, so that each party can meaningfully respond to the evidence prior to conclusion of the investigation. Prior to completion of the investigative report, the University will make available to each party and the party's advisor, if any, the evidence subject to inspection and review in an electronic format or a hard copy, and the parties will have at least 10 days to submit a written response, which the investigator will consider prior to completion of the investigative report.

b. Medical Records:  The University will not access, consider, disclose, or otherwise use a party's records that are made or maintained by a physician, psychiatrist, psychologist, or other recognized professional or paraprofessional acting in the professional's or paraprofessional's capacity, or assisting in that capacity, and which are made and maintained in connection with the provision of treatment to the party, unless the University obtains that party's voluntary, written consent to do so.

c. Past Sexual History:  Evidence about the Complainant's sexual predisposition or prior sexual behavior is not relevant, unless (1) questions and evidence about the Complainant's prior sexual behavior are offered to prove that someone other than the Respondent committed the conduct alleged by the Complainant, or (2) the questions and evidence concern specific incidents of the Complainant's prior sexual behavior with respect to the Respondent and are offered to prove consent.

d. Privilege:  The University will not require, allow, rely upon, or otherwise use questions or evidence that constitute, or seek disclosure of, information protected under a legally recognized privilege, unless the person holding such privilege has waived the privilege.

e. Investigative Report:  At the conclusion of the investigation, the investigator will create an investigative report that fairly summarizes relevant evidence.  At least 10 days prior to a hearing, as applicable, the University will send to each party and the party's advisor, if any, the investigative report in an electronic format or a hard copy, for their review and written response.

12. Decision-Making Process

After an Investigation of a Title IX Complaint, the decision-making process will occur pursuant to the relevant campus' Grievance Procedures for Title IX Sexual Harassment or, for faculty and staff, pursuant to IDEAA's Grievance Procedures for Title IX Sexual Harassment, and the following procedures apply:

a. Notice of Decision-Making Process.  After the Investigation is complete, the Title IX Coordinator(s) will send to each party and the party's advisor, if any, a notice and description of this decision-making process and the expected timeframe for the process.

b. Standard of Evidence.  The standard of evidence for all cases of Title IX Sexual Harassment is preponderance of the evidence, which means whether it is more likely than not that Title IX Sexual Harassment occurred.

c. Production of Evidence.  All evidence subject to the parties' inspection and review at the conclusion of the investigation will be available at any hearing to give each party equal opportunity to refer to such evidence during the hearing, including for purposes of cross-examination.

d. Live Hearings.  The University will provide a live hearing, which can be accomplished in-person or remotely using technology.

i. Cross-Examination.  At the live hearing, the Decision-maker(s) will permit each party's advisor to ask the other party and any witnesses all relevant questions and follow-up questions,

including those challenging the credibility of each party or witness. Such cross-examination at the live hearing will be conducted directly, orally, and in real time by the party's advisor of choice and never by a party personally, notwithstanding the discretion of the University to otherwise restrict the extent to which advisors may participate in the proceedings. Advisors must comply with any rules of decorum set forth by the University. The Decision-maker(s) cannot draw an inference relevant to the determination regarding responsibility based solely on a party's or witness's absence from the live hearing or refusal to answer cross-examination or other questions.

    ii. Provision of Advisors to Conduct Cross-Examination. If a party does not have an advisor present at the live hearing, the University will provide without fee or charge to that party, an advisor of the University's choice, who may be, but is not required to be, an attorney, to conduct cross-examination on behalf of that party.

    iii. Relevance Determinations. Only relevant cross-examination and other questions may be asked of a party or witness. Before a Complainant, Respondent, or witness answers a cross-examination or other question, the Decision-maker(s) will first determine whether the question is relevant and explain any decision to exclude a question as not relevant. Questions and evidence about the Complainant's sexual predisposition or prior sexual behavior are not relevant, unless (1) such questions and evidence about the Complainant's prior sexual behavior are offered to prove that someone other than the Respondent committed the conduct alleged by the Complainant, or (2) the questions and evidence concern specific incidents of the Complainant's prior sexual behavior with respect to the Respondent and are offered to prove consent.

    iv. Separate Locations. At the request of either party, the University will provide for the live hearing to occur with the parties located in separate rooms with technology enabling the Decision-maker(s) and parties to simultaneously see and hear the party or the witness answering questions. Live hearings may be conducted with all parties physically present in the same geographic location or, at the University's discretion, any or all parties, witnesses, and other participants may appear at the live hearing virtually, with technology enabling participants simultaneously to see and hear each other.

    v. Recording. The University will create an audio or audiovisual recording, or transcript, of any live hearing and make it available to the parties for inspection and review. The recording will be maintained in accordance with the record-keeping requirements in paragraph 18.

e. Determination Regarding Responsibility

    i. Independent Decision-Makers. The Decision-maker(s) cannot be the same person(s) as the Title IX Coordinator(s) or the investigator(s).

    ii. Written Determinations. The Decision-maker(s) will issue a written determination regarding responsibility, using the preponderance of the evidence standard. The University will provide the written determination to the parties simultaneously. If an appeal is filed, the determination regarding responsibility becomes final on the date that the University provides the parties with the written determination of the result of the appeal. If an appeal is not filed, the determination regarding responsibility becomes final on the date on which an appeal would no longer be considered timely. The written determination must include:

        a. Identification of the allegations potentially constituting Title IX Sexual Harassment;

        b. A description of the procedural steps taken from the receipt of the Title IX Complaint through the determination, including any notifications to the parties, interviews with parties and witnesses, site visits, methods used to gather other evidence, and hearings held;

        c. Findings of fact supporting the determination;

        d. Conclusions regarding the application of the Policy and the University's code of conduct, as applicable, to the facts;

        e. A statement of, and rationale for, the result as to each allegation, including a determination regarding responsibility;

        f. Any disciplinary sanctions the University will impose on the Respondent, and whether remedies designed to restore or preserve equal access to the Education Program or Activity will be provided to the Complainant. Remedies will be

determined in accordance with the applicable Grievance Procedures.  For faculty, sanctions and remedies will be referred to the Executive Vice President for the Campus, consistent with the Faculty Handbook, and faculty members who are subject to sanctions under this Policy will receive the procedural protections set forth in the Faculty Handbook; and

g. The procedures and permissible bases for the Complainant and Respondent to appeal.

13. Sanctions and Educational Remedies

Following a determination of responsibility, the University may impose one or more sanctions and/or remedies under applicable procedures.

Sanctions and/or remedies for Students include but are not limited to:  written reprimand; fines, work sanction, restitution, educational classes/projects, referral to community resources, party restrictions, housing probation, housing relocation, apartment living suspension, housing suspension, housing expulsion, disciplinary probation, active university suspension, disciplinary dismissal, transcript notation, or any other sanction that is determined by the Decision-maker(s) to be fair and proportionate to the violation.

Sanctions and/or remedies for Faculty under the Faculty Responsibilities Code (new window) include but are not limited to: training, coursework, mentoring, participation in workshops or support groups, monitoring, written apology, a course of counseling, letter of reprimand, loss of faculty privileges (including removal from office, project, or home unit; loss of office space; research funding; access to Teaching Assistants or Research Assistants; attendance at faculty meetings; and voting rights), probation, denial of a salary increase, bonus, or other remuneration, reduction of salary, unpaid suspension from work for a stated period of time, removal of duties, with commensurate reduction in pay, reduction in rank; termination of employment; revocation of tenure; or any other sanction that is determined by the Decision-maker(s) to be fair and proportionate to the violation.

Sanctions and/or remedies for staff and AAPs include:  restitution; training; counseling, written warning, reduction in salary; demotion; disciplinary suspension; termination of employment; or any other sanction that is determined by the Decision-maker(s) to be fair and proportionate to the violation.

Remedies will be designed to restore or preserve equal access to the Education Program or Activity. Such remedies may include Supportive Measures but may also be disciplinary or punitive.

The Title IX Coordinator is responsible for oversight of the effective implementation of any sanctions and remedies.  Failure to comply with sanctions may be considered an additional violation of the Policy on Sexual Misconduct, and/or may lead to additional sanctions under general University codes of conduct, handbooks, or policies.

14. Appeals

The University will offer both parties an appeal from a determination regarding responsibility, and from a dismissal of a Title IX Complaint or any allegations therein.  The appeals process will occur on each campus or, for faculty and staff, at IDEAA, and the following procedures apply:

a. Bases for Appeal.  An appeal may be made on the following bases:

i. Procedural irregularity that affected the outcome of the matter;

ii. New evidence that was not reasonably available at the time the determination regarding responsibility or dismissal was made, that could affect the outcome of the matter; and

iii. The Title IX Coordinator(s), investigator(s), or Decision-maker(s) had a conflict of interest or bias that affected the outcome of the matter.

iv. Any other bases established by campus-specific or IDEAA procedures.

b. Notification.  The Title IX Coordinator(s) or designated official will notify the other party in writing when an appeal is filed and implement appeal procedures equally for both parties.

c. Decision-Maker.  The Decision-maker(s) for the appeal will not be the same person as the Decision-maker(s) that reached the determination regarding responsibility or dismissal, the investigator(s), or the Title IX Coordinator(s). The Decision-maker(s) must be free of conflict of interest or bias and will receive training as Decision-maker(s).

d. Written Statements.  Both parties will have a reasonable, equal opportunity to submit a written statement in support of, or challenging, the outcome.

e. Written Decision. The Decision-maker(s) will issue a written decision describing the result of the appeal and the rationale for the result, and the written decision will be provided simultaneously to both parties and the Title IX Coordinator.

f. Timeframe for Appeals. Each campus and IDEAA will set a timeframe for appeals.

15. Confidentiality

Complaints and investigations under this policy are treated as confidential by the University. The decision and sanctions will be shared with University official(s) to the extent necessary to implement sanctions and remedies. The University complies with the Family Educational Rights & Privacy Act (FERPA) and other applicable privacy laws at all times in the course of investigations. The University will keep confidential the identity of any individual who has made a Report or Complaint of Sexual Misconduct, any Complainant, any individual who has been reported to be the perpetrator of Sexual Misconduct, any Respondent, and any witness, except as may be permitted by FERPA, or as required by law, or in order to conduct any investigation, hearing, or judicial proceeding arising from this Policy. The University complies with the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act and the Violence Against Women Act with respect to reporting and disclosure of campus security information. The University will not restrict the ability of either party to discuss the allegations under investigation or to gather and present relevant evidence, as long as such conduct is not harassing or retaliatory. The investigation, investigation report, and proceedings are considered confidential.

16. False Information

Knowingly making a materially false statement or submitting false information in bad faith during the grievance process is prohibited. However, a determination regarding responsibility, alone, is not sufficient to charge any party with making a materially false statement in bad faith.

17. Training

The Title IX Coordinator(s), investigator(s), Decision-maker(s), and any person who facilitates an Informal Resolution process, will receive training on the definitions of terms used in this Policy, the scope of the University's Education Program or Activity, how to conduct an investigation and grievance process including hearings, appeals, and Informal Resolution processes, as applicable, and how to serve impartially, including by avoiding prejudgment of the facts at issue, conflicts of interest, and bias. The University also will ensure that investigators receive training on issues of relevance to create an investigative report that fairly summarizes relevant evidence. Decision-maker(s) will receive training on any technology to be used at a live hearing, as applicable, and on issues of relevance of questions and evidence, including when questions and evidence about the Complainant's sexual predisposition or prior sexual behavior are not relevant. Any materials used to train Title IX Coordinator(s), investigator(s), Decision-maker(s), and any person who facilitates an Informal Resolution process, will not rely on sex or gender stereotypes and will promote impartial investigations and adjudications of Complaints of Title IX Sexual Harassment.

18. Recordkeeping

For a period of at least seven years and consistent with the University's Record Retention and Destruction Policy, the University will maintain records of:

- Each Sexual Misconduct investigation including any determination regarding responsibility and any audio or audiovisual recording or transcript, any disciplinary sanctions imposed on the Respondent, and any remedies provided to the Complainant designed to restore or preserve equal access to the Education Program or Activity;
- Any appeal and the result therefrom;
- Any Informal Resolution and the result therefrom; and
- All materials used to train Title IX Coordinator(s), investigator(s), Decision-maker(s), and any person who facilitates an Informal Resolution process. The University must make these training materials publicly available on its website.
- Any actions, including any Supportive Measures, taken in response to a Report or Complaint of sexual harassment. In each instance, the University will document the basis for its conclusion that its response was not deliberately indifferent, and document that it has taken measures designed to restore or preserve equal access to the Education Program or Activity. If the University does not provide a Complainant with Supportive Measures, then the University will document the reasons and why they are reasonable in light of the known circumstances.

# Appendix C

## Changes and Updates to the Policy on Sexual Misconduct as required by the Revocation by Operation of Law Provision

1. Effective October 7, 2021, the following statement was removed from Appendix B, Section 12(d)(i) of this Policy:

   If a party or witness does not submit to cross-examination at the live hearing, the Decision-maker(s) must not rely on any statement of that party or witness in reaching a determination regarding responsibility.
2. On November 16, 2021, the definition of "Sexual Assault" was updated in Appendix A of this Policy to reflect the changes made to the Federal Bureau of Investigation's uniform crime reporting system, as required by 34 CFR 106.30.

---

# Endnotes

[1] Interpretive guidance:

- A hostile or offensive environment exists when conduct is severe or pervasive.  Factors to be considered in determining whether conduct is severe or pervasive include the nature, scope, frequency, and duration of the conduct and the number of persons involved. Simple teasing, offhand comments, or isolated incidents that are not severe or pervasive do not create a hostile or offensive environment.
- If an issue of sexual harassment is raised in strictly academic areas, such as coursework, the matter will be handled in consultation and coordination between the Title IX Coordinator and the Executive Vice President or Dean of the faculty member's school because such matters may also implicate issues of academic freedom.
- To constitute sexual harassment, the conduct in question must be objectively intimidating, hostile or offensive, and must interfere with a person's ability to participate in employment or educational programs or activities of the University.  The victim's perception of the offensiveness of the alleged conduct, standing alone, is not sufficient by itself to constitute sexual harassment.
- Sexual harassment is especially serious when it occurs between teachers and students or supervisors and subordinates.  In such situations, sexual harassment unfairly exploits the power inherent in a faculty member's or supervisor's position. Although sexual harassment often occurs when one person takes advantage of a position of authority over another, the University recognizes that sexual harassment may also occur between people of equivalent status. This includes peer sexual harassment.  Regardless of the form it may take, the University will not tolerate unwelcome conduct of a sexual nature that creates an unacceptable working or educational environment.

Return to text

[2] An individual who is not participating or attempting to participate in the Education Program or Activity of the University may bring a Complaint outside of the Title IX process, which will be addressed under the University's Non-Title IX Sexual Misconduct Grievance Procedures set forth herein.

Return to text