

**Georgetown University**
**Institutional Diversity, Equity, and Affirmative Action**
**Grievance Procedures to Investigate Allegations of Discrimination and Harassment**

### Introduction

Georgetown University complies with federal laws and regulations and the District of Columbia Human Rights Act and acts in accordance with the University's Affirmative Action Plan. Therefore, the University has established these grievance procedures for the Office of Institutional Diversity, Equity, and Affirmative Action ("IDEAA") to review, investigate, and resolve alleged violations of the University's Equal Opportunity and Non-Discrimination in Employment and Non-Discrimination in Education Policies, Affirmative Action Policy, the Policy Statement on Harassment, and the Policy on Sexual Misconduct.[1]

The procedures outlined below cover allegations of unlawful discrimination and harassment in employment or education on the basis of age, color, disability, family responsibilities, gender identity and expression, genetic information, marital status, matriculation, national origin, personal appearance, political affiliation, race, religion, sex, sexual orientation, veteran status and other factors prohibited by law.

These internal Grievance Procedures to Investigate Allegations of Discrimination and Harassment provide a mechanism for faculty, staff, students, third parties and applicants for employment and admission to receive a prompt, fair, and impartial investigation and resolution of grievances of discrimination, harassment, and related retaliation.

The University strongly encourages Complainants (i.e., any individuals alleged to have experienced unlawful discrimination, harassment, and/or related retaliation) to report the incident and seek redress through IDEAA's Grievance Procedures. The University will provide a prompt investigation as well as a thorough and careful resolution. Individuals may use these procedures to address off-campus behaviors, which may violate the policies on harassment and discrimination as they relate to educational and employment opportunities. Individuals with questions about these grievance procedures may reach out to IDEAA at ideaa@georgetown.edu or (202) 687-4798.

---

[1] Georgetown University publishes and widely disseminates these policies, including on IDEAA's website at https://ideaa.georgetown.edu/policies/; on the website of the Department of Human Resources at https://policymanual.hr.georgetown.edu/1000-university-policies/; and in the Faculty Handbook at https://facultyhandbook.georgetown.edu/section4/.

Sexual Misconduct is a specific type of unlawful discrimination based on sex.  Consistent with the University's Policy on Sexual Misconduct, certain procedural adjustments will be applied to grievance procedures in cases alleging Sexual Misconduct. Specifically:

- For cases alleging Sexual Misconduct that could constitute "Title IX Sexual Harassment," as defined in the Policy on Sexual Misconduct, the grievance procedures outlined in Appendix A of these procedures shall apply.
- For all other cases alleging Sexual Misconduct (i.e., cases alleging "Non-Title IX Sexual Misconduct," as defined in the Policy on Sexual Misconduct), the procedures outlined below will apply.

To the extent there is any conflict between these Grievance Procedures to Investigate Allegations of Discrimination and Harassment and the Policy on Sexual Misconduct with respect to cases alleging Sexual Misconduct, the Policy on Sexual Misconduct shall govern.

Proceedings involving grievances of Sexual Misconduct shall be conducted by officials who have received training on issues related to sexual harassment, sexual assault, domestic violence, dating violence and stalking and how to conduct a grievance process that protects the safety of all parties involved and promotes accountability. With respect to allegations of Sexual Misconduct, these procedures apply to situations in which a faculty or staff member is the Respondent. A Respondent is an individual alleged to have engaged in conduct prohibited by a policy covered by these Grievance Procedures. Students may also use these procedures to address off-campus behaviors, which may violate the policies on harassment and discrimination as they relate to educational and employment opportunities. If a student is the Respondent, the disciplinary codes of conduct of each of the campuses shall govern. If an outside third party is the Respondent, IDEAA may refer the grievance to an appropriate authority for resolution and coordinate necessary corrective actions. A Complainant may report a violation of the Policy on Sexual Misconduct to any Title IX Coordinator, regardless of the identity of the Respondent or the place of occurrence of the alleged conduct. The University's Title IX Coordinators are identified in Appendix B.

Complainants are encouraged to exhaust these procedures with regard to any grievance before pursuing remedies outside the University. However, the University acknowledges the rights of Complainants to seek redress from any external enforcement agency including the District of Columbia Office of Human Rights, the Equal Employment Opportunity Commission, the Office for Civil Rights of the United States Department of Education and the United States Department of Labor's Office of Federal Contract Compliance Programs. Complainants may also file a criminal complaint with the Metropolitan Police Department. The filing of an external complaint or investigation will not preclude the University from investigating and addressing issues or concerns raised to the University, nor will it preclude any individual alleging to have experienced Sexual Misconduct from receiving Supportive Measures.

It is a violation of this policy to file a discrimination or harassment complaint for the purpose of injuring the reputation of, or causing harm to, another person. Without minimizing the injury that can be suffered by the victim of discrimination or harassment, the University also recognizes that the filing of a discrimination or harassment complaint can have serious consequences for the person accused. That person, too, has rights that the policies on discrimination and harassment

must preserve and protect. Therefore, any person who abuses this policy by knowingly filing a false complaint will be subject to discipline if IDEAA determines that the complaint was filed in bad faith. This provision is not meant in any way to discourage legitimate complaints. All complaints will be treated as confidential, as described further below.

**Confidentiality**

IDEAA requires Complainants, Respondents, and witnesses who participate in this process to maintain confidentiality due to the sensitive nature of grievances, consistent with applicable legal requirements. This expectation of confidentiality is not intended to preclude parties from speaking with an advisor or to restrict the ability of parties to gather and present relevant evidence. IDEAA will preserve the confidentiality of information provided in connection with a grievance to the extent possible, consistent with the goals of a prompt and thorough investigation and resolution as well as compliance with the law, including the Family Educational Rights & Privacy Act (FERPA) and Health Insurance Portability and Accountability Act (HIPAA), at all times in the course of investigations. All publicly available records required to be maintained by law will omit the names and other personally identifiable information about complainants and others who choose not to file a grievance, to the extent permissible by law.

The Policy on Sexual Misconduct sets forth the confidentiality procedures applicable to Sexual Misconduct matters.

**Requirements for Filing Grievances**

1.  Any applicant for employment or admission, current or former employee or student, or third party (hereinafter referred to as "Complainant") of Georgetown University may file a discrimination or harassment complaint with IDEAA. Complaints of Sexual Misconduct must be filed with the Title IX Coordinator, in accordance with the Policy on Sexual Misconduct. The Policy on Sexual Misconduct sets forth additional requirements and definitions related to Complainants and Complaints, including Title IX Complaints.

2.  Complainants must file a grievance in writing within 180 days following the alleged act of discrimination, harassment, or related retaliation or the date on which the Complainant knew or reasonably should have known of the act. Nevertheless, individuals are encouraged to report acts immediately in order to maximize the University's ability to obtain evidence, and conduct a thorough, impartial investigation. Failure to report promptly may impair the University's ability to enforce its policies. IDEAA may, in its sole discretion, review grievances filed after one year under special circumstances.

3.  A grievance must be filed in writing with IDEAA at M-36 Darnall Hall, electronically at ideaa@georgetown.edu, or by fax at (202) 687-7778. Complaints of Sexual Misconduct must be filed with the Title IX Coordinator.

**Provisions on Time Limits**

All of the time limits contained within these grievance procedures may be extended solely at the discretion of IDEAA. Any party requesting an extension must do so in writing. In cases of Sexual Misconduct, IDEAA will make every effort to be reasonably prompt in investigating and resolving complaints and will address such complaints consistent with the Policy on Sexual Misconduct. A

3

typical investigation will conclude within ninety days from receipt of the grievance. IDEAA's investigation may be temporarily delayed while criminal investigators gather evidence. In the event any time frames need to be extended, IDEAA will inform both parties.

**Retaliation Prohibited**

University policies prohibit retaliation, harassment, or other adverse action against an individual for making a complaint in good faith, assisting in an investigation, opposing harassment/discrimination or otherwise exercising rights protected by law. University policies further prohibit taking any adverse academic or employment related action against an individual based on an unsubstantiated allegation or rumor of conduct prohibited by policies covered under these Grievance Procedures. Retaliation should be reported promptly to IDEAA or, in connection with Sexual Misconduct, the Title IX Coordinator, and if proven, may result in disciplinary action up to and including dismissal. The University encourages individuals to make good faith reports.

**Administrative Review**

IDEAA has the authority to initiate an administrative review at any time when, in the judgment of the Associate Vice President for Equal Opportunity, Affirmative Action and Compliance, such action is warranted. A department head or other University official may also request that IDEAA conduct an administrative review, if this official becomes aware of alleged discrimination, harassment, or related retaliation. In cases where IDEAA conducts an administrative review and a respondent is identified, IDEAA will proceed to Step II of the Procedures for Processing Grievances below. The Policy on Sexual Misconduct describes Administrative Action that may be taken in cases in which an individual impacted by Sexual Misconduct declines to file a Complaint.

**Conflict of Interest**

If there is a conflict of interest between the fact-finder or decision-maker and the Complainant or the Respondent, the Associate Vice President for Equal Opportunity, Affirmative Action and Compliance will designate an alternate fact-finder or decision-maker. If the Associate Vice President for Equal Opportunity, Affirmative Action and Compliance has a conflict of interest, the Vice President of Diversity, Equity and Inclusion will designate an alternate fact-finder or decision-maker. If the Vice President of Diversity, Equity and Inclusion has an actual conflict of interest, the matter shall be referred to the Office of the President, which will designate an alternate fact-finder or decision-maker.

**Revocation by Operation of Law**

In the event that any provision of the Title IX Final Rule, 85 Fed. Reg. 30026 (May 19, 2020) is modified, invalidated, or stayed by federal law (including any federal statute, administrative rule or regulation, direction from the Department of Education, executive order, or controlling judicial order), any related provision in these procedures will be modified or deemed inoperative consistent with that change in federal law for all pending or new proceedings covered by these procedures as of the effective date of the change in law.

Should the entire "Appendix A: IDEAA's Grievance Procedures for Complaints of Title IX Sexual Harassment" be invalidated, any conduct that would otherwise be covered under Appendix A shall be investigated and adjudicated under other University conduct policies and procedures as appropriate.

**Procedures for Processing Grievances**

**Intake**

1. IDEAA staff shall schedule intake meetings with Complainants and Respondents in order to provide a general understanding of the relevant policy and this grievance procedure, as well as University support resources, as appropriate. The intake meeting may also involve a discussion of any interim or supportive measures that may be appropriate concerning the individual's academic, University housing, and/or University employment arrangements.

2. At the request of the Complainant, IDEAA staff shall proceed to Step I Informal Resolution, or the Step II Investigation process detailed below. Pursuant to the Policy on Sexual Misconduct, Informal Resolution will not be used to resolve allegations of Title IX Sexual Harassment made by a student against an employee. If the Complainant wishes to proceed with Step I Informal Resolution or Step II Investigation, then IDEAA staff will meet with the Respondent to provide the Respondent a general understanding of the relevant policy and procedure.

3. In the event the Respondent is a member of a collective bargaining unit, IDEAA will coordinate with Human Resources or the appropriate administrative unit to ensure that any required notices are provided to the union. Questioning of a witness or party who is a member of a collective bargaining unit will proceed in accordance with applicable law, policies, and collective bargaining agreements.

**Step I. Informal Resolution**

1. Unless otherwise prohibited by University policy, IDEAA shall propose voluntary informal resolution, including mediation, to a Complainant desiring to resolve a dispute with a potential Respondent. If the Complainant agrees to informal resolution, the potential Respondent will be informed about the allegations and the informal resolution process, and offered an opportunity to participate in informal resolution. If both parties do not voluntarily agree to participate in the informal resolution process, the Complainant may proceed to Step II. In cases where Title IX Sexual Harassment is alleged by a student against an employee, IDEAA will not offer Informal Resolution to resolve the Complainant's allegations; in instances of alleged sexual harassment where both the Complainant and the Respondent request to mediate, the Complainant will not be asked to resolve his/her/their concerns directly with the Respondent.

2. If both parties agree to informal resolution, IDEAA's staff or a representative chosen by IDEAA will conduct the informal resolution within a prompt and reasonable time frame.

3. If a mutually acceptable resolution is achieved through informal resolution, a written agreement between the parties will reflect the resolution and shall be signed and dated by the parties. Copies will be provided to both parties and IDEAA will monitor compliance with the terms of the agreement by both parties. The case will then be closed.

4. If informal resolution fails, IDEAA will inform the Complainant about the option to proceed to Step II.

5. All Complainants and Respondents have a right to end the informal resolution process at any time and can ask in writing for IDEAA to begin a Step II Investigation.

6. The process for informal resolution of Title IX Sexual Harassment matters is described in Appendix A.

## Step II. Investigation by IDEAA

1. An individual or group of individuals may initiate a formal Complaint by providing IDEAA a written and signed statement and any supporting documentation detailing the allegations of discrimination, harassment or related retaliation and identifying the individuals who engaged in the alleged conduct (the Respondent(s)).

2. IDEAA shall provide the Respondent and the Respondent's supervisor, if applicable, a copy of the formal complaint and its supporting documents. The Respondent shall have an opportunity to submit a written response to the allegations and any supporting documents within twenty (20) days of receipt of the formal complaint and its supporting documents. The Complainant will be provided a copy of this response and given the opportunity to submit a written rebuttal to Respondent's statement within ten (10) days of receipt of the response. Respondent will be given a final opportunity to respond in writing to Complainant's written rebuttal within ten (10) days of receipt of the rebuttal. Both Complainant and Respondent may present evidence and identify witnesses who can provide information relevant to the allegations.

3. IDEAA shall within a prompt and reasonable time frame investigate the Complaint and shall have access to all necessary information to do so and the opportunity to interview witnesses, as well as Complainant and Respondent.

4. Upon completion of the investigation, IDEAA shall prepare a written report. IDEAA uses the standard of preponderance of the evidence to ascertain if the University's policies have been violated. IDEAA shall maintain documentation to support the findings in its report, including, as applicable, written findings of fact, and at the discretion of IDEAA, transcripts, and audio recordings.

## Step III. Notification

1. When IDEAA finds that no violation of policies governing harassment or discrimination has occurred, IDEAA will provide notice of the results to the parties on the same day, which shall be within thirty days of the conclusion of its investigation. Such notification will include an explanation of the appeal procedures in Step V.

2. When IDEAA finds that a violation of policies governing harassment or discrimination has occurred, IDEAA will:

    a)    Provide written notice of the results to the parties on the same day, to the extent consistent with the confidentiality accorded to University personnel actions, and within thirty days of the conclusion of its investigation. Such notification will include an explanation of the appeal procedures in Step V.

    b)    Forward its report to the Respondent's Executive Vice President or Senior Vice President, or his or her designee, or other University officials on a need-to-know basis, consistent with the above provisions addressing confidentiality.

    c)    Direct that prompt remedial action be taken to correct the situation. Any sanction that is fair and proportionate to the violation may be imposed. In determining an appropriate sanction, any record of past violations of University policies, as well as the nature and severity of such past violations, may be considered. Sanctions will be determined with consideration given to applicable University policies.

**Step IV. Corrective Action**

If corrective actions are imposed, IDEAA shall monitor their implementation. In Title IX Sexual Harassment matters, the Title IX Coordinator will monitor implementation of corrective actions. The appropriate Executive Vice President, Chief Operating Officer or Senior Vice President shall ensure that the approved corrective actions are smoothly implemented and take measures to protect against retaliatory actions related to the allegations resulting in the corrective actions.

**Step V. Appeal**

Where IDEAA finds a violation of the Policy on Sexual Misconduct, IDEAA may notify the Complainant of the sanction or remedial action imposed on the Respondent where the sanction or remedial action relates to the Complainant.

For purposes of these procedures, if the Executive Vice President or Senior Vice President is a party to the matter, the President will be informed of the results and take the required actions.

An appeal may be made by Complainant or Respondent within 14 business days of IDEAA's notification of the results. The appeal process for Title IX Sexual Harassment matters is set forth in Appendix A.

**1)    Grounds for Appeal**

There are certain limited circumstances under which a case may be appealed. For non-Title IX Sexual Harassment matters, the appellant must demonstrate:

a)    A material failure to follow these Grievance Procedures during the investigation.

b)      Significant evidence was not considered, which would have altered the outcome of the investigation.

The other party (ies) will be given a chance to respond to the request for an appeal within five (5) business days. The Vice President for Institutional Diversity & Equity, or her/his designee, will determine whether the request for an appeal is warranted. The parties will be informed of the decision within ten business days of receiving the request for appeal.

**2)      Appeal Procedures**

a)      If the request for an appeal is granted, IDEAA shall notify the appropriate Vice President, Executive Vice President or Chief Operating Officer. This notification shall include a copy of the formal complaint naming the Complainant and Respondent and will explain the grounds on which the appeal was granted.

b)      IDEAA shall then initiate the selection procedures to form a three member Grievance Panel selected from the Equal Opportunity Examining Board made up of Georgetown University administrators, faculty and staff. Grievances involving discriminatory denials of tenure, promotion or reappointment of faculty members shall be heard by panels composed of faculty or academic administrators only. The three member Grievance Panel to serve on an appeal shall be selected in the following manner:

   i)      Within five days from the date of IDEAA's decision to grant an appeal, the Complainant shall select one member of the Equal Opportunity Examining Board, and the Respondent shall select another.

   ii)     IDEAA shall promptly convene a meeting of these two selected panelists who shall choose the third member from the Equal Opportunity Examining Board to form the Grievance Panel.

c)      A member of IDEAA's staff shall present information about the complaint to the panel members who shall recuse themselves if they have prior knowledge of the complaint, the circumstances surrounding the incidents, or any other reason which might prevent them from rendering an impartial decision. If the panelist selected by the Complainant is recused, then Complainant shall select another panelist. If the panelist selected by Respondent is recused, then Respondent shall select another panelist. If the panelist selected by the two selected panelists is recused, then the two selected panelists shall select another panelist.

d)      The Grievance Panel is charged with reviewing IDEAA's investigation and determining whether the procedures were properly followed and that significant evidence was properly considered and weighed.

e)      The Grievance Panel shall have access to all relevant information and the opportunity to interview witnesses, including the opportunity to interview the IDEAA investigator(s), Complainant, and Respondent separately.

9

f)      The information presented to the Grievance Panel and its deliberations are confidential.

g)      Each party may choose an Advisor to accompany him/her to meet with the Grievance Panel. The Advisor may not speak on behalf of the party or otherwise represent the party, but may provide support and consult with the party outside of the presence of the Grievance Panel. Any party who will be accompanied by an Advisor who is an attorney must notify the Grievance Panel at least three business days prior to the meeting, so that arrangements may be made for the University's attorney to attend.

h)      The Grievance Panel shall by majority vote reach one of the following results:

   i)      support the full results of IDEAA's investigation;

   ii)     support the results but recommend different corrective actions than those recommended by IDEAA; or

   iii)    reach different results and, if necessary, recommend different corrective actions than those recommended by IDEAA.

i)      Within 45 business days from its formation, the Grievance Panel shall submit a report of its results to the Vice President for Diversity, Equity and Inclusion, or his/her designee, who will forward it with his or her approval and/or comments (if, for example, the Panel has not supported the full results of IDEAA's investigation) to the appropriate Executive Vice President or Chief Operating Officer. The appropriate Executive Officer may accept the Panel's recommendations or may reasonably modify the results with the concurrence of the Vice President for Diversity, Equity and Inclusion, or his/her designee. This official's decision is final and will be made within ten business days of receipt of the Grievance Panel's report. IDEAA shall provide notice on the same day to the Complainant, Respondent, and his/her supervisor, if applicable, of the final result. Faculty members who are subject to sanctions under these procedures will receive the procedural protections set forth in the Faculty Handbook.

j)      If corrective actions are imposed, IDEAA shall monitor their implementation. The appropriate Executive Vice President or Chief Operating Officer shall ensure that the approved corrective actions are smoothly implemented and take measures to protect against retaliatory actions relating to the appeal or the underlying investigation or allegations.

**Appendix A**

<mark>**IDEAA's Grievance Procedures for Complaints of Title IX Sexual Harassment**</mark>

IDEAA's Grievance Procedures provide for the prompt, fair, and impartial resolution of all Complaints of discrimination and harassment. In addition, the U.S. Department of Education's regulations implementing Title IX prescribe specific Grievance Procedures that must be applied to a narrow subset of Sexual Misconduct defined as "Title IX Sexual Harassment" in the Policy on Sexual Misconduct. As such, IDEAA has developed specific Grievance Procedures for Complaints of Title IX Sexual Harassment, which apply to that subset of conduct.

Complaints of Title IX Sexual Harassment against faculty, staff, and AAPs will be addressed under this Appendix. Complaints of Title IX Sexual Harassment against third parties will be referred by the Title IX Coordinator to an appropriate authority for resolution, as specified in the Policy on Sexual Misconduct.

In the event of a conflict between IDEAA's grievance procedures and the Policy on Sexual Misconduct, the Policy on Sexual Misconduct will govern. Relevant definitions are set forth in the Policy on Sexual Misconduct.

**I.      Intake**

**(a) Filing a Title IX Complaint**

To initiate a formal complaint of Title IX Sexual Harassment, a Title IX Complaint must be filed with the Title IX Coordinator (contact information for coordinators may be found in Appendix B to these procedures). A Title IX Complaint is a document filed by a Complainant or signed by the Title IX Coordinator alleging Title IX Sexual Harassment against a Respondent and requesting that the University investigate the allegation of Title IX Sexual Harassment.

> i.  A Title IX Complaint may be filed with the Title IX Coordinator in person, by mail, by electronic mail, or by any other means designated by the University. As used in this paragraph, the phrase "document filed by a Complainant" means a document or electronic submission that contains the Complainant's physical or digital signature, or otherwise indicates that the Complainant is the person filing the Title IX Complaint.

> ii.  Where a Title IX Coordinator signs a Title IX Complaint, the Title IX Coordinator is not a Complainant or otherwise a party. The Title IX Coordinator may sign a Title IX Complaint in circumstances where a Complainant declines to file a Title IX Complaint and, in the Title IX Coordinator's discretion, the allegations indicate a possible safety concern for the campus community or another circumstance exists that reasonably would warrant an investigation.

**(b) Meeting with Complainant**

Within five (5) days of the filing of a Complaint, a Title IX Coordinator, or designee, shall schedule an individual meeting with the Complainant to provide a general understanding of the Policy on

Sexual Misconduct and this grievance procedure, as well as Supportive Measures that may be appropriate, including concerning the individual's academic, University housing, and/or University employment arrangements.

    i. Prior to the intake meeting, the Title IX Coordinator, or designee, will provide the Complainant with written notice of the date, time, location, participants, and purpose of the meeting.

    ii. Supportive Measures may include counseling, extensions of deadlines or other course-related adjustments, modifications of work or class schedules, campus escort services, mutual restrictions on contact between the parties, changes in work or housing locations, leaves of absence, increased security and monitoring of certain areas of the campus, and other similar measures.

**(c) Title IX Coordinator's Response to Title IX Complaint**

**1.  Decision Regarding Title IX Jurisdiction**

Within ten (10) days of the filing of the Complaint, the Title IX Coordinator will review the Title IX Complaint to determine whether the alleged conduct, if proved, could constitute Title IX Sexual Harassment. If the alleged conduct would not constitute Title IX Sexual Harassment, even if proved, the Title IX Coordinator will dismiss the Title IX Complaint.

Where there are multiple Complainants or Respondents arising out of the same incident, the Title IX Coordinator has the discretion to determine whether the allegations warrant consolidated, parallel, or sequential processing.

Where a Complaint includes both allegations of Title IX Sexual Harassment and other Sexual Misconduct, discrimination, or harassment based on a protected characteristic, the allegation of Title IX Sexual Harassment will be addressed under IDEAA's Grievance Procedures for Complaints of Title IX Sexual Harassment. The other allegation(s) of discrimination or harassment may be handled under IDEAA's Grievance Procedures to Investigate Allegations of Discrimination and Harassment or IDEAA's Grievance Procedures for Title IX Sexual Harassment, at the discretion of the Associate Vice President for Equal Opportunity, Affirmative Action and Compliance, except that the Title IX Coordinator will determine the appropriate procedures for allegations of sex-based discrimination, including Sexual Misconduct.

Where a Complaint includes allegations of Title IX Sexual Harassment and violations of University policies that are not within IDEAA's jurisdiction, the other University office or committee with jurisdiction over the remaining allegations that arise shall consult with the Title IX Coordinator and IDEAA to determine the order of proceedings to ensure compliance with best practices and applicable legal standards.

## 2. Notices to Parties

Within ten (10) days of the decision that the Title IX grievance procedures apply, a Title IX Coordinator will provide the following written notice to the parties identified in the Title IX Complaint:

1. Notice of the University's grievance procedures, including informal resolution process.
2. Notice of the allegations of Title IX Sexual Harassment, including sufficient details known at the time and with sufficient time to prepare a response before any initial interview. Sufficient details include the identities of the parties involved in the incident, if known, the conduct allegedly constituting Title IX Sexual Harassment, and the date and location of the alleged incident, if known.
3. Notice that the Respondent is not treated as responsible for the alleged conduct until a determination regarding responsibility is made at the conclusion of the grievance process.
4. Notice to the parties that they may have an advisor of their choice, who may be, but is not required to be, an attorney, and may inspect and review evidence.
5. Notice of the provision in the Policy on Sexual Misconduct that prohibits knowingly making false statements or knowingly submitting false information during the grievance process.

IDEAA also will provide to the Respondent a copy of the Title IX Complaint and supporting documents.

If, in the course of an investigation, IDEAA decides to investigate allegations about the Complainant or Respondent that were not included in the original notice provided to the parties, or remove charges that were included in the original notice, a Title IX Coordinator will provide an amended notice of the allegations to the parties identified in the Title IX Complaint.

## 3. Meeting with Respondent

Within five (5) days of the date of the written notice of the Title IX Complaint, a Title IX Coordinator, or designee, shall schedule an individual meeting with the Respondent(s) in order to provide a general understanding of the Policy on Sexual Misconduct and this grievance procedure, as well as Supportive Measures that may be appropriate, including concerning the individual's academic, University housing, and/or University employment arrangements.

> i. Prior to the intake meeting, the Title IX Coordinator, or designee, will provide the Respondent with written notice of the date, time, location, participants, and purpose of the meeting.

> ii. Supportive Measures may include counseling, extensions of deadlines or other course-related adjustments, modifications of work or class schedules, campus escort services, mutual restrictions on contact between the parties, changes in work or housing locations, leaves of absence, increased security and monitoring of certain areas of the campus, and other similar measures.

13

IDEAA Grievance Policy 013

**4. Dismissal of Title IX Complaint**

Where within the Title IX Coordinator's reasonable discretion, it is determined that the conduct alleged in the Title IX Complaint would not constitute Title IX Sexual Harassment, even if proved, the Title IX Complaint will be dismissed within five (5) days of the Title IX Coordinator's determination and referred to IDEAA to be addressed under IDEAA's Grievance Procedures. The Title IX Coordinator, with reasonable discretion, may also dismiss an allegation of Title IX Sexual Harassment if at any time during the investigation or hearing:

   a. a Complainant notifies the Title IX Coordinator in writing that the Complainant would like to withdraw the Title IX Complaint or any allegations therein;
   b. the Respondent is no longer employed by the University;
   c. specific circumstances prevent the University from gathering evidence sufficient to reach a determination as to the Title IX Complaint or allegations therein; or
   d. the Complainant is no longer participating in or attempting to participate in the Education Program or Activity of the University, as defined under the Policy on Sexual Misconduct.

Within five (5) days of the dismissal decision, the Title IX Coordinator will send simultaneously to the parties written notice of the dismissal, the reason(s) for dismissal, and the appeal procedure. Information about the process for appealing the Title IX Coordinator's dismissal decision is described in Section IV.

Should the Title IX Coordinator determine that dismissal of Title IX Sexual Harassment allegations is appropriate, the Title IX Coordinator also will determine whether the allegations should be referred to another University department or office to be addressed under other procedures. The Title IX Coordinator also will assess whether it is appropriate to offer Supportive Measures to impacted individuals.

## II.     Informal Resolution

With the exception of a matter involving an Employee alleged to have engaged in Title IX Sexual Harassment against a Student, IDEAA may, at the request of either party, at any time prior to the determination regarding responsibility after the filing of a Title IX Complaint, facilitate a voluntary, informal resolution process, such as mediation, provided that the following conditions are met:

a.     Notice. The University will provide to the parties a written notice disclosing: the allegations; the requirements of the informal resolution process including the circumstances under which it precludes the parties from resuming a Title IX Complaint arising from the same allegations; the right of any party to withdraw from the informal resolution process and resume the grievance process with respect to the Title IX Complaint prior to agreeing to a resolution; and any consequences resulting from participating in the informal resolution process, including the records that will be maintained or could be shared;

14

b.        <u>Voluntary Consent</u>. The University will obtain the parties' voluntary, written consent to the informal resolution process.

c.        <u>Timeframe</u>.  Informal Resolution will be completed within approximately 45 calendar days of the parties' agreement to participate in Informal Resolution, but IDEAA may extend the timeframe for good cause. During the Informal Resolution process, all deadlines in these procedures will be held in abeyance.

## III.    Investigation

### (a) Referral of Title IX Complaint to Investigator

If the conduct alleged in the Title IX Complaint could constitute Title IX Sexual Harassment, within fifteen (15) days of the date the Title IX Complaint was filed or at the completion of any appeal made regarding a dismissal decision, the Title IX Coordinator will assign the Title IX Complaint to IDEAA for investigation under IDEAA's Grievance Procedures for Title IX Sexual Harassment.

### (b) Opportunity to Respond to Complaint

After receiving written notice of the allegations as outlined in Section I.(c) above, the Respondent shall have an opportunity to submit a written response (hereinafter "Response") to the Complaint, including its allegations and any supporting Complaint documents, within ten (10) days of receipt of the formal Complaint and its supporting documents.

### (c) Fact-Gathering

IDEAA shall, within a prompt and reasonable time frame, investigate the Title IX Complaint and shall have access to all available information to do so, including the opportunity to interview witnesses, as well as the Complainant and Respondent.

Prior to an investigative interview of a party (Complainant or Respondent), the investigator will provide that party with written notice of the date, time, location, participants, and purpose of the investigative interview.

Both the Complainant and Respondent will have an equal opportunity to identify witnesses and provide inculpatory and exculpatory evidence.

### (d) Opportunity to Review Evidence

IDEAA will provide both parties an equal opportunity to review and inspect any evidence obtained as part of the investigation that is directly related to the allegations raised in the Title IX Complaint. This includes the evidence upon which the University does not intend to rely in reaching a determination regarding responsibility and inculpatory or exculpatory evidence whether obtained from a party or other source, so that each party can meaningfully respond to the evidence prior to

15

conclusion of the investigation. Prior to completion of the investigative report, the University will make available to each party and the party's advisor, if any, the evidence subject to inspection and review in an electronic format or a hard copy, at IDEAA's discretion. The parties will have at least ten (10) days to submit a written response, which the investigator will consider prior to completion of the investigative report.

**(e) Investigative Report**

Upon completion of the investigation, the investigator shall prepare a written report that fairly summarizes relevant evidence. The investigator will send to the Title IX Coordinator the investigative report, relevant evidence gathered during the investigation, and all evidence made available to the parties for review and inspection prior to the conclusion of the investigation.

At least ten (10) days prior to a hearing, the Title IX Coordinator will send to each party and the party's advisor, if any, the investigative report in an electronic format or a hard copy, for their review and written response. Written responses will be provided to the Title IX Coordinator within the ten (10) day period.

**IV.    Hearing Process**

**(a) Notice of Hearing Process**

At least fifteen (15) days prior to a hearing, the Title IX Coordinator will send to each party and the party's advisor, if any, a notice and description of IDEAA's hearing process and the expected timeframe for the process.

**(b) Standard of Evidence**

The standard of evidence for all cases of Title IX Sexual Harassment is preponderance of the evidence, which means that the decision-maker must determine based on the evidence whether it is more likely than not that Title IX Sexual Harassment occurred.

**(c) Production of Evidence**

All evidence subject to the parties' inspection and review at the conclusion of the investigation will be available at any hearing to give each party an equal opportunity to refer to such evidence during the hearing, including for purposes of questioning the other party by an advisor.

**(d) Hearing**

A Title IX Sexual Harassment Hearing Panel ("Hearing Panel") will be assembled to review the investigative report and supporting evidence, conduct a live hearing, and determine whether the Respondent is responsible for the conduct alleged in the notice of Complaint.

    **1.    Composition of the Hearing Panel**

The Hearing Panel shall be composed of three members, each of whom shall be a decision-maker,

as defined in the Policy on Sexual Misconduct. At least two of the three Hearing Panel members will be selected from a pool of trained administrators, faculty, and staff. A trained external consultant also may serve as a Hearing Panel member. IDEAA shall select the Hearing Panel members and designate one Hearing Panel member to be the Chair. The Hearing Panel Chair will make decisions about relevance during the hearing.

Where the Respondent is a faculty member, at least two of the three Hearing Panel members shall be faculty members or academic administrators.

Where the Respondent is a staff member or AAP, at least two of the three Hearing Panel members shall be staff or AAPs.

Parties who believe there exists a conflict of interest with regard to a panel member must notify the Title IX Coordinator, or designee, as described in Section VIII.

**2.      Pre-Hearing Process**

At least ten (10) days prior to the hearing, each party must submit to the Title IX Coordinator a list of relevant witnesses who they request to be called as witnesses during the hearing.

At least seven (7) days prior to the hearing, IDEAA will provide the Complainant and Respondent with written notice of the date, time, location, participants, and purpose of the hearing.

**3.      Hearing Process**

(i) <u>Location</u>. The hearing will take place in-person or remotely using technology, at the discretion of IDEAA. At the request of either party, IDEAA will provide for the live hearing to occur with the parties in separate locations. In such a case, IDEAA will provide technology enabling the Hearing Panel members and parties to simultaneously see and hear the party or the witness answering questions.

(ii) <u>Interviews of Parties</u>. During the hearing, the Hearing Panel will conduct separate interviews of the Complainant and Respondent regarding the information in the investigative report and supporting documentation.

(iii) <u>Questioning by Advisors</u>. The Hearing Panel Chair will permit each party's advisor to ask the other party and any witnesses identified in section IV.(d)(2) above relevant questions and follow-up questions, as may be determined by the Hearing Panel Chair, including those challenging the credibility of each party or witness. Such questions at the live hearing will be asked directly, orally, and in real time by the party's advisor and never by a party personally, notwithstanding the discretion of the University to otherwise restrict the extent to which advisors may participate in the proceedings. Advisors must comply with any rules of decorum set forth by the University.

Hearing Panel members cannot draw an inference relevant to the determination regarding responsibility based solely on a party's or witness's absence from the live hearing or refusal to answer questions.

(iv)    Provision of Advisors to Conduct Interviews During Hearing. If a party does not have an advisor present at the live hearing, the University will provide without fee or charge to that party, an advisor of the University's choice, who may be, but is not required to be, an attorney, to conduct an interview of the other party during the hearing. Parties are requested to notify the University ten (10) days in advance of the hearing if they will not have an advisor present at the hearing.

(v)    Relevance Determinations.  Only relevant questions may be asked of a party or witness. Before a Complainant, Respondent, or witness answers a question, the Hearing Panel Chair will first determine whether the question is relevant and explain any decision to exclude a question as not relevant. Questions and evidence about the Complainant's sexual predisposition or prior sexual behavior are not relevant, unless (1) such questions and evidence about the Complainant's prior sexual behavior are offered to prove that someone other than the Respondent engaged in the conduct alleged by the Complainant, or (2) the questions and evidence concern specific incidents of the Complainant's prior sexual behavior with respect to the Respondent and are offered to prove consent.

(vi)    Recording. At its discretion, IDEAA may make an audio or audiovisual recording, or transcript, of any live hearing and IDEAA may make such available to the parties for inspection and review, upon request. No other recording of the hearing is permitted. The recording may be used in deliberations by the hearing panel or decision-makers. Parties' access to the recording typically will occur in-person at a location of IDEAA's choosing; however, in exceptional circumstances, review and inspection may be permitted remotely with protective measures instituted to maintain the confidentiality of the recording. Recording of the hearing is governed by the confidentiality requirements of these procedures and the Policy on Sexual Misconduct. Such recording will be maintained in accordance with the record-keeping requirements set forth in the Policy on Sexual Misconduct. No other unauthorized recording or use of any technology during interviews and/or meetings with IDEAA is permitted by the Complainant, Respondent, witnesses, and/or advisors.

(vii)    Determination of Finding(s). A finding of responsibility must be determined by a majority vote of the Hearing Panel.

**4.        Sanctions and Educational Remedies**

a.        For faculty, notice of the Hearing Panel's determination of responsibility will be provided to the Executive Vice President for the Campus, consistent with the Faculty Handbook, to determine the appropriate sanction. Faculty members who are subject to sanctions under these procedures will receive the procedural protections set forth in the Faculty Handbook.

b.        For staff and AAPs, notice of the Hearing Panel's determination of responsibility will be provided to the Executive Vice President for the Campus or COO, as appropriate, and the Department of Human Resources to determine appropriate sanctions.

c.        The following apply to faculty, staff, and AAPs unless otherwise specified below:

(i)        When a Hearing Panel finds that Title IX Sexual Harassment has occurred, IDEAA will forward the investigative report and decision of the Hearing Panel to the Respondent's Executive Vice President or COO, or designee, or other University

18

officials on a need-to-know basis, consistent with the above provisions addressing confidentiality. For purposes of these procedures, if the Executive Vice President or COO is a party to the matter, the President or President's designee will be informed of the results and take the required actions.

(ii)     Any sanction that is fair and proportionate to the violation may be imposed. In determining an appropriate sanction, any record of past violations of University policies, as well as the nature and severity of such past violations, may be considered. Sanctions will be determined with consideration given to applicable University policies.

(iii)    Sanctions and/or remedies for Faculty under the Faculty Responsibilities Code include but are not limited to: training, coursework, mentoring, participation in workshops or support groups, monitoring, written apology, a course of counseling, letter of reprimand, loss of faculty privileges (including removal from office, project, or home unit; loss of office space; research funding; access to Teaching Assistants or Research Assistants; attendance at faculty meetings; and voting rights), probation, denial of a salary increase, bonus, or other remuneration, reduction of salary, unpaid suspension from work for a stated period of time, removal of duties, with commensurate reduction in pay, reduction in rank; termination of employment; revocation of tenure; or any other sanction that is determined by the decisionmaker to be fair and proportionate to the violation.

(iv)     Sanctions and/or remedies for staff and AAPs include: restitution; training; counseling, written warning, reduction in salary; demotion; disciplinary suspension; termination of employment; or any other sanction that is determined by the decisionmaker to be fair and proportionate to the violation.

(v)      Remedies will be designed to restore or preserve equal access to the Education Program or Activity. Such remedies may include Supportive Measures, but may also be disciplinary or punitive.

(vi)     The Title IX Coordinator is responsible for effective implementation of any sanctions and remedies. Failure to comply may lead to additional sanctions.

**5.    Written Determination**

Within forty-five (45) days of the date the live hearing concludes, the Hearing Panel will issue a written determination regarding responsibility, using the preponderance of the evidence standard. IDEAA will provide the written determination to the parties simultaneously. If an appeal is filed, the determination regarding responsibility becomes final on the date the written determination of the result of the appeal is provided to the parties. If an appeal is not filed, the determination regarding responsibility becomes final on the date on which an appeal would no longer be considered timely. The written determination will include:

(i)  Identification of the allegations potentially constituting Title IX Sexual Harassment;

19

(ii) A description of the procedural steps taken from the receipt of the Title IX Complaint through the determination, including any notifications to the parties, interviews with parties and witnesses, site visits, methods used to gather other evidence, and hearings held;

(iii) Findings of fact supporting the determination;

(iv) Conclusions regarding the application of the Policy and other University policies, as applicable, to the facts;

(v) A statement of, and rationale for, the result as to each allegation, including a determination regarding responsibility, any disciplinary sanctions the University will impose on the Respondent, and whether remedies designed to restore or preserve equal access to the Education Program or Activity will be provided by the University to the Complainant;

(vii) The procedures and permissible bases for the Complainant and Respondent to appeal.

The determination regarding responsibility will be final unless either party appeals the Hearing Panel's finding, as outlined in Section IV.

If a Respondent is found responsible for Title IX Sexual Harassment, the sanctioning decision will take place after the expiration of the time period for filing an appeal, or at the conclusion of the appeal process, whichever is later.

## V.    Appeal

### (a) Appeal of Dismissal Decision

An appeal of the Title IX Coordinator's dismissal decision (see Section I.(c)1.) may be made by Complainant or Respondent to the Associate Vice President for Equal Opportunity, Affirmative Action and Compliance, or designee, within five (5) days of the date of the Title IX Coordinator's written notification to the parties. Within two (2) days following the expiration of the time frame for filing an appeal, the Title IX Coordinator or IDEAA will notify the other party in writing if an appeal is filed and, if so, implement appeal procedures equally for both parties.

### 1.    Grounds for Appeal

There are certain limited circumstances under which a dismissal decision may be appealed. The appellant must demonstrate:

> (i) A material failure to follow these procedures or a procedural irregularity that affected the outcome of the matter;

> (ii) Significant evidence was not considered, which would have altered the outcome, or new evidence that was not reasonably available at the time the determination regarding dismissal was made that could affect the outcome; or

> (iii) That the Title IX Coordinator(s), investigator(s), or decision-maker(s) had a conflict of interest or bias that affected the outcome of the matter.

### 2. Appeal Procedures

Both parties will have a reasonable and equal opportunity to submit a written statement in support of, or challenging, the outcome. Each party who did not file the appeal will be given a chance to respond to the request for an appeal within five (5) days.

The Associate Vice President for Equal Opportunity, Affirmative Action and Compliance (AVP), or designee, will determine whether the request for an appeal is warranted.

If an appeal is not warranted, the AVP will uphold the Title IX Coordinator's dismissal decision.

If an appeal is warranted, the AVP, or designee, shall review the Title IX Coordinator's dismissal decision. During this review, the AVP, or designee, shall have access to all relevant information and the opportunity to interview witnesses, including the opportunity to interview the investigator(s), Complainant, and Respondent separately, as applicable and appropriate depending on when the dismissal decision is made.

The AVP, or designee, may determine that the matter should be dismissed, returned to the Title IX Coordinator for investigation, or referred to another University department or office to be addressed. The decision of the AVP, or designee, is final.

Within fifteen (15) days of the date the appeal was filed, the parties will be informed of the AVP's determination. The written determination will describe the result of the appeal and the rationale for the result, and the written determination will be provided simultaneously to both parties.

### (b) Appeals of Hearing Panel Determination

An appeal may be made by Complainant or Respondent to the Associate Vice President for Equal Opportunity, Affirmative Action and Compliance, or designee, within fourteen (14) days of the date of the Hearing Panel's written notification of the determination to the parties. Within two (2) days following the expiration of the time frame for filing an appeal, the Title IX Coordinator or IDEAA will notify the other party in writing if an appeal is filed and, if so, implement appeal procedures equally for both parties.

### 1. Grounds for Appeal

There are certain limited circumstances under which a hearing panel determination may be appealed. The appellant must demonstrate:

    (i)    A material failure to follow these procedures or a procedural irregularity that affected the outcome of the matter;

    (ii)    Significant evidence was not considered, which would have altered the outcome, or new evidence that was not reasonably available at the time the determination regarding dismissal was made that could affect the outcome; or

    (iii)    That the Title IX Coordinator(s), investigator(s), or decision-maker(s) had a conflict of interest or bias that affected the outcome of the matter.

The other party or parties will be given a chance to respond to the request for an appeal within fourteen (14) days. Both parties will have a reasonable, equal opportunity to submit a written statement in support of, or challenging, the outcome.

The Associate Vice President for Equal Opportunity, Affirmative Action and Compliance, or designee, will determine whether the request for an appeal is warranted. The parties will be informed of the decision within ten (10) days of IDEAA receiving the request for appeal. The written determination will describe the result of the AVP's determination and the rationale for the result, and the written outcome will be provided simultaneously to both parties.

## 2.    Appeal Procedures

(i)    If the request for an appeal is granted, IDEAA shall notify the appropriate Vice President, Executive Vice President or COO at the same time the parties are notified of the decision to grant the appeal. This notification shall include a copy of the Title IX Complaint naming the Complainant and Respondent and will explain the grounds on which the appeal was granted.

(ii)    IDEAA shall then initiate the selection procedures to form a three-member Grievance Panel selected from the Equal Opportunity Examining Board made up of Georgetown University administrators, faculty and staff. Grievances involving discriminatory denials of tenure, promotion or reappointment of faculty members shall be heard by panels composed of faculty or academic administrators only. Panel members must be free of conflict of interest or bias and will receive training as decision-makers. The three-member Grievance Panel to serve on an appeal shall be selected in the following manner:

   a)    Within five (5) days from the date of IDEAA's decision to grant an appeal, the Complainant shall select one member of the Equal Opportunity Examining Board, and the Respondent shall select another.

   b)    IDEAA shall promptly convene a meeting of these two selected panelists who shall choose the third member from the Equal Opportunity Examining Board to form the Grievance Panel.

(iii)    A member of IDEAA's staff shall present information about the case to the panel members, who shall recuse themselves if they have prior knowledge of the Complaint, the circumstances surrounding the incidents, or any other reason which might prevent them from rendering an impartial decision. If the panelist selected by the Complainant is recused, then Complainant shall select another panelist. If the panelist selected by Respondent is recused, then Respondent shall select another panelist. If the panelist selected by the two selected panelists is recused, then the two selected panelists shall select another panelist.

(iv)    The Grievance Panel is charged with reviewing the written determination of responsibility and the ground(s) on which the appeal was granted.

(v)      The Grievance Panel shall have access to all relevant information and the opportunity to interview witnesses, including the opportunity to interview the investigator(s), Complainant, and Respondent separately.

(vi)     The information presented to the Grievance Panel and its deliberations is confidential.

(vii)    Each party may choose an Advisor to accompany the party to meet with the Grievance Panel. The Advisor may not speak on behalf of the party or otherwise represent the party, but may provide support and consult with the party outside of the presence of the Grievance Panel. Any party who will be accompanied by an Advisor who is an attorney must notify the Grievance Panel at least three (3) days prior to the meeting, so that arrangements may be made for the University's attorney to attend.

(viii)   The Grievance Panel shall by majority vote reach one of the following results:

   a)      support the determination of responsibility; or

   b)      reach a different determination regarding responsibility.

(ix)     Within forty-five (45) days from its formation, the Grievance Panel shall submit a report of its results to the Associate Vice President for Equal Opportunity, Affirmative Action and Compliance (AVP), or designee. The written report of the Grievance Panel will describe the result of the appeal and the rationale for the result, and the written report will be provided simultaneously to both parties.

      The AVP will forward the results with the AVP's approval and/or comments (if, for example, the Panel has not supported the full results) to the appropriate Executive Vice President or COO. The appropriate Executive Officer may accept the Panel's recommendations or may reasonably modify the results with the concurrence of the Associate Vice President for Equal Opportunity, Affirmative Action and Compliance, or designee. This official's decision is final and will be made within ten (10) days of receipt of the Grievance Panel's report. IDEAA shall provide notice on the same day to the Complainant, Respondent, and the Respondent's supervisor, if applicable, of the final result.

(x)      If corrective actions are imposed, the Title IX Coordinator shall monitor their implementation. The appropriate Executive Vice President or COO also shall ensure that the approved corrective actions are smoothly implemented and take measures to protect against retaliatory actions relating to the appeal or the underlying investigation or allegations.

## VI.    Confidentiality

Complaints and investigations under this policy are treated as confidential by the University. The University complies with the Family Educational Rights & Privacy Act (FERPA) and other applicable privacy laws at all times in the course of investigations. The University will keep confidential the identity of any individual who has made a Report or Complaint of Sexual Misconduct, any Complainant, any individual who has been reported to be the perpetrator of sexual

misconduct, any Respondent, and any witness, except as may be permitted by FERPA, or as required by law, or in order to conduct any investigation, hearing, or judicial proceeding arising from this Policy. The University complies with the Jeanne Clery Disclosure of Campus Security Police and Campus Crime Statistics Act and the Violence Against Women Act with respect to reporting and disclosure of campus security information. The University will not restrict the ability of either party to discuss the allegations under investigation or to gather and present relevant evidence, as long as such conduct is not harassing or retaliatory. The investigation, investigation report, and proceedings are considered confidential.

## VII.    False Information

Knowingly making a materially false statement or submitting false information in bad faith during the grievance process is prohibited. However, a determination regarding responsibility, alone, is not sufficient to conclude that any party made a materially false statement in bad faith.

## VIII.   Training

Title IX Coordinator(s), investigator(s), decision-maker(s), and any person who facilitates an informal resolution process, will receive training on the definitions of terms used in the Policy on Sexual Misconduct, the scope of the University's Education Program or Activity, how to conduct an investigation and grievance process including hearings, appeals, and informal resolution processes, as applicable, and how to serve impartially, including by avoiding prejudgment of the facts at issue, conflicts of interest, and bias. The University also will ensure that investigators receive training on issues of relevance to create an investigative report that fairly summarizes relevant evidence. Hearing Panel members will receive training on any technology to be used at a live hearing, as applicable, and on issues of relevance of questions and evidence, including when questions and evidence about the Complainant's sexual predisposition or prior sexual behavior are not relevant. Any materials used to train Title IX Coordinator(s), investigator(s), decision-maker(s), and any person who facilitates an informal resolution process, will not rely on sex or gender stereotypes and will promote impartial investigations and adjudications of Complaints of Title IX Sexual Harassment.

## IX.    Conflicts of Interest

Any individual designated as an investigator, decision-maker, or any person designated to facilitate an informal resolution process, may not have a conflict of interest or bias for or against Complainants or Respondents generally or an individual Complainant or Respondent. The parties are required to raise any concerns related to conflicts of interest or bias in writing to the Title IX Coordinator(s) (or to the Vice President of Diversity, Equity, and Inclusion and Chief Diversity Officer, if the Title IX Coordinator(s) has a conflict of interest) within 5 days of the alleged conflict of interest or bias arising. The Title IX Coordinator(s) will perform their duties without conflict of interest or bias.

## X.    Administrative Leave

Human Resources Policy #305 and the Faculty Responsibilities Code of the Faculty Handbook provide procedures for placing an employee on administrative leave during the pendency of an investigation or grievance process.

## XI.    Notice of Meetings and Timeframes

IDEAA will provide, to a party whose participation is invited or expected, written notice of the date, time, location, participants, and purpose of all hearings, investigative interviews, or other meetings, with sufficient time for the party to prepare to participate.

At the discretion of the Title IX Coordinator(s), the grievance process may be temporarily delayed and limited extensions of time frames may be granted for good cause shown with written notice to the Complainant and the Respondent of the delay or extension and the reasons for the action.  Good cause may include, but is not limited to, considerations such as the absence of a party, advisor, or a witness; concurrent law enforcement activity; the need for language assistance or accommodation of disabilities; exam periods; or breaks in the University's calendar. No party may unreasonably delay the grievance process due to unavailability of an advisor.

At the discretion of the Title IX Coordinator(s), the grievance process also may be temporarily delayed during the dismissal and informal resolution processes, including appeals of dismissal decisions, to permit the conclusion of these processes prior to the commencement of the investigation or hearing.

## XII.    Supportive Measures and Resources

Supportive Measures are available to individuals who are alleged to have experienced Sexual Misconduct and those accused of Sexual Misconduct on an equitable basis. Individuals impacted by Sexual Misconduct are encouraged to seek confidential counseling and other support resources offered by the University and by off-campus providers. Individuals are encouraged not to wait to seek confidential counseling, and University counselors can take proactive steps to assist concerned individuals. A description of these resources is available on the University's website at: https://sexualassault.georgetown.edu/resourcecenter. In addition, a description of the Faculty and Staff Assistance Program is available at: http://hr.georgetown.edu/fsap/.

**Appendix B**
**Notice of Non-Discrimination**

Georgetown University is committed to providing equal educational and employment opportunities and embraces the diversity of its faculty, staff, and students. The University does not discriminate on the basis of age, color, disability, family responsibilities, familial status, gender identity or expression, genetic information, marital status, national origin, personal appearance, political affiliation, race, religion, sex, sexual orientation, source of income, veteran's status or any other factor prohibited by law in its educational programs and activities or in employment.

The following person has been designated to handle questions regarding Georgetown's non-discrimination and affirmative action policies:

> Associate Vice President for Equal Opportunity, Affirmative Action & Compliance
> Office of Institutional Diversity, Equity, and Affirmative Action
> M-36 Darnall Hall
> 37th & O Streets NW
> Washington, DC 20057
> Phone: (202) 687-4798
> Fax: (202) 687-7778
> Email: ideaa@georgetown.edu

The following person has been designated to handle questions regarding Georgetown's Title IX policy:

> University Title IX Coordinator
> Office of Institutional Diversity, Equity, and Affirmative Action
> M-36 Darnall Hall
> 37th & O Streets NW
> Washington, DC 20057
> Phone: (202) 687-4798
> Fax: (202) 687-7778
> Email: titleixideaa@georgetown.edu

The University has designated Deputy Title IX Coordinators for each of the following: undergraduate students; Main Campus Graduate Students (including Biomedical Graduate Education students), the School of Medicine; the Law Center; the School of Continuing Studies; Georgetown University in Qatar; and Faculty and Staff.

A list of Deputy Title IX Coordinators is available on the University's website at https://titleix.georgetown.edu/title-ix-contacts.

We encourage individuals with inquiries regarding these policies to first contact the staff persons listed above. Inquiries about the application of this Policy or Title IX to the University may be referred to the University's Title IX Coordinator(s), to the Assistant Secretary of the U.S. Department of Education, or both.

IDEAA Grievance Policy 026

**Appendix C**
**Changes and Updates to IDEAA's Grievance Procedures to Investigate Allegations of Discrimination and Harassment as required by the Revocation by Operation of Law Provision**


1. Effective October 7, 2021, the following statement was removed from Appendix B, Section 12(d)(i) of this Policy: 2. On November 16, 2021, the definition of "Sexual Assault" was updated in Appendix A of this Policy to reflect the changes made to the Federal Bureau of Investigation's uniform crime reporting system, as required by 34 CFR 106.30.


If a party or witness does not submit to cross-examination at the live hearing, the Decision-maker(s) must not rely on any statement of that party or witness in reaching a determination regarding responsibility.


*Approved: February 3, 2022*