**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DAVID EGOLF,<br><br>*Plaintiff*,<br><br>v.<br><br>GEORGETOWN UNIVERSITY, *et al*.,<br><br>*Defendants*. | Civil Action No. 1:25-cv-03439-ABJ |
| GEORGETOWN UNIVERSITY,<br><br>*Counter-Plaintiff*,<br><br>v.<br><br>DAVID EGOLF,<br><br>*Counter-Defendant*. | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
SECOND MOTION FOR LEAVE TO AMEND**

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES ..... ii**

**I. PROCEDURAL BACKGROUND ..... 2**

**II. LEGAL STANDARD ..... 3**

**III. ARGUMENT ..... 4**

A. The Latest Proposal Confirms the Court's Concerns About Unnecessary Delay and Burden ..... 4

B. Defendants' Previously Briefed Futility Arguments Remain Applicable ..... 6

C. The New Termination Allegations Do Not Cure the Retaliation Claims ..... 6

D. The Revised Conspiracy Allegations Remain Conclusory as to the Current Defendants ..... 9

E. Alternatively, Any Leave Should Be Limited to the Newly Alleged Termination ..... 11

**IV. CONCLUSION ..... 12**

**TABLE OF AUTHORITIES**

*Alexander v. Sandoval*,
532 U.S. 275 (2001) ........ 8

*Bronner v. Duggan*,
324 F.R.D. 285 (D.D.C. 2018) ........ 3

*Cavalier v. Catholic Univ. of Am.*,
306 F. Supp. 3d 9 (D.D.C. 2018) ........ 8

*Cheeks v. Fort Myer Constr. Corp.*,
216 F. Supp. 3d 146 (D.D.C. 2016) ........ 3, 5

*District of Columbia v. Bryant*,
307 A.3d 443 (D.C. 2024) ........ 8

*Doe v. Belmont Univ.*,
367 F. Supp. 3d 732 (M.D. Tenn. 2019), *case dismissed*, No. 19-5369,
2019 WL 5079251 (6th Cir. Sept. 18, 2019) ........ 7

*Du Bois v. Board of Regents of the Univ. of Minnesota*,
987 F.3d 1199 (8th Cir. 2021) ........ 7

*Exec. Sandwich Shoppe, Inc. v. Carr Realty Corp.*,
749 A.2d 724 (D.C. 2000) ........ 11

*Ey v. Office of the Chief Admin. Officer of the U.S. House of Representatives*,
967 F. Supp. 2d 337 (D.D.C. 2013) ........ 6

*Foman v. Davis*,
371 U.S. 178 (1962) ........ 3, 5

*Ghawanmeh v. Islamic Saudi Academy*,
268 F.R.D. 108 (D.D.C. 2010) ........ 3

*Henok v. Chase Home Fin., LLC*,
915 F. Supp. 2d 109 (D.D.C. 2013) ........ 11

*Jackson v. Birmingham Bd. of Ed.*,
544 U.S. 167 (2005) ........ 7, 8

*Johnson v. Georgetown Univ.*,
827 F. Supp. 3d 133 (D.D.C. 2026) ........ 10

*Poola v. Howard Univ.*,
147 A.3d 267 (D.C. 2016) ....................9

*Plummer v. Safeway, Inc.*,
934 F. Supp. 2d 191 (D.D.C. 2013) ....................11

*Purcell v. Thomas*,
928 A.2d 699 (D.C. 2007) ....................9

*Singletary v. Howard Univ.*,
939 F.3d 287 (D.C. Cir. 2019) ....................3

*Toumazou v. Turkish Republic of Northern Cyprus*,
71 F. Supp. 3d 7 (D.D.C. 2014) ....................9

*Vogel v. D.C. Office of Planning*,
944 A.2d 456 (D.C. 2008) ....................6, 7

*Ziglar v. Abbasi*,
582 U.S. 120 (2017) ....................10

**FEDERAL STATUTES**

34 CFR § 106.71 ....................8

Fed. R. Civ. P. 15(a)(2) ....................3, 5

Plaintiff presents his latest proposed amendment as a modest effort to account for Georgetown University's July 15, 2026, termination of his employment. It is considerably broader. The proposed complaint carries forward all of the claims, parties, and theories Defendants challenged in their prior opposition to amendment, revises several of those claims in an apparent but ultimately unsuccessful effort to address the deficiencies Defendants identified, asserts two existing tort claims against Defendants not previously named in those counts, and adds allegations that every Defendant participated in the termination decision even though the proposed complaint itself alleges that a nonparty made that decision.

This is precisely the successive and burdensome amendment practice that concerned the Court in its August 3, 2026, Minute Order. By then, Plaintiff's first motion for leave to amend had been fully briefed: Defendants had filed an eighteen-page opposition, and Plaintiff had filed a twenty-five-page reply accompanied by more than 100 pages of exhibits in which he purported to amend the complaint *again* without giving Defendants any opportunity to respond (or leave of Court). Three weeks later, Plaintiff proposed a different amended complaint. The Court observed that in so doing Plaintiff was seeking to "jettison" his first proposed complaint, expressed concern about the resulting "unnecessary delay and unnecessary burden," and specifically identified repeated failure to cure deficiencies, futility, and undue prejudice as relevant considerations. Aug. 3, 2026, Minute Order. When Plaintiff responded with another motion asking the Court to explain its concerns, the Court denied his request and confirmed that Defendants were entitled to oppose his latest proposal. Aug. 5, 2026, Minute Order.

In opposition, Defendants[1] respectfully incorporate their prior opposition, Dkt. 42, and so address here only the procedural history, the Court's stated concerns, and the material ways in

[1] Georgetown University, Robert M. Groves, Rosemary E. Kilkenny, Olabisi Ladeji Okubadejo, and Samantha Berner ("Defendants") submit this opposition. Undersigned counsel

which Plaintiff's latest proposal goes beyond the newly alleged termination. In short, Plaintiff's proposed changes do not cure the deficiencies previously identified and his motion therefore should be denied. Alternatively, any leave to amend should permit only a narrowly tailored amendment addressing the termination of employment and should not allow the additional parties, claims, and reformulated theories challenged in Defendants' prior opposition.

## I. PROCEDURAL BACKGROUND

Defendants answered the operative Complaint, and Georgetown asserted counterclaims, on December 19, 2025. Dkt. 21. Plaintiff moved to dismiss the counterclaims on December 24, 2025, Dkt. 23; that motion remains pending.

On June 12, 2026, nearly six months later, Plaintiff filed his first motion for leave to amend. Dkt. 41. That motion sought to add two proposed Defendants, claims for retaliation under the D.C. Human Rights Act and civil conspiracy, and a theory that Georgetown breached the 2015 Agreement through disclosures made in this litigation. *See generally* Dkt. 41-1. Defendants opposed the motion on June 26, 2026. Dkt. 42. On July 8, Plaintiff filed a reply and submitted a revised proposed complaint that purported to address several issues raised in the opposition. Dkt. 44 at 7–8; Dkt. 44-4. The motion was fully briefed at that point.

On July 31, Plaintiff filed the present motion to address Georgetown's July 15, 2026, termination of his employment and what he described as "modest editorial changes." Dkt. 45 at 2. The motion included a new proposed complaint and two redlines. Dkts. 45-1–45-3. The proposed complaint carries forward the prior proposed amendments (including the ones added in his reply brief), adds allegations concerning the termination, and revises several existing claims.

---

does not represent proposed defendants Stephanie Baron or Sasha Hodge-Wren and does not purport to assert any defense on their behalf.

On August 3, the Court denied the first amendment motion as moot, established a schedule for briefing the present motion, and authorized the parties to incorporate their prior submissions. Aug. 3, 2026 Minute Order. The Court also identified concerns regarding "the unnecessary delay and unnecessary burden imposed on the opposing party" and directed Plaintiff not to seek further leave to amend while the present motion remained pending. *Id*.

Plaintiff moved for clarification on August 4, addressing the Court's treatment of the first amendment request and its statements concerning delay, burden, and the proposed pleadings. Dkt. 46 at 2–4. The Court denied the motion, stated that its August 3 order was "clear," and confirmed the schedule for Defendants' opposition. Aug. 5, 2026 Minute Order.

## II. LEGAL STANDARD

Rule 15 provides that leave to amend should be freely granted "when justice so requires," Fed. R. Civ. P. 15(a)(2), but a court may deny leave based on "undue delay," "repeated failure to cure deficiencies," "undue prejudice," or "futility," *Foman v. Davis*, 371 U.S. 178, 182 (1962) (identifying grounds for denying leave). An amendment is futile if it would not withstand a motion to dismiss. *Singletary v. Howard Univ.*, 939 F.3d 287, 295 (D.C. Cir. 2019) (affirming denial of leave where the proposed claims would not survive dismissal). Undue delay may also warrant denial where a party "failed to promptly allege a claim for which they already possessed evidence." *Bronner v. Duggan*, 324 F.R.D. 285, 292 (D.D.C. 2018) (citation omitted).

Although promptly seeking to cure defects identified by a court is "the normal and anticipated practice under Rule 15," *Ghawanmeh v. Islamic Saudi Academy*, 268 F.R.D. 108, 111 (D.D.C. 2010) (granting leave where the plaintiff moved less than one month after the court identified the defects), repeated revisions that do not cure identified problems support denial, *Cheeks v. Fort Myer Constr. Corp.*, 216 F. Supp. 3d 146, 170–71 (D.D.C. 2016) (denying leave

after three revisions failed to provide the orderly, defendant-specific pleading the court had required).

## III. ARGUMENT

### A. The Latest Proposal Confirms the Court's Concerns About Unnecessary Delay and Burden

Plaintiff identifies his July 15 termination as the reason for his latest amendment. That event accounts for four new factual paragraphs. *See* Proposed Second Amended Complaint ("PSAC") ¶¶ 222–225, Dkt. 45-1. But Plaintiff did not submit a narrowly tailored amendment limited to those allegations. Instead, he replaced a fully briefed proposed complaint with another pleading that carries forward the prior amendments, revises several claims in response to deficiencies identified by Defendants in the briefing on the prior motion for leave to amend, and expands the allegations against both the current and proposed Defendants. The material changes include:

- **Carrying forward the expanded tortious-interference claims.** The first proposed amended complaint asserted the contractual-interference and prospective-economic-advantage claims against Groves, Kilkenny, Okubadejo, and Berner. Dkt. 41-1 ¶¶ 239–246. In reply, Plaintiff conceded that he should have named Baron and Hodge-Wren in those counts and asked the Court to accept a revised proposed complaint correcting that omission. Dkt. 44 at 7–8. The latest proposal carries that expansion forward by asserting both claims against "All Individual Defendants." PSAC ¶¶ 251–258.

- **Recasting the conspiracy claim**. The original proposal omitted Georgetown as a conspirator, although it already alleged that the individual Defendants "agreed," pursued unlawful objectives, and committed overt acts. Dkt. 41-1 ¶¶ 263–267. In reply, Plaintiff conceded the omission and submitted a revised proposed complaint adding Georgetown. Dkt. 44 at 7–8; Dkt. 44-4 ¶¶ 262–270. The latest proposal carries that revision forward and adds a new purported objective involving Plaintiff's alleged rights under Title IX and the DCHRA. PSAC ¶ 273(a).

- **Adding collective allegations against every Defendant.** The latest proposal alleges that every Defendant participated, for retaliatory purposes, in the investigation, disclosures, Faculty Responsibilities Committee proceedings, and termination decision. PSAC ¶¶ 233–236. Those allegations are broader than the allegations in Plaintiff's first proposal and are not limited to the July 15 termination.

- **Recasting the DCHRA claim**. The first proposal pleaded the DCHRA theory as Count Seven. Dkt. 41-1 ¶¶ 255–261. The latest proposal moves it to Count Two and expressly incorporates the expanded Title IX allegations, including the termination in an attempt to avoid the statute of limitations issues. PSAC ¶¶ 238–241.

These are substantive changes, not the "modest editorial changes" described in Plaintiff's motion. Dkt. 45 at 2. They also track some of the deficiencies identified in Defendants' prior opposition. Plaintiff expanded the underlying tort counts after Defendants noted that the proposed investigators were not named in those claims. He added Georgetown to the conspiracy after Defendants noted its unexplained omission. And he added the terminology of agreement, common design, and overt acts after Defendants explained that the first proposal did not plead facts showing an actionable agreement. Rule 15's liberal amendment policy does not entitle a plaintiff to repeated opportunities to revise a proposed pleading after the opposing party identifies its deficiencies. *See Foman*, 371 U.S. at 182 (recognizing "repeated failure to cure deficiencies" as a basis for denying leave).

Plaintiff argues that amendment would cause no prejudice because discovery has not begun and no scheduling deadlines have been established. Dkt. 45 at 3. But the relevant burden is not limited to discovery. Defendants have already briefed one proposed amendment, and the latest proposal requires Defendants and the Court to address both the newly alleged termination and revised versions of claims previously briefed. The addition of parties and theories would also affect threshold motion practice, discovery, and case management. *See Cheeks*, 216 F. Supp. 3d at 169–70 (declining to permit "another bite at the apple" and noting the costs of opposing an "ever changing complaint").

Plaintiff's counsel participated in the internal University proceedings and was aware that a final employment decision was pending when the first amendment request was briefed. Awaiting that decision would have permitted Plaintiff to present a single proposed amendment. The

termination may support an appropriately tailored amendment if the resulting claims are otherwise viable, but it does not justify revising unrelated theories whose deficiencies were already briefed. *See Ey v. Office of the Chief Admin. Officer of the U.S. House of Representatives*, 967 F. Supp. 2d 337, 341 n.4 (D.D.C. 2013) (declining to provide a "third bite at this proverbial apple" after the motion to dismiss was fully briefed).

### B. Defendants' Previously Briefed Futility Arguments Remain Applicable

The Court expressly authorized Defendants to incorporate their prior opposition where the legal issues remain the same. Aug. 3, 2026 Minute Order. Defendants therefore respectfully incorporate Sections I and II of Dkt. 42, including the arguments concerning the timeliness and legal sufficiency of the proposed DCHRA claim, the deficiencies in the civil-conspiracy theory, Georgetown's litigation-related disclosures, and Plaintiff's delay in asserting claims based on previously known facts. Except for the termination allegations and revisions addressed below, Dkt. 45 carries forward the same claims and theories challenged in Dkt. 42. Rearranging those claims or revising their labels does not eliminate the previously identified defects. Defendants accordingly do not repeat those arguments here.

### C. The New Termination Allegations Do Not Cure the Retaliation Claims

The July 15 termination is the only event alleged to have occurred after Plaintiff's first amendment request and is not itself barred by the one-year limitations period that defeats Plaintiff's earlier-accruing DCHRA allegations. *See* Dkt. 42 at 5–7. But the timeliness of the termination does not make the DCHRA retaliation claim viable. A DCHRA retaliation claim requires protected activity, an adverse action, and a causal connection between the two, *Vogel v. D.C. Office of Planning*, 944 A.2d 456, 463–64 (D.C. 2008), and a fresh adverse action supplies only the second element. Plaintiff must still plausibly allege that he engaged in protected activity

and that the termination occurred because of it. Relocating the DCHRA count to Count Two and anchoring it to the termination, PSAC ¶¶ 238–241, thus does not answer the substantive deficiencies Defendants identified; it changes only the timing of the adverse action, not the absence of protected activity or causation. For the reasons that follow, the proposed pleading alleges neither, and the addition of a timely adverse action therefore does not render the DCHRA claim non-futile.

Plaintiff continues to identify his alleged protected activity as his opposition to the 2013 complaint and to the use of Title IX in a proceeding against him he believed lacked evidence of sexual misconduct. PSAC ¶ 229. But Title IX's private retaliation remedy protects a person who "has complained of sex discrimination." *Jackson v. Birmingham Bd. of Ed.*, 544 U.S. 167, 173 (2005). *Defending* oneself against an accusation is not, without more, a complaint of sex discrimination. *Du Bois v. Board of Regents of the Univ. of Minnesota*, 987 F.3d 1199, 1204–05 (8th Cir. 2021) ("No part of Title IX designates participation in a sexual harassment investigation on the side of the accused as protected activity.").[2] Nor does Paragraph 229 of the PSAC allege that Plaintiff opposed an employment practice prohibited by the DCHRA. *Vogel*, 944 A.2d at 464 ("[T]he complaint must allege an employment practice that is prohibited by the DCHRA."). Defendants otherwise incorporate the arguments presented in Dkt. 42.

[2] Plaintiff's theory – that simply being a respondent in a contested sexual harassment proceeding is, in and of itself, protected "participatory" activity – would have absurd results. If accepted, every such person who was found to have committed sexual harassment and therefore terminated would have been discharged because of their "participation" in a contested Title IX, or DCHRA, or Title VII proceeding. *See, e.g., Doe v. Belmont Univ*., 367 F. Supp. 3d 732, 757 (M.D. Tenn. 2019), *case dismissed*, No. 19-5369, 2019 WL 5079251 (6th Cir. Sept. 18, 2019) ("If this were the law, every respondent in a Title IX investigation would have a baked-in retaliation claim simply because they resisted an allegation of sexual misconduct.").

Plaintiff cannot avoid that limitation by relying on "applicable regulations" to expand Title IX's private retaliation remedy. *See* PSAC ¶ 227. Section 106.71 of the Title IX regulations, 34 CFR § 106.71, directs recipients to prohibit retaliation, but Title IX's private cause of action derives from the statute, not the regulation. *Jackson*, 544 U.S. at 178 ("[W]e do not rely on the Department of Education's regulation at all, because the statute itself contains the necessary prohibition."). A regulation may implement a privately enforceable statutory right, "but it may not create a right that Congress has not." *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001). Section 106.71 therefore does not transform Plaintiff's defense against allegations concerning his own conduct into protected activity actionable through Title IX's private cause of action.

The new termination allegations also add no nonconclusory facts establishing causation. Plaintiff alleges that Interim Provost Soyica Diggs Colbert made the termination decision based on findings and recommendations from the Faculty Responsibilities Committee, IDEAA, and Groves. PSAC ¶¶ 223–224. Egolf then characterizes those findings as containing "gross misstatements of fact" and violations of his rights. *Id.* ¶ 225. But the proposed pleading does not allege that Colbert knew of any protected activity or that such activity substantially contributed to her decision. *Cavalier v. Catholic Univ. of Am.*, 306 F. Supp. 3d 9, 38 (D.D.C. 2018) (requiring facts supporting an inference that the challenged action occurred because the plaintiff complained of sex discrimination); *District of Columbia v. Bryant*, 307 A.3d 443, 451–58 (D.C. 2024) (reaffirming that protected activity must be a "substantial contributing factor" in an adverse action, though not its but-for cause).

Instead, Plaintiff alleges collectively that "[e]ach of the Defendants participated in the retaliatory decisions" to terminate him. PSAC ¶ 236. As to Groves, the new allegations state that Colbert relied on Groves' earlier recommendation but add no new facts concerning Groves'

alleged retaliatory motive; that theory therefore rises or falls with the allegations already addressed in Dkt. 42. As to Kilkenny, Okubadejo, and Berner, the proposed pleading identifies no act each allegedly took concerning Colbert's decision. More fundamentally, numerous independent Georgetown officials and adjudicatory bodies have reviewed this matter, and each has reached the same conclusion. Plaintiff offers no facts supporting his apparent inference that this consistency reflects collective wrongdoing rather than separate decisionmakers reaching the same conclusion from the largely undisputed facts.

The DCHRA permits individual liability where an official acts in the employer's interest and exercises "extensive supervisory, management and administrative authority." *Purcell v. Thomas*, 928 A.2d 699, 715 (D.C. 2007). But the complaint must still describe the individual's role in the challenged employment action. *Poola v. Howard Univ.*, 147 A.3d 267, 281 (D.C. 2016) (sustaining an individual claim where the complaint described the manager's role in directing the challenged decisions). The collective assertion that 'each' Defendant participated does not supply those Defendant-specific facts. *Toumazou v. Turkish Republic of Northern Cyprus*, 71 F. Supp. 3d 7, 21 (D.D.C. 2014) (rejecting allegations "lumping all the defendants together" without facts distinguishing their conduct). The new allegations therefore add an adverse action, but they do not cure the retaliation defects identified in Dkt. 42.

### D. The Revised Conspiracy Allegations Remain Conclusory as to the Current Defendants

Plaintiff's latest proposal attempts to answer Dkt. 42 by adding Georgetown as a conspirator, labeling Baron and Hodge-Wren the "Outside Conspiring Defendants," listing several purported objectives, and identifying alleged overt acts. PSAC ¶¶ 270–274. Those additions do not cure the fundamental absence of facts showing an agreement or in any way address the

intracorporate-conspiracy doctrine barring the claim. Defendants incorporate Section I.C of their prior opposition. Dkt. 42 at 9–13.

Paragraph 270 alleges that Defendants "combined, confederated, agreed, and/or acted in concert," while Paragraph 273 lists objectives they purportedly shared. But the proposed pleading still identifies no communication, event, or other circumstance in which Georgetown or any current individual Defendant reached an agreement with anyone to commit an unlawful act. It does not allege when an agreement was formed, who formed it, or what Groves, Kilkenny, Okubadejo, or Berner agreed to do. *Johnson v. Georgetown Univ.*, 827 F. Supp. 3d 133, 172 (D.D.C. 2026) ("[J]ust because the complaint says that everyone 'agreed' does not mean they did.").

The alleged overt acts do not supply the missing agreement. They consist of database access, internal disclosures, the investigation, and Georgetown's litigation filing. PSAC ¶ 274. Those allegations describe actions allegedly taken by different actors in their respective roles, but provide no facts connecting them to a common unlawful plan. As *Johnson* explained, a complaint must identify some "events, conversations, or documents" supporting an agreement or meeting of the minds. 827 F. Supp. 3d at 172. Plaintiff identifies none.

Nor do Paragraphs 271 and 272 cure that defect by alleging that the proposed investigators are legally distinct and asserting that they "must be regarded" as independent. Even accepting that they are legally distinct from Georgetown does not plausibly establish that they entered an unlawful agreement with Georgetown or any current Defendant, and it does not diminish their status as agents of the University. And because Plaintiff alleges that Groves, Kilkenny, Okubadejo, and Berner acted as Georgetown employees, and that the investigators were "hired by Georgetown to conduct an investigation," PSAC ¶ 1, adding Georgetown itself as a conspirator only makes the intracorporate-conspiracy issue identified by Defendants in Dkt. 42 more direct. *Ziglar v. Abbasi*,

582 U.S. 120, 153 (2017) (citation omitted) ("[A]n agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy."); *see also Exec. Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 739 (D.C. 2000) (under the intracorporate conspiracy doctrine "a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves."); *Plummer v. Safeway, Inc.,* 934 F. Supp. 2d 191, 198 (D.D.C. 2013) (barring claim where the plaintiff did "not allege that any Safeway representatives, employees, or agents acted outside the scope of their employment.").

Defendants do not address any separate defense available to Baron or Hodge-Wren. The pertinent point is narrower: the revised allegations still do not plead facts showing that Georgetown or any current individual Defendant entered an unlawful agreement with anyone, and the University cannot "conspire" with its own employees and agents. The proposed conspiracy claim therefore remains futile as to the Defendants submitting this opposition.

### E. Alternatively, Any Leave Should Be Limited to the Newly Alleged Termination

For the reasons above and in Defendants' prior opposition, Dkt. 42, leave to amend should be denied. If the Court nevertheless permits Plaintiff to add allegations arising from his July 15 termination, leave should be limited to amendments necessary to address that discrete development. *See Henok v. Chase Home Fin., LLC*, 915 F. Supp. 2d 109, 114 (D.D.C. 2013) ("When certain claims in the amended complaint are futile but other claims survive," courts may deny leave in part).

That limited relief would address the only alleged event occurring after Plaintiff filed his prior motion without reopening the additional parties, expanded tort claims, and reformulated theories already challenged in Dkt. 42. Concretely, a properly cabined amendment would add only

the factual allegations describing the July 15 termination, PSAC ¶¶ 222–225, together with the conforming allegations necessary to assert termination-based theories against Georgetown – for example, the existing breach-of-contract and retaliation counts to the extent, and only to the extent, they rest on the termination itself. It would not add Baron or Hodge-Wren as parties; it would not expand the tortious-interference counts to reach new Defendants; it would not add the civil-conspiracy count; and it would not import the reformulated DCHRA, conspiracy, and litigation-disclosure theories challenged in Dkt. 42. Defendants do not concede that the proposed termination allegations state a viable claim, and they reserve their defenses to any amended pleading. But if leave is granted in any respect, Plaintiff should be directed to file a concise pleading limited to the authorized termination-related amendments, without the proposed investigators, revised conspiracy theory, expanded tort claims, or other amendments addressed above and in Dkt. 42.

## IV. CONCLUSION

For the foregoing reasons, and those set forth in Defendants' prior opposition, Dkt. 42, Defendants respectfully request that the Court deny Plaintiff's motion for leave to amend. Alternatively, any leave should be limited to amendments necessary to address Plaintiff's newly alleged July 15 termination.

Dated: August 24, 2026

Respectfully submitted,

*/s/ Henry A. Platt*
Henry A. Platt (D.C. Bar No. 425994)
Brian P. Drockton (DC Bar No. 90021271)
SAUL EWING LLP
1800 M Street, N.W. Suite 1000 North
Washington, DC 20036
Telephone: (202) 333-8800
Facsimile: (202) 337-6065
Email: henry.platt@saul.com
brian.drockton@saul.com

*Counsel for Defendants Georgetown University, Robert M. Groves, Rosemary Kilkenny, Olabisi Ladeji Okubadejo, and Samantha Berner*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of August 2026, a copy of the foregoing **DEFENDANTS' OPPOSITION TO PLAINTIFF'S SECOND MOTION FOR LEAVE TO AMEND** was filed via the CM/ECF system, which caused a copy to be sent via the electronic filing system:

Micah Salb
Lippman Semsker & Salb, LLC
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Email: msalb@lsslawyers.com

*/s Henry A. Platt*
Henry A. Platt (D.C. Bar No. 425994)