**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| DAVID EGOLF,<br><br>Egolf,<br><br>v.<br><br>GEORGETOWN UNIVERSITY, *et al.*,<br><br>Georgetown. | ) | Civil Action No. 25-3439 (ABJ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff David Egolf was a tenured associate professor at defendant Georgetown University ("Georgetown" or "the University"). In 2015, after an investigation into an internal complaint lodged against Egolf by a Georgetown student, the parties entered into a settlement agreement that placed rules on Egolf's conduct in return for his continued employment at the University. In 2023, following a second report by a recent Georgetown graduate, the University completed another investigation into Egolf and his conduct. Egolf filed suit against Georgetown and certain University officials, claiming that the second investigation violated Title IX, Georgetown's Faculty Handbook, and the 2015 settlement agreement. *See* Compl. [Dkt. # 8]. Georgetown has answered the complaint and has filed a counterclaim alleging that Egolf breached the 2015 settlement agreement when he engaged in conduct that violated numerous provisions of the contract. Georgetown's Answer and Counterclaim [Dkt. # 21] ("Answer & Counterclaim"),

Counterclaim ¶¶ 105–11; 114–17.[1] Georgetown seeks compensatory damages and a declaratory judgment. Counterclaim at 45.

Pending before the Court is Egolf's motion to dismiss the counterclaims for failure to state a claim upon which relief can be granted. Egolf's Mot. to Dismiss [Dkt. # 23] ("Egolf's Mot."). Georgetown has opposed Egolf's motion, and the matter is fully briefed. *See* Georgetown's Opp. to Mot. to Dismiss [Dkt. # 29] ("Georgetown's Opp.") Egolf's Reply to Opp. to Mot. to Dismiss [Dkt. # 33] ("Egolf's Reply").

For the reasons stated below, Egolf's motion to dismiss will be **DENIED**.

## BACKGROUND

Egolf was a tenured Associate Professor at Georgetown University in the Department of Physics. Counterclaim ¶ 10. According to Georgetown, on September 20, 2013, a student accused Egolf of sexual harassment. Counterclaim ¶ 14. Egolf was placed on administrative leave with pay while the University reviewed the student's complaint. Counterclaim ¶ 15. The University's Office of Institutional Diversity, Equity, and Affirmative Action ("IDEAA") investigated the claim and, on May 9, 2014, issued a Notice of Findings in which it found, in part, that Egolf:

> violated the University's Policy Statement on Harassment and Sexual Harassment by making unwelcome sexual advances and engaging in unwelcome conduct of a sexual nature in violation of the policy; engaged in prohibited retaliation against the student; and failed to recognize and ignored the principle underlying [the University's Policy on Consensual Sexual Relationships], which prohibits participation in a professional relationship with a student where there is a conflict of interest.

Counterclaim ¶ 16. Moreover, with respect to the University's alcohol policy and Faculty Handbook, IDEAA found that:

> (1) [Egolf] served, offered, gave, purchased, and provided alcohol on multiple occasions to [the student] and his roommate, both of whom were

---

1 Georgetown filed an Answer and Counterclaim in a single filing. The Answer appears on pages 1–23, and the Counterclaim appears on pages 23–46. For purposes of this opinion, each document will be cited to by its name ("Answer" or "Counterclaim") and paragraph numbers.

> underage, and (2) [Egolf] engaged in unfair treatment of [the student], engaged in unprofessional conduct; abused his academic authority over [the student]; engaged in a personal relationship for his own gratification; improperly shared other student information with [the student]; and allowed his objectivity as a professor to be compromised.

Counterclaim ¶ 17. The Notice of Findings recommended that the University consider "the most serious academic and employment sanctions," issue a no-contact directive between Egolf and the student, and require Egolf to remain off campus and have no contact with University students pending the University's decision regarding sanctions. Counterclaim ¶¶ 18–19. Egolf appealed IDEAA's findings and recommendations, which were later upheld by the University's Equal Opportunity Examining Board on September 14, 2014. Counterclaim ¶¶ 20–21.

According to Georgetown, on October 14, 2014, University Provost Robert Groves issued a Termination Letter to Egolf, and then on December 3, 2014, Egolf filed a Notice of Grievance challenging IDEAA's findings and Provost Groves's termination decision. Counterclaim ¶¶ 22–23. After a closed and confidential conciliation process, on October 15, 2015, the parties entered into an agreement ("2015 Agreement") which permitted Egolf's reinstatement subject to "strict and continuing behavioral restrictions." Counterclaim ¶ 24. The 2015 Agreement:

- Required that Egolf undergo training sessions related to (i) student-faculty relations, (ii) professionalism, and (iii) harassment;
- Required that Egolf be evaluated by an independent forensic psychologist;
- Imposed mandatory, specific restrictions and requirements for the remainder of Egolf's employment at the University;
- Required that Egolf maintain a professional faculty-student relationship with students and prohibited him from engaging in a relationship with a student or supervisee that might affect his impartiality with that student;
- Required that Egolf use his best efforts to avoid meeting one-on-one with any Georgetown student in a private space with the door closed and prohibited Egolf from meeting one-on-one with any undergraduate student, any University student

in the Department of Physics, and any student with whom Egolf had a supervisory relationship;

- Prohibited Egolf from making any sexual advances, comments or statements about genitalia, jokes of a sexual nature, or sex-related teasing to any Georgetown student and from making any comment of a sexual nature that is of a lewd or lascivious nature when any Georgetown student could reasonably overhear them;

- Required that Egolf comply with existing alcohol policies and the policies of the Faculty Handbook;

Counterclaim ¶¶ 27–35. The 2015 Agreement also stated that if Egolf had "any questions as to whether a relationship with a student is appropriate," he was required to "immediately disclose the relationship to his chair or dean." Counterclaim ¶¶ 80.

The University retained the authority to investigate suspected breaches of the Agreement, issue formal notices of breach, and pursue corrective or disciplinary action as a penalty for the breach, including termination, based on violations of its terms. Counterclaim ¶ 36. Georgetown's Provost then sent Egolf a letter ("Provost Letter") setting forth the allegations, findings, and restrictions imposed upon him. Counterclaim ¶ 37. The Provost Letter stated that any future findings that he violated the 2015 Agreement or the Faculty Handbook might result in disciplinary action, including revocation of Egolf's tenure. Counterclaim ¶ 38. According to Georgetown, Egolf signed the letter and "acknowledge[ed] that he received it, reviewed it, and understood it." Counterclaim ¶ 37.

In May 2023, Robert Roe, one of Egolf's former students, started a postbaccalaureate program at Georgetown under Egolf's supervision. Counterclaim ¶ 41. While in school, Roe took multiple classes taught by Egolf, served as his Research Assistant over the course of a summer, and was his academic advisee. Counterclaim ¶ 41. Georgetown alleges that, on or about July 19, 2023, Roe contacted defendant Samantha Berner, Georgetown's Title IX Coordinator and Director of Title IX Compliance, to raise concerns regarding Egolf's conduct, which Roe characterized as

"grooming." Counterclaim ¶ 42. After a follow-up conversation with Berner and another IDEAA employee on July 23, 2023, as well as an initial review of Roe's concerns, the Provost requested that IDEAA conduct an administrative review to determine if Egolf violated IDEAA's policies, the Faculty Handbook, or the 2015 Agreement. Counterclaim ¶ 42. The day after an interview with Roe on August 8, 2023, IDEAA provided Egolf with a Letter Notice of the Administrative Review, including a summary of the allegations and notice of his opportunity to respond in writing identifying relevant witnesses. Counterclaim ¶¶ 43–45. Egolf provided a written response on September 15, 2023, and he was interviewed by IDEAA on December 18, 2023. Counterclaim ¶¶ 45–46. IDEAA conducted second interviews with both Roe and Egolf on March 15, 2024, and March 26, 2024, respectively, provided Egolf with a summary, and interviewed twelve other individuals as part of the investigation. Counterclaim ¶¶ 47–48.

According to Georgetown, on May 6, 2024, IDEAA released a confidential investigative report stating that there was "sufficient evidence under a preponderance of the evidence standard to substantiate a finding" of Egolf's sexual misconduct, resulting in violations of University policy, the Faculty Handbook, and the 2015 Agreement. Counterclaim ¶ 49. IDEAA recommended that the Provost terminate Egolf's employment on May 7, 2024. Counterclaim ¶ 52. Egolf formally appealed IDEAA's findings, but his appeal was denied on July 30, 2024. Counterclaim ¶ 52. The Provost formally notified Egolf of his alleged material breach of the 2015 Agreement on October 28, 2024, and he stated that he would request input from the Faculty Responsibilities Committee prior to imposing the penalty of termination of employment. Counterclaim ¶ 54. In the meantime, Egolf remained on a paid leave of absence from Georgetown. Counterclaim ¶¶ 54–55.

The IDEAA investigative report found that Egolf maintained a "personal and social relationship with a student that he advised, including frequent non-academic communications,

social outings, private meetings, and sustained personal involvement extending beyond appropriate faculty-student boundaries." Counterclaim ¶ 57. Egolf admitted the truth of certain factual findings in his appeal by stating, "[t]his statement is true," including:

- Beginning during Mr. [Roe]'s junior year, the two met, spoke, and texted regularly, including on nights and weekends and on and off-campus;
- [Egolf] became well-acquainted with numerous aspects of Mr. [Roe]'s life, including his family, his mental health, and certain other personal matters;
- [Egolf] and Mr. [Roe] had multiple meals together;
- [Egolf] paid for all the meals he had with Mr. [Roe];
- [Egolf] paid for tickets at the Kennedy Center three times over approximately a six-month period;
- [Egolf] paid for tickets at the movies twice over approximately a six-month period;
- [Egolf] and Mr. [Roe] exchanged thousands of text messages, often on a daily basis;
- [Egolf] repeatedly extended invitations to Mr. [Roe] to attend out-of-school events;
- [Egolf] changed his shirt in front of Mr. [Roe];
- [Egolf] drove Mr. [Roe] around in his personal vehicle;
- [Egolf] hosted Mr. [Roe] overnight for a graduation celebration;

Counterclaim ¶ 58.

According to Georgetown, in Egolf's appeal, he further admitted that he and Roe had meals together "about once a month" at a restaurant near the University where they would discuss academic and personal topics. Counterclaim ¶ 58. The meals initially included other students and alumni but later became more often one-on-one. Counterclaim ¶ 58. Egolf also allegedly admitted that:

> [Egolf] invited Mr. [Roe] to spend the night at his house after their celebration of Mr. [Roe]'s graduation, since they expected to drink and it would be late. [Egolf] invited Mr. [Roe] to spend the night at his house after they went to see the Lion King so that he would not have to drive to Mr. [Roe]'s home in Reston and back the night immediately preceding when Mr. [Roe] was already slated to go to [Egolf]'s home for their graduation celebration.

Counterclaim ¶ 59. According to Georgetown, Egolf stated in his appeal that he and the student consumed three-and-a-half bottles of champagne together that same evening; he left the door slightly ajar when he went into the bathroom; he told Roe stories about being propositioned by a student and finding a student naked on his couch; he made a joke about his college friend's genitalia; and he participated in conduct related to a drinking game. Counterclaim ¶¶ 60–63.

Georgetown also alleges that Egolf provided Roe with private study sessions, inflated his grades in a manner inconsistent with academic evaluation standards, and substantially assisted in drafting a portion of his undergraduate thesis and grant application. Counterclaim ¶¶ 76–79.

Moreover, Egolf allegedly texted Roe that, upon Roe's graduation, Egolf would be able to tell him "all of the crazy stories I've hinted at" and did share the explicit stories following graduation; engaged in discussions about nudity and other sexual topics; made a joke involving genitalia; and teased Roe while offering to help remove his pants. Counterclaim ¶¶ 85–94. Finally, Georgetown alleges that Egolf failed to disclose the nature or extent of his relationship with Roe to any University administrator as required by the 2015 Agreement. Counterclaim ¶¶ 80–81.

IDEAA's administrative review of Egolf's conduct and its factual findings led to the conclusion that Egolf engaged in sexual harassment and misconduct in violation of the University's Policy on Sexual Misconduct and the Policy on Equal Opportunity and Non-Discrimination in Education. Counterclaim ¶¶ 99–100. The Provost referred review of Egolf's

professional conduct obligations under the Faculty Handbook to Egolf's Unit Head, and an Interim Dean subsequently filed a formal charge to initiate a disciplinary mechanism separate from IDEAA's review and determination. Counterclaim ¶¶ 101–02.

Egolf filed his complaint against the University on October 9, 2025, and brought six claims, including:

- retaliation in violation of Title IX for the 2013 complaint of sexual misconduct against Georgetown, Compl. ¶¶ 196–202;
- breach of contract in the form of the 2015 Agreement against Georgetown, Compl. ¶¶ 203–207;
- breach of the covenant of good faith and fair dealing by evading the spirit of the *Faculty Handbook* and the 2015 Agreement against Georgetown, Compl. ¶¶ 208–212;
- interference with contractual relations by improper conduct regarding rights provided by the *Faculty Handbook* and under the 2015 Agreement, against four Georgetown officials, Compl. ¶¶ 213–217;
- tortious interference with prospective economic advantage regarding ongoing employment and other employment opportunities against four Georgetown officials, Compl. ¶¶ 218–222;
- negligent supervision of officials, IDEAA staff, and compliance with Title IX and contractual rights of faculty against Georgetown, Compl. ¶¶ 223–230.

Georgetown answered the complaint and brought two counterclaims against Egolf alleging breach of the 2015 Agreement and breach of the implied covenant of good faith and fair dealing. Counterclaim ¶¶ 108, 114–17. Georgetown seeks compensatory damages, including:

- The costs of the IDEAA investigation and related administrative proceedings;
- The costs of grievance, appeal, and disciplinary processes;
- Legal and administrative costs incurred to enforce the 2015 Agreement and defend against this action; and

- Any other damages proximately caused by Egolf's breaches.

Counterclaim at 45. Georgetown also seeks a declaratory judgment stating that Egolf materially breached the 2015 Agreement and that "Georgetown acted within its contractual duty in investigating, disciplining, and enforcing" it, absolving the University of liability regarding his claims. Counterclaim at 45.[2]

## STANDARD OF REVIEW

A motion to dismiss a counterclaim is considered under the same standard that would apply to a motion to dismiss a claim in a complaint. "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. And "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679, citing *Twombly*, 550 U.S. at 556.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id*.,

2 Egolf moved to amend his complaint on June 12, 2026 [Dkt. # 41]. The Court will address this motion in a future opinion.

quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In evaluating a motion to dismiss under Rule 12(b)(6), a court must "treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citation omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011), quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005). Therefore, when considering a motion to dismiss, a court must construe a complaint liberally in the plaintiff's favor. *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the court accept plaintiff's legal conclusions. *Id.*; *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

## ANALYSIS

Egolf moves to dismiss Georgetown's counterclaims on the grounds that they fail to state a claim because the damages Georgetown seeks are not incidental, but consequential. Mot at 2. He argues that consequential damages are not available in this case because they were not "caused

by the breach" or "reasonably . . . in the contemplation of both parties at the time the contract was formed." *Id.*[3]

## I. The motion to dismiss Count One will be denied because Georgetown alleged the terms of the 2015 Agreement and the nature of the breach.

To state a claim for breach of contract, "it is enough for the plaintiff to describe the terms of the alleged contract and the nature of the defendant's breach." *Francis v. Rehman*, 110 A.3d 615, 620 (D.C. 2015), citing *Nattah v. Bush*, 605 F.3d 1052, 1058 (D.C. Cir. 2010). Contrary to Egolf's assertions, a plaintiff need not allege damages caused by the breach to survive a Rule 12(b)(6) motion to dismiss. *Jacobson v. Hofgard*, 168 F. Supp. 3d 187, 207 (D.D.C. 2016), citing *Francis*, 110 A.3d at 620.

Here, the counterclaim asserts that the 2015 Settlement Agreement was a valid contract, *see* Counterclaim ¶ 106, describes its terms, *see* Counterclaim ¶¶ 24–40, and specifies the nature of Egolf's breach or breaches of those terms. *See* Counterclaim ¶¶ 56–104. Specifically, Georgetown claims that Egolf violated the agreement by:

- failing to maintain a professional faculty-student relationship with Roe and instead cultivating a personal, social, and alcohol-infused relationship with him;
- failing to use best efforts to avoid one-on-one meetings with Roe in private spaces;
- meeting one-on-one with Roe at his personal residence and hosting Roe overnight;
- making sexualized comments, jokes, and statements involving genitalia and sexual subject matter to Roe; and

3 Egolf initially argued that if compensatory damages were unavailable to Georgetown, the Court would lack jurisdiction over Georgetown's counterclaims because they would fall under the statutory threshold of $75,000 necessary for diversity jurisdiction. Mot. at 2. But Egolf later conceded that the Court does in fact have jurisdiction over the counterclaims under 28 U.S.C. § 1367(a) because the issues arise from the same nucleus of operative facts as his own complaint. Reply to Georgetown's Opp. to Mot. [Dkt. # 33] ("Egolf's Reply") at 1 & n.1.

- failing to comply with university policies governing sexual misconduct, professional conduct, and faculty-student boundaries.

Counterclaim ¶ 108. Finally, Georgetown identifies the five specific provisions of the 2015 Agreement they allege that Egolf violated. Counterclaim ¶ 104.

Even if Egolf is correct that Georgetown must allege damages to state a claim, the Court does not find that, on the face of the counterclaim, consequential damages were outside the contemplation of the parties at the time of the contract. Egolf points to paragraph 4 of the 2015 Agreement, which provides that each party will "bear their own costs, fees, and expenses with respect to his matter, its resolution, and all matters related thereto." Ex. A to Georgetown's Mot. [Dkt. # 21-1] at 5 ("Ex. A"); Egolf's Mot. at 3. But the parties' responsibility over "costs, fees, and expenses" does not foreclose the possibility of legal *damages* stemming from a breach. To the contrary, paragraph 11 of the Agreement demonstrates that the parties expressly contemplated the possibility of litigation. Ex. A at 11 ("Any breach, or actions taken upon breach, of the Agreement by either party may also be enforced by filing suit, or seeking an injunction, in a court of competent jurisdiction"). Resolving all reasonable inferences in Georgetown's favor, the Court does not find that legal damages were beyond the contemplation of the 2015 Agreement.

For those reasons, Egolf's motion to dismiss Count One will be denied.

## II. The motion to dismiss Count Two will be denied because Georgetown pled facts to demonstrate that Egolf breached the implied covenant of good faith and fair dealing in the 2015 Agreement.

"All contracts in the District of Columbia 'contain an implied duty of good faith and fair dealing, which means that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Brown v. Sessoms*, 774 F.3d 1016, 1025 (D.C. Cir. 2014), quoting *Paul v. Howard Univ.*, 754 A.2d 297, 310 (D.C. 2000). "A party breaches this covenant if it 'evades the spirit of the contract, willfully renders

imperfect performance, or interferes with performance by the other party' to the contract." *Id.*, quoting *Paul*, 754 A.2d at 310. "A party does not breach 'its duty of fair dealing when reasonable persons in the parties' shoes would have expected the contract to be performed as it was.'" *Id.*, quoting *Adler v. Abramson*, 728 A.2d 86, 90–91 (D.C.1999). Thus, "[t]o state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege either 'bad faith or conduct that is arbitrary and capricious.'" *CorpCar Servs. Houston, Ltd. v. Carey Licensing, Inc.*, 325 A.3d 1235, 1246 (D.C. 2024), quoting *Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1133 (D.C. 2015).

As was the case with the breach of contract claim, Georgetown was not required to allege damages to state a claim for breach of the implied covenant of good faith and fair dealing. The counterclaim alleges a contract, identifies specific provisions of the Agreement at issue, and alleges that Egolf admitted to behavior that directly violated those provisions. It follows that, accepting all allegations as true and resolving all reasonable inferences in favor of Georgetown, the University has plausibly alleged that Egolf has violated the implied covenant of good faith and fair dealing that such a contract would contain.

Accordingly, Egolf's motion to dismiss Count Two will be denied.

## CONCLUSION

At this stage of the litigation, it is not necessary for Georgetown to allege damages caused by the breach of contract or the breach of the implied covenant of good faith and fair dealing. Because Georgetown has otherwise pled facts that are sufficient to state its claims, Egolf's motion to dismiss is **DENIED**.

AMY BERMAN JACKSON
United States District Judge

DATE: November 18, 2026